**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND**

| | |
|---|---|
| CLAUDIO DE SIMONE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No.:  8:15-cv-01356 |
| | ) |
| VSL PHARMACEUTICALS, INC., *et al.* | ) |
| | ) |
| Defendants, | ) |

**DEFENDANT/COUNTERCLAIM PLAINTIFF VSL PHARMACEUTICALS, INC.'S
MEMORANDUM IN OPPOSITION TO
PLAINTIFF/COUNTERCLAIM DEFENDANT CLAUDIO DE SIMONE'S
<u>MOTION TO DISMISS THE COUNTERCLAIM</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ .1

LEGAL STANDARD ......................................................................................... 3

    I.      Standard of Review and Reliance on External Documents ................................... 3

    II.     Choice of Law ............................................................................................ 4

ARGUMENT ...................................................................................................... 5

    I.      De Simone's Motion to Dismiss Is Premised Upon Three Fundamental Errors .... 5

          A.    The '615 Patent and VSL#3 Know-How Are Separate Intellectual
              Property ........................................................................................... 6

          B.    De Simone Cannot Impute Actial's and Paolo Cavazza's Knowledge
              and/or Actions to VSL ..................................................................... 9

          C.    De Simone Cannot Hide The Fact That He Controlled the Flow of
              Information to VSL's Other Officers, Directors and Shareholders ......... 10

    II.     De Simone's Motion to Dismiss Each of VSL's Specific Counts Fails ............... 12

          A.    Count I (Declaratory Relief) Is Properly Pled Because There Is a
              Justiciable Controversy as to the Ownership of the Intellectual Property
              Related to VSL#3 ............................................................................ 12

              i.     VSL Alleges That It Owns the VSL#3 Intellectual Property ....... 13

              ii.    The Patent License Agreement, Confidential Disclosure
                     Agreement, and January 2010 Know-How Agreement Do Not
                     Negate VSL's Ownership of the VSL#3 Intellectual Property ..... 14

              iii.   Count I Is Not Time Barred ........................................................ 15

          B.    Count II (Declaratory Relief) Is Proper Because a Justiciable Controversy
              Exists as to Whether De Simone Transferred Other Inventions to VSL .. 17

          C.    Count III (Declaratory Relief) Properly Alleges That Various Agreements
              Are Void ........................................................................................ 18

          D.    Count IV Adequately Pleads a Cause of Action for Breach of Fiduciary
              Duty Under Delaware Law ............................................................... 20

              i.     Delaware Law Recognizes a Separate Tort Action for Breach of
                     Fiduciary Duty .......................................................................... 20

               ii.    VSL's Breach of Fiduciary Duty Claim Is Adequately Pled ........ 21

              iii.   Count IV Is Not Time Barred ..................................................... 23

E.   Count V (Conspiracy) Is Properly Pled Because VSL Alleges Independent Tortious Acts by De Simone ................................................................... 23

F.   Count VI States a Viable Claim for Fraud ................................................ 25

G.   Count VII (Tortious Interference) Is Founded Upon Sufficient Factual Allegations ................................................................................................ 27

H.   Count VIII States a Proper Claim for Usurpation of a Corporate Opportunity ............................................................................................... 29

I.   Counts IX (Misappropriation of Trade Secrets), X (Conversion) and XI (Unjust Enrichment) Are Valid Because VSL Has Sufficiently Alleged Ownership of the VSL#3 Intellectual Property and Use by De Simone *et al*. ........................................................................................................... 30

J.   VSL Has Sufficiently Pled Counts XII and XIII Relating to De Simone's Direct and Contributory Trademark Infringement and Unfair Competition ................................................................................................................... 31

K.   VSL Will Voluntarily Dismiss Counts XIV and XXIV Asserting Trademark Infringement in Violation of Md. Code Ann., Bus. Reg., § 1-414 ............................................................................................................ 34

L.   Count XV (Declaratory Judgment as to Cancellation of Trademarks) Is Properly and Sufficiently Pled ................................................................. 35

M.   Count XVI Sufficiently Pleads a Claim for De Simone's Breach of the Patent License Agreement ....................................................................... 37

N.   Count XVII (Unjust Enrichment) Should Not Be Dismissed as the Contract at Issue Is Disputed ................................................................... 38

O.   Count XVIII (Breach of Contract) States a Viable Claim ....................... 39

P.   Count XIX (Conversion) States a Viable Claim Because the VSL Information Is Property Capable of Being Converted ............................... 41

Q.   The Court Should Not Dismiss VSL's Counts Requesting Entry of an Injunction (Count XXV and XXVII) as VSL Has Properly Pleaded Several Separate Causes of Action ......................................................... 42

CONCLUSION ..................................................................................................... 42

# TABLE OF AUTHORITIES

## Cases

*Alexander & Alexander Inc. v. Evander*,
  650 A.2d 260 (Md. 1994) ................................................................. 28

*Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*,
  665 A.2d 1038 (Md. 1995) ............................................................... 23

*Allied Inv. Corp. v. Jasen*,
  731 A.2d 957 (Md. 1999) ................................................................. 41

*Astorga v. Castlewood Consulting, LLC*,
  No. 14-4006, 2015 WL 2345519 (D. Md. May 14, 2015) ................. 3

*Baron Fin. Corp. v. Natanzon*,
  471 F. Supp. 2d 535 (D. Md. 2006) .................................................. 28

*Blue Athletic, Inc. v. Nordstrom, Inc.*,
  No. 10-cv-036, 2010 WL 2836303 (D.N.H. July 19, 2010) ............. 36

*Cede & Co. v. Technicolor, Inc.*,
  634 A.2d 345 (Del. 1993) ................................................................. 21

*Chesapeake Constr. Corp v. Rodman*,
  261 A.2d 156 (Md. 1970) ................................................................. 19

*Commercial Union Ins. Co. v. Porter Hayden Co.*,
  698 A.2d 1167 (Md. Ct. Spec. App. 1997) ................................. 4, 15

*Dave & Buster's, Inc. v. White Flint Mall, LLLP*,
  No. 14-1794, 2015 WL 3622239 (4th Cir. June 11, 2015) .............. 16

*Dwoskin v. Bank of Am., N.A.*,
  850 F. Supp. 2d 557 (D. Md. 2012) .................................................. 42

*E.I. du Pont Nemours & Co. v. Kolon Indus.*,
  637 F.3d 435 (4th Cir. 2011) ............................................................. 3

*Edwards v. City of Goldsboro*,
  178 F.3d 231 (4th Cir. 1999) ....................................................... 3, 30

*Ellerin v. Fairfax Sav., F.S.B.*,
  652 A.2d 1117 (Md. 1995) ................................................. 24, 25, 27

*Fitzgibbon v. Martin Cnty. Coal Corp.*,
   No. 05-36, 2007 WL 1231509 (E.D. Ky. Apr. 25, 2007) ........................ 9

*Floyd's 99 Holdings, LLC v. Woodrum*,
   No. 08-cv-01321, 2009 WL 798804 (D. Colo. Mar. 24, 2009) ................... 36

*Fox v. Kane-Miller Corp.*,
   542 F.2d 915 (4th Cir. 1976) .................................................. 25

*Fudge v. Penthouse Int'l, Ltd.*,
   840 F.2d 1012 (1st Cir. 1988) ................................................. 3

*Goldman v. Belden*,
   754 F.2d 1059 (2d Cir. 1985) .................................................. 3

*George & Co. LLC v. Imagination Entm't Ltd.*,
   575 F.3d 383 (4th Cir. 2009) .................................................. 31

*Gross v. Sussex Inc.*,
   630 A.2d 1156 (Md. 1993) ...................................................... 25

*Guth v. Loft, Inc.*,
   5 A.2d 503 (Del. 1939) ........................................................ 21

*Hale v. Hale*,
   503 A.2d 271 (Md. Ct. Spec. App. 1986) ....................................... 19

*Hartnett v. Schering Corp.*
   806 F. Supp. 1231 (D. Md. 1992) .............................................. 11

*Hecht v. Resolution Trust Corp.*,
   635 A.2d 394 (Md. 1994) ....................................................... 11

*Hilgraeve Corp. v. Symantec Corp.*,
   265 F.3d 1336 (Fed. Cir. 2001) ................................................ 6

*HQM, Ltd. v. Hatfield*,
   71 F. Supp. 2d 500 (D. Md. 1999) .......................................... 31, 34

*Hunt Trust Estate v. Kiker*,
   269 N.W.2d 377 (N.D. 1978) .................................................... 9

*In re Am. Int'l Grp., Inc.*,
   965 A.2d 763 (Del. Ch. 2009) ............................................. 11, 21

*In re Coca-Cola Enters., Inc.*,
   No. 1927, 2007 WL 3122370 (Del. Ch. Oct. 17, 2007) ........................................ 22

*In re Novell, Inc. S'holder Litig.*,
   No. 6032, 2014 WL 6686785 (Del. Ch. Nov. 25, 2014) ...................................... 21

*In re Rural/Metro Corp. Stockholders Litig.*,
   102 A.3d 205 (Del. Ch. 2014) .............................................................................. 21

*In re Walt Disney Co. Derivative Litig.*,
   906 A.2d 27 (Del. 2006) ....................................................................................... 21

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
   456 U.S. 844 (1982) .............................................................................................. 32

*Irvine Co. v. Great Am. Ins. Co.*,
   No. 94-56358, 1996 WL 422862 (9th Cir. July 29, 1996) ...................................... 9

*Kerby v. Mortgage Funding Corp.*,
   992 F. Supp. 787 (D. Md. 1998) .......................................................................... 25

*Klingel's Pharmacy v. Sharp & Dohme*,
   64 A. 1029 (Md. 1906) ......................................................................................... 28

*Lab. Corp. of Am. v. Hood*,
   911 A.2d 841 (Md. 2006) ....................................................................................... 4

*Lawley v. Northam*,
   No. 10-1074, 2011 WL 1327652 (D. Md. Apr. 5, 2011) ...................................... 19

*M & T Chems., Inc. v. Int'l Bus. Machs. Corp.*,
   403 F. Supp. 1145 (S.D.N.Y. 1975) .................................................................... 17

*Macklin v. Robert Logan Assocs.*,
   639 A.2d 112 (Md. 1994) ..................................................................................... 28

*Manning v. Mercatanti*,
   898 F. Supp. 2d 850 (D. Md. 2012) ..................................................................... 19

*Maryland Metals, Inc. v. Metzner*,
   382 A.2d 564 (Md. 1978) ..................................................................................... 26

*Michelson v. Duncan*,
   407 A.2d 211 (Del. 1979) ..................................................................................... 19

*Miller v. U.S. Foodservice, Inc.*,
   405 F. Supp. 2d 607 (D. Md. 2005) ........................................................... 4

*Naughton v. Bankier*,
   691 A.2d 712 (Md. Ct. Spec. App. 1997) ............................................... 24

*Nat'l Fed. of the Blind, Inc. v. Loompanics Enters., Inc.*,
   936 F. Supp. 1232 (D. Md. 1996) .......................................................... 31

*Natural Design, Inc. v. Rouse Co.*,
   485 A.2d 663 (Md. 1984) ....................................................................... 28

*Nunes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   609 F. Supp. 1055 (D. Md. 1985) .......................................................... 24

*Owens-Illinois, Inc. v. Zenobia*,
   601 A.2d 633 (Md. 1992) ....................................................................... 24

*Painter's Mill Grille, LLC v. Brown*,
   No. 11-1607, 2012 WL 576640 (D. Md. Feb. 21, 2012) ........................ 28

*Potomac Conference Corp. of Seventh-day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*,
   2 F. Supp. 3d 758 (D. Md. 2014) ........................................................... 33

*RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*,
   640 F. Supp. 2d 660 (D. Md. 2009) ................................................... 4, 38

*Rosetta Stone Ltd. v. Google, Inc.*,
   676 F.3d 144 (4th Cir. 2012) ................................................................. 32

*Ryan v. Gifford*,
   918 A.2d 341 (Del. Ch. 2007) ............................................................... 22

*Singer Co. v. Balt. Gas & Elec. Co.*,
   558 A.2d 419 (Md. 1989) ....................................................................... 16

*S.O.G.-San Ore-Gardner v. Mo. Pac. R.R. Co.*,
   658 F.2d 562 (8th Cir. 1981) ................................................................... 9

*Stanley v. Deluxe Fin. Servs. Inc.*,
   No. 1:08CV2149, 2009 WL 929029 (N.D. Ohio Apr. 2, 2009) ............... 9

*State Contracting & Eng'g Corp. v. Florida*,
   258 F.3d 1329 (Fed. Cir. 2001) ............................................................... 6

*Stone ex rel. AmSouth Bancorporation v. Ritter*,
  911 A.2d 362 (Del. 2006) ................................................. 21

*Strassburger v. Earley*,
  752 A.2d 557 (Del. Ch. 2000), *as revised* (Jan. 27, 2000)...................... 19

*Sullivan v. Easco Corp.*,
  656 F. Supp. 531 (D. Md. 1987) ........................................... 19

*Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*,
  190 F. Supp. 2d 785 (D. Md. 2002) ........................................ 38

*TBC, Inc. v. DEI Holdings, Inc.*,
  No. 14-3644, 2015 WL 1396120 (D. Md. Mar. 24, 2015)........................ 42

*Teachers' Ret. Sys. of La. v. PricewaterhouseCoopers LLP*,
  11 A.3d 228 (Del. 2011) ................................................. 21

*Thompson v. UBS Fin. Servs., Inc.*,
  115 A.3d 125 (Md. 2015)................................................. 41

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
  563 F.3d 1271 (Fed. Cir. 2009)......................................... 6, 7

*Venugopal v. Sharadha Terry Prods., Ltd.*,
  No. 07-CV-00484C, 2009 WL 1468462 (W.D.N.Y. May 22, 2009) ......................... 36

*Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*,
  784 F. Supp. 2d 391 (S.D.N.Y. 2011)................................... 35, 36

*Warren v. Warren*,
  460 A.2d 526 (Del. 1983) ............................................... 19

*Water Pik, Inc. v. Med-Sys., Inc.*,
  No. 10-CV-01221, 2011 WL 843916 (D. Colo. Mar. 8, 2011) ............................. 36

*Weiss v. Swanson*,
  948 A.2d 433 (Del. Ch. 2008)........................................... 11

## Statutes

28 U.S.C. § 2201, *et seq.*.................................................. 13

15 U.S.C. § 1114............................................................31

35 U.S.C. § 154.............................................................. 6

Md. Code Ann., Bus. Reg., § 1-401 (West)................................................................ 34

Md. Code Ann., Bus. Reg., § 1-402 (West)................................................................ 34

Md. Code Ann., Bus. Reg., § 1-414 (West)................................................................ 34

Md. Code Ann., Cts. & Jud. Proc., § 5-203 (West) ................................................... 17

Counterclaim Plaintiff/Defendant VSL Pharmaceuticals, Inc. ("VSL"), by counsel, submits the following Memorandum in Opposition to Plaintiff/Counterclaim Defendant Claudio De Simone's omnibus Motion to Dismiss the Counterclaim, and states as follows:

**INTRODUCTION**

VSL Pharmaceuticals, Inc. ("VSL") filed a detailed Counterclaim with numerous allegations and exhibits supporting its claim to ownership of all intellectual property associated with VSL#3 ("VSL#3 IP"), a lucrative pro-biotic medical food.  Claudio De Simone ("De Simone") largely ignores the compelling factual record set forth by VSL and argues that VSL's claims should be dismissed at the pleading stage because—quite simply—he owns the VSL#3 IP.  The fundamental thrust of De Simone's Motion to Dismiss is not that VSL failed to properly plead its claims, but that VSL will not be able to prove the claims it has pled.

This argument is both procedurally and substantively flawed.  It is procedurally flawed because the Court must assume the truth of VSL's factual allegations when deciding the Motion to Dismiss.  De Simone's improper citation to documents that were not referenced in the Counterclaim does nothing to undermine VSL's well-founded allegations and the exhibits which support them.  VSL's Counterclaim goes well beyond what is necessary to plead viable claims for relief.

More importantly, De Simone's conclusory assertions of ownership over VSL#3 are substantively flawed and entirely inaccurate.  VSL's Counterclaim walks through the history of the parties' relationship and the various agreements by which De Simone transferred to VSL the rights to the VSL#3 IP, either directly or through his corporate alter ego, Mendes Srl ("Mendes Italy"), in exchange for the substantial investment of capital by investors into VSL.  Moreover, De Simone negotiated and executed numerous agreements with third parties which expressly

1

represented that VSL owned all rights associated with the VSL#3 IP.  Though he later tried to unwind the transfer of VSL#3 through a devious scheme of self-dealing and illicit personal agreements with VSL's exclusive manufacturer (Danisco), De Simone cannot escape the unambiguous language of the original agreements by which he transferred—for significant financial compensation—all rights to the VSL#3 IP.

Moreover, in citing to several later-executed agreements in an attempt to establish his ownership of the VSL#3 IP (such as the 2006 Confidential Disclosure Agreement and the 2010 Know-How License Agreement), De Simone ignores VSL's fundamental allegations of self-dealing and breaches of fiduciary duty that are central to its Counterclaim.  The agreements upon which De Simone relies were negotiated and/or executed by De Simone *while serving as VSL's CEO and Chairman*.  De Simone was the very person tasked with protecting VSL's interests. Instead, he spent years using VSL's financial backing to develop VSL#3 while simultaneously scheming to leave VSL and compete with it; to usurp all rights to the VSL#3 IP; and to cripple VSL's ability to continue supplying VSL#3 to its customers following his exit from the company.  The agreements upon which he now relies to defend his claim of ownership are the very same instruments by which De Simone abused VSL's trust and by which he implemented his scheme to wrest ownership of the VSL#3 IP from the company.  When one views those agreements in the context of De Simone's grand scheme of fraudulent self-dealing, it becomes obvious that De Simone's Motion to Dismiss fails.

For at least these reasons, as well as numerous other points regarding each specific count of the Counterclaim discussed in detail below, this Court should deny De Simone's Motion to Dismiss.

2

**LEGAL STANDARD**

I.     <u>Standard of Review and Reliance on External Documents.</u>

In ruling on a Rule 12(b)(6) motion to dismiss, the judge must accept all facts alleged in the counterclaim as true and draws all reasonable factual inferences in the nonmoving party's favor. *Astorga v. Castlewood Consulting, LLC*, No. 14-4006, 2015 WL 2345519, at *1 (D. Md. May 14, 2015); *see also E.I. du Pont Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted) (internal quotation marks omitted).   The Fourth Circuit has clarified that "[t]he purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint; [it] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (citations omitted) (internal quotation marks omitted).

De Simone's Memorandum in Support of his Motion to Dismiss ("Memorandum") repeatedly relies on documents that are neither "integral to" nor "explicitly relied on" by VSL in support of its Counterclaim, and therefore should not be considered on a motion to dismiss. *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988) ("Clearly, not every document referred to in a complaint may be considered incorporated by reference and thus introduced by the moving party in support of a motion to dismiss."); *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985).  As one example, De Simone relies on a March 31, 2015 High Court Judgment (the "UK Judgment"), arguing that he is permitted to do so because VSL incorporated the UK Judgment into its Counterclaim.[1]  (De Simone Mem. in Supp. at 6.)  While

---

[1] De Simone also incorrectly argues that VSL "intended" to attach the UK **Judgment**, rather than the March 31, 2015 **Order**, which was the exhibit actually attached.  (De Simone Mem. in Supp. at 6.)  In fact, the sentence referencing the Order makes clear what Exhibit 40 is intended to be: "By **Order** dated March 31, 2015, the High Court discharged the injunction based on its conclusion that it lacked jurisdiction over Actial's operative claims (attached as Exhibit 40)."  (Counterclaim ¶ 211 (parenthetical

VSL references the UK Judgment in its Counterclaim, VSL's claims in no way *rely* on the UK Judgment.  (*See* Counterclaim ¶ 211.)   Rather, the UK Judgment is merely referenced to evidence to the Court that other courts have taken serious issue with Mendes SA's and De Simone's actions, based on facts and allegations similar to or the same as those alleged here. Similarly, De Simone asks the Court to consider documents attached to the UK Judgment as exhibits that are not even referred to in the Counterclaim.  In ruling on De Simone's Motion to Dismiss, such documents are not integral to or explicitly relied on by VSL in its Counterclaim, and therefore cannot form a basis of De Simone's Motion to Dismiss.

## II.     Choice of Law.

With the exception of claims that are governed by federal law, De Simone incorrectly assumes that Maryland law applies to *all* of VSL's causes of action.  However, Maryland's choice of law rules dictate that Delaware law applies to certain of VSL's claims.  Maryland law would govern the adjudication of VSL's common law tort claims, *Lab. Corp. of Am. v. Hood*, 911 A.2d 841, 845 (Md. 2006), and it will also apply to claims based in contract.  *RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F. Supp. 2d 660, 665 (D. Md. 2009) (citing *Commercial Union Ins. Co. v. Porter Hayden Co.*, 698 A.2d 1167 (Md. Ct. Spec. App. 1997)). However, Delaware law will apply to claims arising out of VSL's internal affairs and corporate governance.  *Miller v. U.S. Foodservice, Inc.*, 405 F. Supp. 2d 607, 615 (D. Md. 2005).  VSL will address choice of law issues, as appropriate, in response to De Simone's arguments with respect to the individual counts of the Counterclaim.

---

in original) (emphasis added).)  De Simone cannot now insert his preferred exhibit (the UK Judgment) merely because he wishes to rely on the UK Judgment in his Motion to Dismiss.

## ARGUMENT

### I.   De Simone's Motion to Dismiss Is Premised Upon Three Fundamental Errors.

De Simone's arguments are subject to several basic flaws that repeatedly surface throughout his Memorandum.  Before addressing each specific count, VSL will highlight the pervasive fundamental errors in De Simone's arguments.

- First, De Simone conflates U.S. Patent No. 5,716,615 (the "'615 Patent") with the technical and non-technical information, discoveries, improvements, processes, formulae, data, inventions, biological material, and other information useful or necessary to make, develop, use, or sell the VSL#3 probiotic product (the "VSL#3 Know-How"); and he assumes that those items of intellectual property could only be transferred as a single unit.  This is incorrect both factually and legally.  The '615 Patent and VSL#3 Know-How are separate pieces of intellectual property, and thus, De Simone's argument that Mendes Italy could not have transferred the know-how for VSL#3 while De Simone owned certain patent rights to the product is unavailing.

- Second, De Simone relies upon the purported knowledge of Actial Farmaceutica LDA ("Actial") and Paolo Cavazza to argue that VSL knew De Simone claimed ownership of the VSL#3 Know-How.[2]  However, Actial is a separate corporate entity from VSL, and Paolo Cavazza was neither an officer nor director of VSL during the period of De Simone's malfeasance.  Thus, to the extent they even had any such knowledge of De Simone's duplicitous behavior, it could not be imputed to VSL.

- Third, and perhaps most importantly, De Simone simply ignores the impact of his position as VSL's board chairman and CEO, including his duties to act in VSL's best interests, not to usurp any corporate opportunities, and to disclose all relevant facts to other board members.  De Simone cannot hide from the fact that, as Chairman and CEO, he was under a strict duty to avoid self-dealing and to report **all** relevant information regarding VSL#3 to the disinterested directors and/or shareholders of the company.  Thus, to the extent De Simone procured agreements counter to VSL's interests by concealing relevant information from the disinterested board members, De Simone cannot rely upon those agreements to escape liability to his former employer.

---

[2] Paolo Cavazza (and his now deceased brother), were part of the original joint venture that formed VSL. (Counterclaim ¶ 2.)  Actial is a subsidiary of CD Investments, and possesses the rights to market and sell VSL#3 for various other territories, including Europe.  (Counterclaim ¶ 65.)

### A.    The '615 Patent and VSL#3 Know-How Are Separate Intellectual Property.

In multiple instances in his Memorandum, De Simone conflates the rights associated with the '615 Patent and the rights to the other intellectual property related to VSL#3 (including trademarks, trade secrets, know-how, etc.).   For example, De Simone argues that Mendes Italy could not transfer any trade secrets or know how for VSL#3 to VSL via the Mendes Assignment Agreement when VSL purportedly concedes that "De Simone was the co-owner of these rights" to the '615 Patent.   (De Simone Mem. in Supp. at 10.)   De Simone further argues that he owned and subsequently licensed the VSL#3 Know-How to VSL through the Patent License Agreement in 2001.   (De Simone Mem. in Supp. at 9.)   However, the relevant agreements and applicable law establish that the '615 Patent and know-how are distinct intellectual property assets.   *See*, *e.g.*, *State Contracting & Eng'g Corp. v. Florida*, 258 F.3d 1329, 1339-40 (Fed. Cir. 2001) (noting that because patent rights and trade secret rights are distinct rights, the right to use proprietary technology does not necessarily convey any patent rights and the omission of an express provision providing for the licensing of patent rights demonstrated that the contract did not provide a license for patent rights); *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, (Fed. Cir. 2001) (holding that no patent license was conferred where plaintiff transferred all copyright, know-how, and technical expertise with respect to software to defendant).

U.S. patent law provides that "the grant of a patent ***does not provide the patentee with an affirmative right to practice the patent but merely the right to exclude***." *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009) (emphasis added); *see* 35 U.S.C. § 154(a)(1) ("Every patent shall contain ... a grant to the patentee, his heirs or assigns, of the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States ....").   A patent

6

license merely conveys to the licensee the right to be free from suit from the licensor should the licensee practice the patent. *TransCore*, 563 F.3d at 1275.   In this case, the Patent License Agreement grants to VSL only the right to remain free from suit from the '615 Patent owners regarding products covered by the '615 Patent claims, and to sublicense that same right to others. This is the very definition of a patent license.

Nor does the plain language of the Patent License Agreement support De Simone's assertion that he licensed all of the VSL#3 intellectual property to VSL through that agreement. The Patent License Agreement only addressed the then existing patent rights to the '615 Patent, and nothing else.   Nowhere does the Patent License Agreement reference De Simone's ownership of know-how, trade secrets, proprietary information or other intellectual property associated with VSL#3.

Nor would it, as Mendes Italy had already assigned all other VSL#3 IP to VSL via the Mendes Assignment Agreement in 2000.  De Simone's contention that the Mendes Assignment Agreement only assigned to VSL the European trademark to VSL#3, and nothing more, is contrary to the plain language of the agreement, which contains a broad transfer of the VSL#3 IP (absent the '615 Patent) to VSL.  (De Simone Mem. in Supp. at 8-9.)  In support of his argument, De Simone references Schedule I of the Mendes Assignment Agreement, stating that only "CTM trademark no. 1437789," the European VSL#3 trademark filing, is purportedly listed therein. (De Simone Mem. in Supp. at 8.)  In fact, in addition to the European filing, Schedule I of the Mendes Assignment Agreement also contains entries for the trademarks in Canada, Japan, and the United States, including a filing date for Canada, and an indication that the trademarks were "under filing" for the United States and Japan.  (Mendes Assignment Agreement, B-3.)  Not

surprisingly, De Simone does not even acknowledge, let alone offer explanation for, these other countries being listed on Schedule I.

More importantly, however, the Mendes Assignment Agreement assigns to VSL all right, title, and interest of every kind and character, "***throughout the world***," in and to the Proprietary Products and the Intellectual Property identified in the agreement as referenced by the VSL#3 trademark. (Mendes Assignment Agreement § 2.01.) "Intellectual Property" is defined to include all of the intellectual property owned or licensed by Mendes Italy "which relates to the subject matter set forth in Schedule I" (*i.e.*, relating to "VSL#3"), including patent, trademark, and any other form or nature of proprietary or exclusionary right. (Mendes Assignment Agreement § 1.01.) "Proprietary Products" is defined to specifically include trade secrets, know-how, production processes, and techniques described, comprised in, or relating to the Intellectual Property. As such, even if De Simone were correct in his assertion that the VSL#3 European trademark is the only intellectual property listed in Schedule I, the plain and above-referenced language of the Mendes Assignment Agreement transferred Mendes Italy's then-current rights and all future rights, throughout the world, in the VSL#3 Know-How as identified by the trademark VSL#3—the very same trademark used today ***throughout the world***. Moreover, VSL specifically alleged that De Simone himself executed agreements on behalf of VSL in which he acknowledged VSL's ownership of the VSL#3 Know-How at various dates following the execution of the Mendes Assignment Agreement. (*See* Counterclaim ¶¶ 59-68). In short, VSL has more than adequately pled that it received the VSL#3 Know-How from Mendes Italy.

Thus, De Simone's ownership of the '615 Patent is not dispositive of whether VSL now owns the VSL#3 Know-How, and all of De Simone's arguments founded upon this premise fail.

8

**B.      De Simone Cannot Impute Actial's and Paolo Cavazza's Knowledge
and/or Actions to VSL.**

De Simone argues in multiple instances that the Court should bar VSL's claims based on statements made by Actial Farmaceutica LDA ("Actial") in its litigation in Europe (the "UK Litigation") or because of knowledge allegedly possessed by Paolo Cavazza.   De Simone provides no legal authority for De Simone's contention that VSL is bound by the statements made by Actial's attorney in the UK Litigation nor could he, as VSL and Actial are separate legal entities.  *See Irvine Co. v. Great Am. Ins. Co.*, No. 94-56358, 1996 WL 422862 (9th Cir. July 29, 1996)); *Fitzgibbon v. Martin Cnty. Coal Corp.*, No. 05-36, 2007 WL 1231509, at \*9 (E.D. Ky. Apr. 25, 2007).

Likewise, Paolo Cavazza's alleged knowledge is not imputed to VSL, and cannot form the basis for a motion to dismiss.  De Simone incorrectly contends, without citation to legal authority, that VSL should be bound by Paolo Cavazza's knowledge merely because Mr. Cavazza is one of VSL's "ultimate owners."  (De Simone Mem. in Supp. at 29.)  Mr. Cavazza is not an officer, director or shareholder of VSL.  As such, his knowledge cannot be imputed to VSL.  *See S.O.G.-San Ore-Gardner v. Mo. Pac. R.R. Co.*, 658 F.2d 562, 567 (8th Cir. 1981) (stating that it is well settled that a principal's undisclosed knowledge is not imputed to an agent); *Hunt Trust Estate v. Kiker*, 269 N.W.2d 377, 382 (N.D.1978) (stating that a principal's knowledge is not imputed to the agent); *Stanley v. Deluxe Fin. Servs. Inc.*, No. 1:08CV2149, 2009 WL 929029, at \*6 (N.D. Ohio Apr. 2, 2009) ("While it is fundamental agency law that an agent's knowledge is imputed to his principal, the opposite is not true. The principal's knowledge is not imputed to the agent.").[3]

---

[3] Here, the relationship between Cavazza and VSL is even more tenuous, as it is not one of principal and agent, but a shareholder of an entity that is, in turn, a shareholder of VSL.

Even if Mr. Cavazza's alleged knowledge was imputed to VSL, however, that would not support De Simone's Motion to Dismiss. In support of his spurious statute of limitations argument, De Simone asserts that Mr. Cavazza reviewed a "draft copy" of the J&J Agreement, which merely referenced the 2008 Danisco Agreement. (De Simone Mem. in Supp. at 16, 29.) Nowhere is it alleged, much less established, that Cavazza had access to the 2008 Danisco Agreement or was familiar with its terms. Thus, De Simone uses the mere reference to the 2008 Danisco Agreement in this wholly separate agreement to charge VSL with knowledge of the 2008 Danisco Agreement's terms. Just how far De Simone must stretch to make this argument underscores the weakness of his Motion to Dismiss.

### C. De Simone Cannot Hide the Fact That He Controlled the Flow of Information to VSL's Other Officers, Directors and Shareholders.

Much of De Simone's Motion to Dismiss relies on the alleged knowledge of Mr. Maurizio Terenzi, VSL's former Chief Financial Officer and board member. De Simone asserts that Mr. Terenzi, as an allegedly disinterested member of VSL's board of directors, was made aware of De Simone's ownership claim to the VSL#3 Know-How, as evidenced by the minutes of the September 18, 2009 meeting of the board of directors. (De Simone Mem. in Supp. at 17-19.) Accordingly, De Simone argues that the statute of limitations bars VSL's claims. (*Id.*)

Even if the Court could consider the September 18, 2009 board minutes,[4] De Simone's Motion to Dismiss nevertheless fails because of De Simone's fraud and deceit. Maryland law recognizes the "adverse domination" doctrine as an exception to the general rule of imputing

---

[4] VSL's allegations in its Counterclaim that its board minutes lacked any reference to (1) De Simone's offering or granting VSL the option to acquire the entire ownership rights of the '615 Patent (Counterclaim ¶ 72); or (2) the 2008 Danisco Agreement (Counterclaim ¶ 102), is insufficient to allow the Court to consider **any and all** of its board minutes in support of De Simone's Motion to Dismiss not otherwise referenced and relied upon by VSL. VSL does not reference or rely on the September 18, 2009 board minutes in its Counterclaim, and consideration of those minutes would be improper on the Motion to Dismiss.

knowledge from agent to principal for purposes of delaying the accrual of causes of action by a corporation against its former officers and directors.[5] *Hecht v. Resolution Trust Corp.*, 635 A.2d 394 (Md. 1994). In *Hecht*, the Court explained:

> [The "adverse domination" doctrine] provides that the claim will not accrue until there is someone who can discover the claim and act for the corporation. It goes beyond the principles of agency law which provide that knowledge of an agent will not be imputed to the principal if the agent acts adversely to the principal. It provides a presumption that there is no knowledge and no accrual while wrongdoers control the corporation.

*Id*. at 408. The doctrine creates a rebuttable presumption that a cause of action does not accrue against culpable directors and officers until a "disinterested majority" gains control of the corporation. *Id.* Here, at the time Terenzi served as a director of VSL (specifically, September 18, 2009, the date when De Simone alleges Mr. Terenzi received notice of De Simone's ownership claims), Beth Park and De Simone, the alleged co-conspirators, were the only other two members of the board. (Counterclaim ¶¶ 89-90.) As such, the adverse domination doctrine is applicable and Mr. Terenzi's alleged knowledge cannot be imputed to VSL until a disinterested majority gained control of VSL (*i.e.*, in 2014 when De Simone and Park resigned).

---

[5] De Simone relies on the Board meeting minutes to invoke a statute of limitations defense. (*See e.g.*, De Simone Mem. in Supp. at 26-27, 30.) For choice of law purposes, Maryland treats statutes of limitation as procedural rather than substantive, and applies Maryland law. *Hartnett v. Schering Corp.*, 806 F. Supp. 1231, 1234 (D. Md. 1992). In any event, the result would be the same under Delaware law. Delaware follows the doctrine of "equitable tolling" pursuant to which the statute of limitations is tolled for claims of wrongful self-dealing, even in the absence of actual fraudulent concealment, where a plaintiff reasonably relies on the competence and good faith of a fiduciary. *Weiss v. Swanson*, 948 A.2d 433, 451 (Del. Ch. 2008) (footnote omitted). "The obvious purpose of the equitable tolling doctrine is to ensure that fiduciaries cannot use their own success at concealing their misconduct as a method of immunizing themselves from accountability for their wrongdoing." *In re Am. Int'l Gp., Inc.*, 965 A.2d 763, 813 (Del. Ch. 2009) (footnote omitted). Under equitable tolling, the statute of limitations does not begin to run until a plaintiff is "objectively aware of the facts giving rise to the wrong." *Weiss*, 948 A.2d at 451.

Moreover, it is important to note that Terenzi, who is now deceased, did not become a board member until *years* after VSL's formation.  Thus, there is no basis now before the Court to establish that Terenzi knew the history of De Simone's transfer of intellectual property to VSL in 2000.   Likewise, De Simone's argument ignores his alleged misrepresentation to Terenzi regarding what intellectual property rights De Simone possessed.  One must necessarily view De Simone's misrepresentation to Terenzi regarding his purported intellectual property rights in the context of his position with VSL and the fiduciary duties that he owed to it.  Terenzi (and VSL) should have been able to trust VSL's Chairman and CEO to honestly apprise him of VSL's intellectual property rights; unfortunately, however, this turned out not to be true.   The bottom line is that what Terenzi knew, including what De Simone disclosed, is at best a factual issue that is not appropriate for purposes of a motion to dismiss.

## II.   De Simone's Motion to Dismiss Each of VSL's Specific Counts Fails.

### A.   Count I (Declaratory Relief) Is Properly Pled Because There Is a Justiciable Controversy as to the Ownership of the Intellectual Property Related to VSL#3.

De Simone alleges in Count I of his Complaint that "there is an actual and justiciable controversy, of sufficient immediacy and reality, between the parties over who owns the intellectual property rights arising from or related to the invention described in the 615 Patent, including the aforementioned trade secrets."   (Compl. ¶ 170.)   Having made that express allegation himself, it is unclear how De Simone can argue in good faith that no justiciable controversy exists with respect Count I of VSL's Counterclaim regarding ownership of the VSL#3 intellectual property.  On this basis alone, the Court should deny De Simone's request that the Court dismiss Count I of the Counterclaim.

In any event, VSL has sufficiently pled a cause of action under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* De Simone argues three reasons why Count I fails to state a claim, all of which are without basis and are addressed below.

### i.   VSL Alleges That It Owns the VSL#3 Intellectual Property.

De Simone first argues that the Counterclaim does not identify any legal instrument by which VSL obtained ownership of the intellectual property for VSL#3 other than trademark rights. As noted above, however, the Counterclaim includes a specific section delineating the various agreements by which De Simone transferred intellectual property rights for VSL#3 to VSL. (Counterclaim ¶¶48-55.) VSL explicitly alleges that "[p]ursuant to the Mendes Assignment Agreement . . . De Simone transferred to VSL all of his intellectual property rights and confidential information relating to the VSL#3 product (including trade secret, know-how, trademark, and other proprietary rights)." (Counterclaim ¶ 50.)

As discussed *supra*, De Simone's assertion that "[n]either the Collaboration Agreement nor the Mendes Assignment Agreement conveys to VSL Inc. the '615 Patent or its associated trade secrets and know-how" is incorrect. (De Simone Mem. in Supp. at 23.) Again, De Simone conflates the '615 Patent with the VSL#3 Know-How. Regardless of whether the Mendes Assignment Agreement assigns the ***'615 Patent rights*** that purportedly covered the VSL#3 product, as discussed previously in Section I.A, the agreement clearly and unambiguously assigns to the VSL the ***VSL#3 Know-How***. (Mendes Assignment Agreement §§ 1.01, 2.01., at B-3.) Because the Counterclaim identifies specific agreements and language by which VSL obtained the VSL#3 Know-How, VSL has adequately pled a justiciable controversy for Count I.

> ii.   The Patent License Agreement, Confidential Disclosure Agreement, and January 2010 Know-How Agreement Do Not Negate VSL's Ownership of the VSL#3 Intellectual Property.

In an effort to refute the allegations in the Counterclaim that De Simone and his related entities transferred the VSL#3 Know-How to VSL, De Simone relies on three additional agreements—the Patent License Agreement, the Confidential Disclosure Agreement, and the January 2010 Know-How Agreement.  (De Simone Mem. in Supp. at 24-25.)  De Simone avers that these agreements establish his ownership of the VSL#3 Know-How.  *Id.*  De Simone's assertions in this regard are without merit.

First, as discussed above, the Patent License Agreement applies solely to the '615 Patent. The VSL#3 Know-How is outside the scope of the Patent License Agreement, and thus, the Patent License Agreement has no bearing on the ownership of the VSL#3 Know-How.

Second, the Confidential Disclosure Agreement is merely a confidentiality agreement intended to allow the entities to "have ongoing discussion relating to the use of Danisco's culture products and/or the manufacture of certain toll manufactured products."   (Confidential Disclosure Agreement at 1.)   It neither purports to assign (or re-assign) the ownership of the VSL#3 Know-How back to De Simone, nor could it since it is not an agreement between De Simone and VSL.  *Id.*  The language in the Confidential Disclosure Agreement does not, as De Simone contends, state that De Simone "owns the know-how and trade secret rights in VSL#3." (De Simone Mem. in Supp. at 24.)  Rather, the Confidential Disclosure Agreement states that De Simone owns the "product formulation referred to as VSL#3 described in U.S. Patent n. 5,716,615."  (Confidential Disclosure Agreement ¶ 6.)  Although somewhat vague, this language appears to refer only to the '615 Patent.  Even if the Court read the Confidential Disclosure Agreement to refer to more than just the '615 Patent, the Confidential Disclosure Agreement

would not somehow unwind the arms-length transfer of the VSL#3 Know-How that took place in 2000.  Thus, the Confidential Disclosure Agreement does not support De Simone's assertion that no justiciable controversy exists.

Also, one must not lose sight of the fact that *De Simone executed the Confidential Disclosure Agreement on VSL's behalf while serving as it board chairman and CEO*.  Indeed, VSL expressly alleges that the Confidential Disclosure Agreement was part of De Simone's scheme to re-claim ownership over the intellectual property that he had previously transferred to VSL.  Prior to entering the Confidential Disclosure Agreement with Danisco, De Simone himself executed various documents on behalf of VSL which affirmed the company's ownership of the VSL#3 Know-How.  (Counterclaim ¶¶ 59-68).  De Simone executed the Confidential Disclosure Agreement in 2006, years after VSL initially executed a confidentiality agreement with Rhodia (Danisco's predecessor-in-interest) that confirmed VSL's ownership of the proprietary information and know-how related to VSL#3.  (Counterclaim ¶¶ 60-64, Ex. 8).  Because VSL alleges that the Confidential Disclosure Agreement was a part of De Simone's duplicitous self-dealing, he cannot use that very agreement to short-circuit VSL's claims.

Finally, De Simone's reliance on the January 2010 Know-How Agreement is equally unavailing.  VSL explained in its Counterclaim why that agreement is void.  Therefore, the January 2010 Know-How Agreement could not possibly supersede the prior agreements validly transferring the VSL#3 Know-How to VSL.  (*See* Counterclaim Count III.)

### iii.   Count I Is Not Time Barred.

The statute of limitations only applies to a declaratory judgment action where such action is based on a breach of contract, and not merely on knowledge of the existence of an actual and justiciable controversy.  *Commercial Union Ins. Co. v. Porter Hayden Co.*, 698 A.2d 1167, 1193

15

(Md. Ct. Spec. App. 1997).  VSL's request for a declaratory judgment in Count I is not based on De Simone's breach of any contract, but rather a fundamental difference in VSL's and De Simone's interpretation of the agreements at issue.  As such, no statute of limitations applies.

Even if the 3-year statute of limitations for breach of contract were applicable, VSL's declaratory judgment action is not time barred because any alleged "breach" is ongoing and continuous.  Under Maryland law, "where a contract provides for continuing performance over a period of time, each successive breach of that obligation begins the running of the statute of limitations anew, with the result being that accrual occurs continuously."  *Dave & Buster's, Inc. v. White Flint Mall, LLLP*, No. 14-1794, 2015 WL 3622239, at *3 (4th Cir. June 11, 2015) (*quoting Singer Co. v. Balt. Gas & Elec. Co.*, 558 A.2d 419, 426 (Md. 1989)).  The right to maintain an action for its breach continues so long as the breach continues and plaintiff is damaged thereby.  *Id.*

Here, the alleged "breach" that would form the basis for the declaratory judgment action would be De Simone's attempts to exclude VSL from the right to use the VSL#3 Know-How by claiming personal ownership of those rights. That breach continues to this day, as evidenced by De Simone's Complaint itself. Therefore, De Simone's breach is continuous, and each successive breach begins the running of the statute of limitations anew.

Furthermore, and for the reasons stated in Section II.A.ii above, De Simone's reliance on the Patent License Agreement, the Confidential Disclosure Agreement, and the January 2010 Know-How Agreement is misplaced, and those agreements cannot be the basis for De Simone's statute of limitations defense.  Likewise, De Simone's argument that the reissuance of the '615 Patent gave VSL constructive knowledge of De Simone's assertion of ownership of the VSL#3

Know-How is without merit, as the '615 Patent does not encompass the VSL#3 Know-How.[6] (*See supra* Section I.A.)  For the reasons stated above in Section I.C, De Simone cannot impute Mr. Terenzi's knowledge to VSL, and therefore his alleged knowledge cannot serve as the basis for De Simone's statute of limitations defense.

Finally, under § 5-203 of the Maryland Code, "If the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud."  Md. Code Ann., Cts. & Jud. Proc. § 5-203 (West).  VSL has alleged that De Simone fraudulently concealed his intention to compete with VSL by, *inter alia*, entering into the agreements that were beneficial to De Simone and harmful to VSL, and withholding this information from VSL's disinterested officers and directors and shareholders.  (Counterclaim ¶¶ 258-259.)  As such, the statute of limitations would not begin to run until VSL actually discovered De Simone's fraud.  For these reasons, the Court should deny De Simone's Motion to Dismiss Count I.

> ## B. Count II (Declaratory Relief) Is Proper Because a Justiciable Controversy Exists as to Whether De Simone Transferred Other Inventions to VSL.

In Count II, VSL alleges that "De Simone has failed to transfer to VSL all the rights relating to the inventions made by him in the field of pharmaceutical nutritional compositions and active principles for human and animal use since the incorporation of VSL."[7]  (Counterclaim

---

[6] De Simone's reliance on *M & T Chems., Inc. v. Int'l Bus. Machs. Corp.*, 403 F. Supp. 1145 (S.D.N.Y. 1975) is misplaced because in *M & T Chems.* the patent embodied and disclosed the trade secret itself, thereby destroying the trade secret.  *Id.* at 1149.  Here, the '615 Patent does not embody or disclose the VSL#3 Know-How at issue, and transfer of just the '615 Patent would not have any effect on the parties' rights to the related intellectual property.

[7] This allegation is not limited to non-VSL#3 inventions.  (Counterclaim ¶ 235.)  Additionally, this is not limited to the time during which De Simone was employed by VSL; but rather, applies to any inventions

¶ 235.)  If true, VSL's claim for relief in Count II is plausible on its face, and therefore satisfies the pleading standards.  That VSL did not list the specific inventions in Count II is of no import, nor does it mean that the allegation is "purely hypothetical," as alleged by De Simone.  (De Simone Mem. in Supp. at 27.)  VSL cannot identify specific inventions because De Simone has deliberately withheld, concealed or destroyed that information.  As alleged in Count XIX of the Counterclaim, De Simone has failed to return documents and information to VSL.  De Simone's argument appears to be that, because he has effectively concealed his duplicity, he cannot now be called to answer for it.  That is not the law.

### C.     Count III (Declaratory Relief) Properly Alleges That Various Agreements Are Void.

Count III of the Counterclaim seeks a declaration that the various agreements De Simone used to carry out his scheme to recoup ownership of VSL#3 are void and/or unenforceable. Specifically, Count III seeks to invalidate the 2008 Danisco Agreement, the 2014 Danisco Supply Agreement, the Canadian Know-How Agreement, the January 2010 Know-How Agreement, and the March 2010 Know-How Agreement (the "Void Agreements").

De Simone argues that VSL has not alleged any grounds for setting aside the contracts in question. (De Simone Mem. in Supp. at 28-30.)  In making this argument, De Simone ignores entirely the factual allegations contained throughout the Counterclaim (and incorporated into Count III by reference), which identify various bases for invalidating the Void Agreements. Simply put, VSL seeks to invalidate the Void Agreements based on De Simone's fraud, usurpation of corporate opportunities, and breach of fiduciary duties; as well as the fact that De Simone did not own the Know-How for VSL#3 when he purportedly licensed such Know-How

---

made by him as long as he owned, directly or indirectly, 4.99% or more of the voting stock of VSL. (Counterclaim ¶¶ 233-234.)

to other entities in the Void Agreements, and therefore the contracts were void for lack of consideration.  All of these reasons are valid bases to declare the agreements in question invalid and unenforceable.

Under Maryland law, "contracts ... may be subject to rescission on a finding of fraud, duress, undue influence, or negligent misrepresentation in their making, and declaratory judgments may be issued determining the validity of such contracts." *Lawley v. Northam*, No. 10-1074, 2011 WL 1327652, at *11 (D. Md. Apr. 5, 2011) (quoting *Hale v. Hale,* 503 A.2d 271, 274 (Md. Ct. Spec. App. 1986), *cert. denied,* 507 A.2d 631 (1986)).  Similarly, under Delaware law, contracts executed by a self-dealing director usurping a corporate opportunity (in violation of that officer's duty of loyalty) are void. *Strassburger v. Earley*, 752 A.2d 557 (Del. Ch. 2000), *as revised* (Jan. 27, 2000).  *See also Warren v. Warren,* 460 A.2d 526, 528 (Del. 1983); *Michelson v. Duncan*, 407 A.2d 211, 218-19 (Del. 1979).[8]  Finally, Maryland law recognizes the general rule that "[a]n illusory promise cannot constitute valid consideration." *Manning v. Mercatanti*, 898 F. Supp. 2d 850, 858 (D. Md. 2012) (quoting 2 Arthur L. Corbin, Corbin on Contracts § 5.28 (2003) (stating that "[a]n illusory promise is neither enforceable against the one making it, nor is it operative as consideration for a return promise").  "Without a binding obligation, sufficient consideration does not exist to support a legally enforceable agreement." *Id.*  De Simone's offer to license the VSL#3 Know-How was illusory because De Simone had previously transferred it to VSL.  Whether based on De Simone's fraud, usurpation of corporate opportunities, and breach of fiduciary duties; or the fact that De Simone did not own the Know-How for VSL#3 when he purportedly licensed such Know-How to other entities in the

---

[8] The law is not substantially different under Maryland law.  *See Sullivan v. Easco Corp.*, 656 F. Supp. 531, 533 (D. Md. 1987) (contract unfair to corporation entered in bad faith by corporate officer is a nullity); *Chesapeake Constr. Corp v. Rodman*, 261 A.2d 156 (Md. 1970).

Void Agreements, VSL has alleged multiple theories under which these agreements are void and unenforceable.

De Simone also rehashes the same flawed arguments with respect to notice and the statute of limitations. For instance, De Simone avers that it is too late to set aside the 2008 Danisco Agreement because VSL had knowledge of that agreement at least three years ago. However, as alleged in the Counterclaim, VSL's corporate minutes fail to reflect any reference to the 2008 Danisco Agreement, and VSL had no knowledge of the 2008 Danisco Agreement until the summer of 2014.  (Counterclaim ¶¶ 102-103.)  De Simone relies on documents outside the pleadings to aver that Paolo Cavazza knew of the 2008 Danisco Agreement by 2011, yet there is no indication that Paolo Cavazza was aware of the terms or import of the 2008 Danisco Agreement, or that he ever had the opportunity to review the agreement itself.  Moreover, Cavazza was not then and has not since been an officer, director or agent of VSL.  His knowledge is irrelevant to the question of whether VSL was aware of the 2008 Danisco Agreement.  (*See supra* Section I.B.)  Thus, even if De Simone were correct in his legal assertion that knowledge of the 2008 Danisco Agreement somehow precluded setting aside the agreement, there is nothing to suggest that VSL had such notice and the Court should deny De Simone's Motion to Dismiss Count III.

> **D.     Count IV Adequately Pleads a Cause of Action for Breach of Fiduciary Duty Under Delaware Law.**
>
> > i.     Delaware Law Recognizes a Separate Tort Action for Breach of Fiduciary Duty.

De Simone incorrectly argues that the Court should dismiss Count IV, as "Maryland does not recognize a separate tort action for breach of fiduciary duty."  (De Simone Mem. in Supp. at 31.)  As previously stated, however, Maryland follows the internal affairs doctrine, and therefore

Delaware law applies to VSL's breach of fiduciary duty claim in Count IV.  Delaware recognizes

a separate tort action for breach of fiduciary duty.  *In re Am. Int'l Grp., Inc.*, 965 A.2d 763, 799

(Del. Ch. 2009) *aff'd sub nom.*, *Teachers' Ret. Sys. of La. v. PricewaterhouseCoopers LLP*, 11

A.3d 228 (Del. 2011).

ii.   VSL's Breach of Fiduciary Duty Claim Is Adequately Pled.

Directors and officers of a Delaware corporation owe fiduciary duties of loyalty and care.

*In re Novell, Inc. S'holder Litig.*, No. 6032, 2014 WL 6686785, at *7 (Del. Ch. Nov. 25, 2014).

The duty of loyalty "requires an undivided and unselfish loyalty to the corporation [and]

demands that there shall be no conflict between duty and self-interest."  *Guth v. Loft, Inc.*, 5 A.2d

503, 510 (Del. 1939).  It "mandates that the best interest of the corporation and its shareholders

takes precedence over any interest possessed by a director [or] officer . . . and not shared by the

stockholders generally."  *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993).

Corporate officers and directors, therefore, "are not permitted to use their position of trust and

confidence to further their private interests."  *Guth*, 5 A.2d at 510.

A director or officer breaches his duty of loyalty when he "fail[s] to pursue the best

interests of the corporation and its stockholders and therefore fail[s] to act in good faith."  *In re

Rural/Metro Corp. Stockholders Litig.*, 102 A.3d 205, 253 (Del. Ch. 2014); *Stone ex rel.

AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (stating that the duty of good

faith is "a subsidiary element, *i.e.*, a condition, of the fundamental duty of loyalty") (internal

quotation marks omitted).  A director or officer fails to act in good faith "where the fiduciary

intentionally acts with a purpose other than that of advancing the best interests of the

corporation," *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del. 2006), and where

the challenged conduct "include[s] any action that demonstrates a faithlessness or lack of true

devotion to the interests of the corporation and its shareholders." *Ryan v. Gifford*, 918 A.2d 341, 357 (Del. Ch. 2007). A director or officer also breaches the duty of loyalty by engaging in self-dealing or entering into a self-interested transaction. *In re Coca-Cola Enters., Inc.*, No. 1927-CC, 2007 WL 3122370, at *4 (Del. Ch. Oct. 17, 2007), *aff'd*, 954 A.2d 910 (Del. 2008).

Without recounting and discussing in detail each and every breach alleged in the Counterclaim, VSL has alleged that De Simone repeatedly breached his duty of loyalty to VSL by putting his personal interests above those of VSL, usurping corporate opportunities that were within VSL's line of business, and engaging in other conduct to benefit himself and harm VSL.[9] De Simone's Memorandum even recounts seven specific types of allegations in the Counterclaim which support VSL's claim for breach of fiduciary duty. (De Simone Mem. in Supp. at 30-31.)

Though De Simone attempts to rebut a few of those allegations on the merits (and only a few), he cannot evade numerous allegations in the Counterclaim which, taken as true, establish that he acted in his own self-interest to the detriment of VSL. The Counterclaim includes specific factual allegations to show that De Simone engaged in self-dealing (Counterclaim ¶¶ 69-87, 107-117); that he surreptitiously set up plans to cut off VSL's supply of VSL#3 and compete with VSL (Counterclaim ¶¶ 118-126, 162-185); that he concealed from VSL his dealings with respect to Danisco and his attempts to re-claim ownership over the VSL#3 Know-How (Counterclaim ¶¶ 100-106, 118-126); that he filed confusingly similar trademark applications for his competing product (Counterclaim ¶¶ 7, 148-161); that he intentionally burdened VSL with a commercially unviable contract with Johnson & Johnson in hopes of diverting that market to his new entity (Counterclaim ¶¶ 5, 127-137); and various other specific allegations which would

---

[9] VSL incorporates by reference its arguments regarding De Simone's breaches of his fiduciary duties made in its Opening Brief in Support of its Motion for a Preliminary Injunction [Dkt. 55-1].

demonstrate clear breaches of fiduciary duties by De Simone.  As such, Count IV is more than adequately pled.

iii.   <u>Count IV Is Not Time Barred.</u>

Finally, De Simone argues that because Paolo Cavazza and his late brother, Claudio Cavazza, were aware of the J&J Agreements, VSL's breach of fiduciary duty claim is time barred and should be dismissed.  (De Simone Mem. in Supp. at 32.)  As set forth *supra* in Section I.B, this argument fails as—even if their knowledge of the J&J Agreements were sufficient to put them on notice of De Simone's deceit—their knowledge cannot be imputed to VSL.

**E.  Count V (Conspiracy) Is Properly Pled Because VSL Alleges Independent Tortious Acts by De Simone.**

In arguing that VSL's conspiracy claim should be dismissed for failure to allege independent tortious conduct, De Simone again ignores the numerous factual allegations plead in support of VSL claims.  In addition to the seven factual allegations of independent tortious conduct contained in Paragraph 251 of the Counterclaim (which De Simone acknowledges but apparently dismisses without comment), the Counterclaim includes allegations of breach of fiduciary duty (Count IV), fraud (Count VI), tortious interference (Count VII), and usurpation of a corporate opportunity (Count VIII).  Thus, the Counterclaim alleges multiple instances of independent tortious conduct by De Simone.

The case cited by De Simone, *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038 (1995), simply does not support De Simone's argument.  *Alleco* merely stands for the proposition that an action for conspiracy cannot lie "unless the plaintiff can show that he has in fact been aggrieved, or has sustained actual legal damage by some overt act, done in pursuance and execution of the conspiracy."  665 A.2d at 1045 (*quoting Kimball v. Harman &*

23

*Burch*, 34 Md. 407, 409-411 (1871)).  Here, VSL has not merely alleged that "De Simone and Park conspired to cut off VSL's supply of VSL#3, misappropriate VSL's trade secrets, and compete directly with VSL"; rather, VSL alleges that "[t]hrough the wrongful and unlawful acts described [in the Counterclaim], Park and De Simone *carried out their conspiracy*" to VSL's detriment.  (Counterclaim ¶¶ 249-250 (emphasis added).)  As such, VSL has sufficiently pled a claim of conspiracy in Count V.

De Simone also incorrectly asserts that VSL has failed to properly plead its claim for punitive damages.  On a motion to dismiss, the claim for punitive damages should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Nunes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 609 F. Supp. 1055, 1061 (D. Md. 1985).  Maryland law limits the availability of punitive damages to situations in which the defendant's conduct is characterized by "knowing and deliberate wrongdoing."  *Ellerin v. Fairfax Sav., F.S.B.*, 652 A.2d 1117, 1123 (Md. 1995).[10]  In support of his argument that VSL's claim for punitive damages should be dismissed, De Simone cites the "actual malice" standard as stated in *Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633, 650 (Md. 1992) (punitive damages may only be awarded in such cases when "the plaintiff has established that the defendant's conduct was characterized by evil motive, intent to injure, ill will, or fraud, i.e., 'actual malice.'").  (De Simone Mem. in Supp. at 34.)

The allegations in the Counterclaim demonstrate precisely such malice by De Simone. VSL alleges that for a period of more than eight years, De Simone conspired with Park in a

---

[10] Maryland courts have found punitive damages to be of a substantive nature, and, like torts in general, stated that the choice of law related thereto should be determined under the doctrine of *lex loci delicti*. *Naughton v. Bankier*, 691 A.2d 712, 716 (Md. Ct. Spec. App. 1997).  Because the place of injury was Maryland, Maryland law will apply to VSL's claim for punitive damages arising out of De Simone's conspiracy.

scheme of self-dealing and deceit in order to defraud VSL, divert its corporate assets, and usurp every available opportunity from VSL for his own benefit.  VSL alleges that these actions were malicious and willful, and committed with the purpose of injuring VSL.  (Counterclaim ¶ 252.) Indeed, the fraudulent conduct underlying De Simone's conspiracy entails, ***by definition***, the type of deliberate wrongdoing and evil motive that has traditionally justified the award of punitive damages.  *Ellerin v. Fairfax Sav., F.S.B.,* 652 A.2d 1117, 1126 (Md. 1995);  *Kerby v. Mortgage Funding Corp.*, 992 F. Supp. 787, 803 (D. Md. 1998).  As such, VSL has sufficiently pled a cause of action under Maryland law.

### F.      Count VI States a Viable Claim for Fraud.

To present a prima facie case of fraud, one must plead: (1) a false representation made by a party; (2) its falsity was known to that party or the misrepresentation was made with such reckless indifference to truth as to impute knowledge to the party; (3) the misrepresentation was made for the purpose of defrauding some other person; (4) the person not only relied on the misrepresentation but had a right to rely upon it with full belief in its truth, and the person acted in reliance upon the misrepresentation; and (5) the person suffered damage directly resulting from the misrepresentation.  *Gross v. Sussex Inc.*, 630 A.2d 1156, 1161 (Md. 1993).  Fraud may be based on a material omission or concealment as well as false representation.  *Fox v. Kane-Miller Corp.*, 542 F.2d 915, 918-19 (4th Cir. 1976).  VSL has alleged facts supporting the elements of a prima facie case of fraud, and De Simone's arguments to the contrary are unavailing.

De Simone first argues that VSL cannot pursue a fraud claim on the basis of De Simone's "failure to disclose the specifics of his intent to compete with VSL [because] no such duty to disclose exists under Maryland law."  (De Simone Mem. in Supp. at 35.)  VSL's fraud claim in

Count VI is not, however, grounded upon De Simone's failure to disclose ***the specifics*** of his intent to compete with VSL; but rather his failure to disclose ***his intent*** to compete at all. (Counterclaim ¶ 255.)  As the court explicitly stated in *Maryland Metals, Inc. v. Metzner*, 382 A.2d 564, 569 (Md. 1978), which De Simone cites in support of his argument, "an employee is under an obligation to be candid with his employer in preparing to establish a competing enterprise." *Maryland Metals*, 382 A.2d at 569.  The *Maryland Metals* court went on to state that the right to prepare to compete with an employer "has not been applied to immunize employees from liability where the employee has committed some fraudulent, unfair or wrongful act in the course of preparing to compete in the future." *Id*.  The court then enumerated examples of such acts, including misappropriation of trade secrets, misuse of confidential information, solicitation of employer's customers prior to cessation of employment, conspiracy to bring about mass resignation of employer's key employees, and usurpation of employer's business opportunity—almost all of which form the basis for VSL's claims against De Simone. *Id*. at 569-70.  VSL has alleged that for no less than eight years, De Simone planned and conspired to usurp VSL's business and compete directly with VSL in the sale of VSL#3. (Counterclaim ¶¶ 249-253.)  In fact, De Simone did not simply plan to compete, he schemed to put VSL out of business and seize its market share by interfering with is supply of VSL#3.  (*Id*.) These facts are more than sufficient to survive De Simone's Motion to Dismiss.

De Simone's second argument for dismissal of VSL's fraud claim is that De Simone's execution of agreements that were entirely self-serving, contrary to VSL's best interest, and designed to allow De Simone to compete directly with VSL and usurp VSL's business is "simply not fraud because he was not misrepresenting or concealing anything to or from VSL Inc."  This argument is factually inaccurate and directly contrary to the allegations in the Counterclaim.  The

Counterclaim alleges, and VSL will prove, that De Simone concealed his misconduct and self-dealing from the company. (Counterclaim ¶¶ 69-117, 256-259).   In fact, the Counterclaim demonstrates that De Simone flatly refused to provide information regarding VSL to its shareholders upon request. (Counterclaim ¶¶ 138-147).   Because the Counterclaim includes specific allegations regarding De Simone's concealment of information from VSL, De Simone's attempt to dismiss VSL's fraud claim is meritless.

Finally, De Simone incorrectly asserts that VSL has failed to properly plead its claim for punitive damages in Count VI, "for the same reasons articulated" in regard to Count V (conspiracy).  (De Simone Mem. in Supp. at 36.)   However, as set forth above in Section II.E, the elements of the tort of fraud or deceit in Maryland include, **by definition**, the type of deliberate wrongdoing and evil motive that has traditionally justified the award of punitive damages.  *Ellerin*, 652 A.2d at 1126.  VSL alleges that De Simone's material omissions were deliberate and intentional, and not through ignorance, mistake, or negligence.  (Counterclaim ¶¶ 255, 256, 259, 260, 263.)  VSL further alleges that De Simone's fraud was malicious and willful, and for "the purpose of injuring VSL."  (Counterclaim ¶ 264.)  As such, **by definition**, VSL's claim for punitive damages is sufficiently pled to survive De Simone's Motion to Dismiss.   For these reasons, the Court should deny De Simone's Motion to Dismiss Count VI.

### G.     Count VII (Tortious Interference) Is Founded Upon Sufficient Factual Allegations.

In   arguing   that   VSL's   claim   for   tortious   interference   with   a   business opportunity/relationship should be dismissed, De Simone again ignores Maryland law and the allegations made in the Counterclaim.  In order to state a claim for tortious interference with a contract or economic relationship, a plaintiff must allege: (1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful

purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants; and (4) actual damage and resulting loss. *Painter's Mill Grille, LLC v. Brown*, No. 11-1607, 2012 WL 576640, at *8 (D. Md. Feb. 21, 2012) *aff'd*, 716 F.3d 342 (4th Cir. 2013).

De Simone incorrectly alleges that "violence or intimidation, defamation, injurious falsehood or other fraud, violations of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith" are the ***only*** wrongful or unlawful conduct that can give rise to a proper claim. (De Simone Mem. in Supp. at 36 (citing *Alexander & Alexander Inc. v. Evander*, 650 A.2d 260 (1994)).)  Maryland courts have held that wrongful conduct may also include violations of statutes, *Natural Design, Inc. v. Rouse Co.*, 485 A.2d 663, 676 (Md. 1984) (holding that violation of Maryland Antitrust Act constitutes wrongful conduct for tortious interference with business relations); violations of the common law, *Klingel's Pharmacy v. Sharp & Dohme*, 64 A. 1029 (Md. 1906) (common law antitrust violations deemed wrongful); and common law torts, *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535 (D. Md. 2006). Additionally, "[w]hat is improper or wrongful conduct is incapable of precise definition." *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 119 (Md. 1994).  Whether particular conduct is proper or improper for purposes of a tortious interference claim is a factual question to be determined on the basis of all the facts and circumstances, and therefore, it is inappropriate for a motion to dismiss.  *Id.*

Here, even if De Simone is correct in his assertion that the "wrongful acts" element of a claim for tortious interference are limited to those enumerated in *Alexander & Alexander*, VSL's tortious interference claim is based on, *inter alia*, De Simone's fraud—one of the specific acts enumerated in *Alexander & Alexander*—and therefore cannot be dismissed.  (Counterclaim ¶ 269.)  VSL has also pled numerous other wrongful acts as the basis for its claim including breach

28

of fiduciary duty, usurpation of corporate opportunities, misappropriation of trade secrets, and misuse of VSL's confidential information.  As such, the Court should deny De Simone's Motion to Dismiss Count VII.

De Simone also relies upon the 2006 Confidential Disclosure Agreement as authorizing him to cut off VSL's supply of VSL#3 from Danisco.  (De Simone Mem. in Supp. at 37.) However, as discussed *supra* in Section II.A.ii, the Confidential Disclosure Agreement does not foreclose VSL's claim.  That agreement was part and parcel of De Simone's scheme to regain control over VSL#3, and he cannot rely upon an agreement that he illicitly executed on behalf of VSL to excuse his own self-dealing.  In other words, the Confidential Disclosure Agreement was ***an integral part of De Simone's tortious interference***, as he used that agreement to give himself control—without authorization—over VSL's supply chain with Danisco.  That agreement does not excuse De Simone's tortious conduct; rather, it reinforces VSL's allegations.

Moreover, De Simone fails entirely to consider VSL's numerous other allegations regarding De Simone's fraud and breaches of fiduciary duty that support its tortious interference claim and are unrelated to the Confidential Disclosure Agreement.  Accordingly, the Court should deny De Simone's Motion to Dismiss Count VII.

### H.   Count VIII States a Proper Claim for Usurpation of a Corporate Opportunity.

De Simone argues that VSL's claim for usurpation of a corporate opportunity should be dismissed because De Simone was contractually permitted to engage in the conduct underlying VSL's claim.  (De Simone Mem. in Supp. at 37-38.)  Once again, however, De Simone ignores entirely VSL's allegations that the very contracts upon which he relies (*e.g.*, the January 2010 Know-How Agreement, the 2014 Danisco Supply Agreement, *etc.*), were procured by fraud and deceit, in breach of his fiduciary duties, and are therefore unenforceable.  De Simone would have

29

the Court grant his Motion to Dismiss based on the language and effect of contracts that represent the very heart of the parties' dispute—that De Simone and his co-conspirator Park orchestrated a scheme to defraud VSL and usurp its corporate opportunity.  De Simone cannot reasonably contend that, absent his fraudulent conduct and breach of fiduciary duties to VSL, VSL would not have been able to continue purchasing VSL#3 from Danisco and sell the product to the public.  This is the basis of VSL's usurpation claim, and De Simone has presented no valid argument which should preclude VSL from moving forward with its claim.  As such, the Court should deny De Simone's Motion to Dismiss Count VIII.

I.    **Counts IX (Misappropriation of Trade Secrets), X (Conversion) and XI (Unjust Enrichment) Are Valid Because VSL Has Sufficiently Alleged Its Ownership of the VSL#3 Intellectual Property and Use of That Intellectual Property by De Simone** *et al.*

Seeking dismissal of VSL's claims related to De Simone's misappropriation of trade secrets, De Simone relies again upon the 2001 Patent License Agreement, 2006 Confidential Disclosure Agreement, and 2010 Know-How License Agreement as establishing his ownership of the VSL#3 Know-How.  In essence, De Simone again argues that the Court should dismiss those counts simply because he is right and VSL is wrong.  This is not a valid basis for a motion to dismiss.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 ("The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint; [it] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").

As has been argued *ad nauseam*, De Simone's reliance on these three agreements, without considering the myriad other contracts and factual allegations made in the Counterclaim, is not a valid basis for the Court to grant De Simone's Motion to Dismiss.  Tellingly, De Simone relies on the Patent License Agreement—the language of which is clearly limited to the '615 Patent—to support his position that he owned the VSL#3 Know-How and merely licensed it to

VSL; while the language of the Mendes Assignment Agreement, on which VSL relies, is a broad transfer of rights, which include the VSL#3 Know-How.  Indeed, it was based on this agreement to transfer the VSL IP that the other members of the joint venture agreed to pay De Simone and fund the ongoing research, development, and marketing expenses to commercialize VSL#3. (Counterclaim ¶¶ 38-39.)  Despite De Simone's overly emphatic contentions to the contrary, the plain language of the agreements simply does not support De Simone's argument that he owns the VSL#3 Know-How, and De Simone's Motion to Dismiss Counts IX, X, and XI should be denied on that basis as well.

### J.   VSL Has Sufficiently Pled Counts XII and XIII Relating to De Simone's Direct and Contributory Trademark Infringement and Unfair Competition.

In Counts XII (trademark infringement) and XIII (unfair competition under the Lanham Act and Maryland common law), VSL has alleged both direct and contributory infringement of its VSL#3 trademark against De Simone.  (Counterclaim ¶¶ 316-352.)  For direct trademark infringement and/or unfair competition, a plaintiff must establish that: "it owns a valid and protectable mark, and that the defendant's use of a 'reproduction, counterfeit, copy, or colorable imitation' of that mark creates a likelihood of confusion."  *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009) (quoting 15 U.S.C. § 1114(1)(a)).[11]  Contributory trademark infringement occurs when a party "'intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is

---

[11] This Court has held that "[c]ommon law infringement and unfair competition are generally analyzed together with federal Lanham Act claims, because Maryland common law on these issues nearly always tracks the federal Lanham Act."  *HQM, Ltd. v. Hatfield*, 71 F. Supp. 2d 500, 504 (D. Md. 1999) (dismissing federal statutory and Maryland common law claims together and applying the same analysis to both) (citing *Nat'l Fed. of the Blind, Inc. v. Loompanics Enters., Inc.*, 936 F. Supp. 1232, 1236 n. 4 (D. Md. 1996).  This Court therefore should consider VSL's Lanham Act and Maryland common law trademark claims together and apply the same analysis to each claim.

engaging in trademark infringement.'"  *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 163 (4th Cir. 2012) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982)).

De Simone argues that these counts fail to state a claim against him because there are no allegations that he used the trademark in commerce.  (De Simone Mem. in Supp. at 40.)  De Simone's arguments in support of this point amount to an improper argument on the *merits of the claims* instead of their *sufficiency for pleading purposes*.

De Simone further argues that VSL cannot establish De Simone's use of the infringing marks "in commerce" because VSL has not yet proven a connection between De Simone and the federal trademark applications submitted by Mendes SA for "VSL3 BY DE SIMONE" and "VSL3TOTAL."  However, De Simone ignores the abundant factual allegations establishing his connection to the trademark applications filed by Mendes SA.  VSL alleges in its Counterclaim that Mendes SA is a company controlled by De Simone (Counterclaim ¶ 153); that while still CEO of VSL, De Simone was actively engaged in establishing his competing business through Mendes SA to establish a competing product known as "Vivomixx," which is promoted as being identical in composition to VSL#3 (Counterclaim ¶ 157); that through Mendes SA De Simone filed the "VSL3 BY DE SIMONE" and "VSL3TOTAL" federal trademark applications (Counterclaim ¶ 154); that De Simone has purportedly removed VSL from, and added Mendes SA to, the list of entities to whom Danisco can supply VSL#3 (Counterclaim ¶ 239); that De Simone has used, is using, and/or is inducing third parties to use the terms "VSL – 3" and "VSL#3" to advertise, market, promote, and offer to sell competing food supplement products (Counterclaim ¶ 327); and that, upon information and belief, Mendes SA is selling and/or inducing the sale of infringing products within Maryland (Counterclaim ¶ 23).  The exhibits heavily relied upon by De Simone in his Memorandum are merely *examples* of Internet

advertising and point-of-sale materials that, upon information and belief, evidence Mendes SA's and De Simone's infringement and do not comprise the entirety of proof against them.  (*See* Counterclaim ¶¶ 159-160, Exs. 25-27.)

De Simone further argues that VSL has not proven the connection between these particular exhibits and U.S. consumers, such that VSL cannot establish a likelihood of confusion. (De Simone Mem. in Supp. at 40-41.)  The question of whether there is a likelihood of confusion with VSL's U.S. customers "is a factual issue dependent on the circumstances of [the] case and is ill-suited on a motion to dismiss."  *Potomac Conference Corp. of Seventh-day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 768 (D. Md. 2014).

VSL has also alleged in its Counterclaim that De Simone is contributorily liable for knowingly inducing ExeGi's trademark infringement as well.  In particular, VSL alleged that upon ExeGi's formation, ExeGi began working with De Simone on plans to produce and market a probiotic product to directly compete with VSL#3 using intellectual property misappropriated from VSL (Counterclaim ¶ 187); that De Simone has purportedly removed VSL from, and added ExeGi to, the list of entities to whom Danisco can supply VSL#3 (Counterclaim ¶ 239); that ExeGi's CEO wrote to VSL stating that ExeGi intended to launch a "generic formulation" of VSL#3 and that De Simone would be "supporting this effort by granting ExeGi access to his know-how and supply for the U.S. and Canada" (Counterclaim ¶ 188); that ExeGi has promoted its "Visbiome" product as one in collaboration with De Simone (Counterclaim ¶¶ 187-194, Exs. 32, 34-36); that ExeGi is infringing the VSL#3 Trademarks by promoting its "Visbiome" product with extensive use of "VSL#3" (Counterclaim ¶¶ 191-196,  Exs. 35-36); and that De Simone is liable for contributory trademark infringement of the VSL#3 Trademarks by knowingly inducing

third parties to use the term "VSL#3" to advertise, market, promote, and offer to sell competing

food supplement products (Counterclaim Counts XII and XIII, ¶¶ 317, 327, 338, and 342).

Therefore, not only has VSL sufficiently pled direct and contributory infringement

against De Simone as to his and Mendes SA's infringing acts, it has also sufficiently pled

contributory infringement against De Simone as to his intentional inducement of ExeGi to

infringe the VSL#3 Trademarks.  De Simone's Motion to Dismiss does not even address the

allegations of his involvement with ExeGi.  The Court should therefore deny De Simone's

Motion to Dismiss Counts XII and XIII of the Counterclaim.

> **K.     VSL Will Voluntarily Dismiss Counts XIV and XXIV Asserting Trademark Infringement in Violation of Md. Code Ann., Bus. Reg., § 1-414.**

In Counts XIV and XXIV of the Counterclaim, VSL included claims under Md. Code

Ann., Business Regulation, § 1-401 *et seq.* for willful and deliberate unlawful use of the VSL#3

Trademarks.  Although federally registered under the Lanham Act and protectable under

Maryland common law, VSL's VSL#3 Trademarks are not separately registered with the

Maryland Secretary of State, as is required to obtain relief under the Maryland statute.

Therefore, simultaneously with VSL's filing of this memorandum, VSL is filing a notice of

voluntarily dismissal of Counts XIV and XXIV pursuant to Fed. R. Civ. P. 41(c).  This voluntary

dismissal does not, however, alter VSL's federal trademark, unfair competition or Maryland

common law claims against Mendes SA, De Simone, or ExeGi.  *See* Md. Code Ann., Bus. Reg.

§ 1-402 ("This subtitle does not affect adversely a right or the enforcement of a right in a mark

acquired in good faith at any time at common law."); *HQM, Ltd. v. Hatfield*, 71 F. Supp. 2d 500,

504 (D. Md. 1999) ("Common law infringement and unfair competition are generally analyzed

together with federal Lanham Act claims, because Maryland common law on these issues nearly

always tracks the federal Lanham Act.").  De Simone's Motion to Dismiss is therefore moot as it relates to Counts XIV and XXIV of the Counterclaim.

> **L.     Count XV (Declaratory Judgment as to Cancellation of Trademarks) Is Properly and Sufficiently Pled.**

Count XV of VSL's Counterclaim requests a declaration from the Court that the "VSL3TOTAL Application and the VSL3 BY DE SIMONE Application are invalid and that Mendes SA does not have the right to register the marks set forth in either application." (Counterclaim ¶ 367.)  De Simone argues that because Mendes SA is the named applicant and "persons other than Prof. De Simone actually filed them," De Simone should not be a defendant to this claim.  (De Simone Mem. in Supp. at 43.)  This is a factual issue not appropriate for resolution pursuant to Fed. R. Civ. P. 12(b)(6).  VSL has properly alleged that De Simone filed both applications at issue "through Mendes SA, a Swiss company controlled by De Simone." (Counterclaim ¶¶ 153-154.)   VSL has also alleged that while De Simone "was the CEO and Chairman of VSL, De Simone was actively engaged establishing his competing business through Mendes SA" (Counterclaim ¶ 157), and that De Simone has purportedly removed VSL and added Mendes SA to the list of entities to whom Danisco can supply VSL#3.  (*See* Counterclaim ¶ 229.)  The "other persons" De Simone references as having "actually filed" the applications were the law firms of Nixon & Vanderhye P.C. and Abrema Agence de Brevets & Marques, Ganguillet.  (De Simone Mem. in Supp. at 43; *see* Counterclaim Exs. 23-24.)  The full extent of De Simone's control over Mendes SA, its attorneys, and its decisions to file federal trademark applications incorporating the VSL#3 Trademarks and De Simone's own name are facts that will be further clarified through discovery in this case.

De Simone's reliance on the *Vina Casa Tamaya* case to argue that there is no actual case or controversy is also misplaced.  (De Simone Mem. in Supp. at 43.)  In that case, the dispute

centered solely on the defendant's attempted registration—not its use—of the marks in question.

*See Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*, 784 F. Supp. 2d 391, 395 (S.D.N.Y.

2011).  In contrast, the *Vina Casa Tamaya* court itself cited to several cases in which courts have

denied similar motions to dismiss on the basis that a more substantial controversy existed

between the parties.[12]  Those cases more closely resemble the facts before this Court, where (a)

VSL has filed underlying trademark infringement claims for De Simone's and Mendes SA's

infringing use of the applied-for trademarks; (b) Mendes SA has filed a cancellation proceeding

with the Trademark Trial and Appeal Board ("TTAB") on the basis that VSL's asserted

registrations are a barrier to registration of the applied-for trademarks; and (c) the development,

use, and filing of the applied-for marks are the subject of several other VSL claims before this

Court.

This Court should further deny De Simone's Motion to Dismiss in the interest of judicial

economy, as the issues before this Court will not only settle the issues before the U.S. Patent and

---

[12] *Vina Casa Tamaya*, 784 F. Supp. 2d at 396:

> *Water Pik, Inc. v. Med-Sys., Inc.,* No. 10-cv-01221-PAB-CBS, 2011 WL 843916, at *2
> (D.Colo. Mar. 8, 2011) (finding jurisdiction where the defendant not only opposed
> registration of the plaintiffs mark in the TTAB but also had filed a federal trademark
> infringement suit against plaintiff which the defendant then dismissed without prejudice
> to its refiling); *Blue Athletic, Inc. v. Nordstrom, Inc.,* No. 10-cv-036, 2010 WL 2836303,
> at *4 (D.N.H. July 19, 2010) ("[T]he combination of two demand letters and formal
> TTAB opposition on infringement grounds, all steeped in the language of trademark
> infringement, is sufficient to meet the *MedImmune* standard."); *Venugopal v. Sharadha
> Terry Prods., Ltd.,* No. 07-CV-00484C, 2009 WL 1468462, at *4 (W.D.N.Y. May 22,
> 2009) (finding jurisdiction where the defendant asserted in cease-and-desist letter to
> plaintiff that it believes any use of the plaintiff's trademark would infringe on the
> defendant's use of its own trademark and subject plaintiff to liability for trademark
> infringement and unfair competition); *Floyd's 99 Holdings, LLC v. Woodrum,* No. 08-cv-
> 01321-MSK-BNB, 2009 WL 798804, at *5 (D. Colo. Mar. 24, 2009) ("The existence of
> [a TTAB] proceeding, coupled with the parties' extensive history of confrontation and
> negotiation concerning their competing marks and [the defendant's] prior threat of
> litigation, sufficiently demonstrates the existence of a case or controversy sufficient to
> support invocation of the Declaratory Judgment Act.").

Trademark Office ("USPTO"), but the substantial underlying claims as well.  The USPTO's jurisdiction, however, extends to <u>only</u> the registrability of the VSL#3 Trademarks.  If De Simone's Motion to Dismiss is granted it would leave the parties with both this federal litigation and an active (and currently suspended per the request of Mendes SA) TTAB proceeding concerning similar core facts and questions of law, without the potential for any true resolution of their substantial disputes until after *both proceedings reach a final disposition.*

> **M.    Count XVI Sufficiently Pleads a Claim for De Simone's Breach of the Patent License Agreement.**

As he did in contesting VSL's claim for breach of fiduciary duty (Count IV), De Simone argues that the Court should dismiss VSL's claim for breach of the Patent License Agreement (Count XVI) because De Simone claims that he did make the required offer of patent rights to VSL.  (De Simone Mem. in Supp. at 44.)  However, VSL has alleged that CDS failed to do so, in breach of his fiduciary duty, and none of the attachments to the pleadings suggest otherwise.  (Counterclaim ¶ 71, 251.)  Thus, the claim for breach of the Patent License Agreement is well-pled.

De Simone also argues that Count XVI should be dismissed because VSL's "cause of action for breach of section 3.1 of the Patent License Agreement accrued no later than 2005, when the duty to make the offer first arose and was not fulfilled."  (De Simone Mem. in Support at 44.)  As previously stated, De Simone should not be rewarded for the success of his deceit, and whether under Maryland's adverse domination doctrine or Delaware's equitable tolling doctrine, Count XVI is not time barred.  (*Supra* Section I.D.)

Additionally, De Simone's argument that VSL was aware of De Simone's acquisition of full ownership rights over the '615 Patent the settlement is based entirely on the April 2005 Letter, an exhibit to an affidavit of counsel for Actial in the UK Litigation (which notably did not

contain the price and conditions De Simone agreed with the co-owner, or grant the option to acquire such rights).  (De Simone Mem. in Supp. at 12.)  As previously stated, Actial and VSL are entirely separate companies, and therefore VSL is not bound by the affidavit.  Moreover, as previously stated, De Simone has provided no legal basis as to how the Court could rely on a document that is not an exhibit to, or even referenced in, the Counterclaim.  As such, the Court should not consider the April 2005 Letter on De Simone's Motion to Dismiss.[13]

### N.    Count XVII (Unjust Enrichment) Should Not Be Dismissed as the Contract at Issue Is Disputed.

Although De Simone is correct that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter, De Simone ignores an exception to the general rule.  (De Simone Mem. in Supp. at 45.)  Where the existence or terms of a contract are disputed, then a plaintiff may plead unjust enrichment in the alternative to a breach of contract.  *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002) ("[A]lthough SCAA may not recover under both contract and quasi-contract theories, it is not barred from pleading these theories in the alternative where the existence of a contract concerning the subject matter is in dispute."); s*ee also RaceRedi Motorsports*, 640 F.Supp.2d at 666 (applying California law).  Because De Simone alleges that the Patent License Agreement also includes license of the VSL#3 Know-How, and that all he was required to do was provide "notice" that he received all of the rights to the '615 Patent, the terms of the Patent License Agreement are in dispute, and VSL is not barred from pleading a quasi-contract theory in the alternative.

---

[13] For the same reason, the Court cannot consider the ST Italy-De Simone Settlement Agreement, which VSL's Counterclaim neither references nor relies upon; and therefore cannot be a basis for De Simone's Motion to Dismiss.

### O.       Count XVIII (Breach of Contract) States a Viable Claim.

De Simone incorrectly argues in regard to Count XVIII (breach of contract as third party beneficiary) that the Product Development and Collaboration Agreement does not reflect the parties' agreement to transfer all of the intellectual property for VSL#3 to VSL.[14]   Although De Simone contends VSL's reading of the Product Development and Collaboration Agreement is unreasonable, it is entirely consistent with the parties' later agreements.  Specifically, De Simone and Mendes Italy executed three agreements with VSL pursuant to the joint venture. (Counterclaim ¶ 48.)   Not surprisingly, and consistent with the Product Development and Collaboration Agreement, the De Simone Assignment Agreement and the Mendes Assignment Agreement contain a broad transfer of all De Simone's and Mendes Italy's intellectual property, including the VSL#3 Know-How and trademark rights.  (*See* De Simone Assignment Agreement and Mendes Assignment Agreement.)

What is unreasonable is De Simone's contention that the only asset Mendes Italy agreed to transfer under the Product Development and Collaboration Agreement was "a European Union trademark designation, and nothing more."  (De Simone Mem. in Supp. at 5.)   Much like with the Mendes Assignment Agreement, discussed *supra* in Section II.A.i, while Appendix A to the Product Development and Collaboration Agreement lists only one actual trademark number in regard to VSL#3 (CTM trademark number 1437789), it also lists three other countries as well (Canada, Japan, and the United States), including a filing date for Canada, and an indication that the trademarks were "under filing" for the U.S. and Japan.   (Product Development and

---

[14] De Simone does not contest that VSL was a third-party beneficiary to the contract.  (De Simone Mem. in Supp. at 46-47.)

Collaboration Agreement, App. A.)   Again, De Simone does not even acknowledge, let alone explain, the inclusion of the other countries in the Appendix.

De Simone cites Section 5.3(C)(2) of the Product Development and Collaboration Agreement and argues that he was only required to transfer intellectual property rights for inventions he developed *after* the incorporation of VSL.  (De Simone Mem. in Supp. at 47.) However, that portion of the agreement merely addresses De Simone's ongoing obligation to transfer any *future* inventions he creates to VSL.  (*Id*.)  De Simone ignores entirely the broad transfer of the existing intellectual property contemplated by the agreement, which was consistent with the parties' later agreements.

As alleged in the Counterclaim, the Product Development and Collaboration Agreement represented the parties' fundamental agreement to form a joint venture where De Simone would contribute to VSL all of his inventions, intellectual property, and expertise regarding VSL#3 and other probiotic products; and the Cavazza Brothers would provide the funding and the extensive distribution and sales network required to successfully bring VSL#3 and other probiotic products to market throughout the world (Counterclaim ¶¶ 34-36.)  The parties, in fact, named this newly-formed entity "VSL."  (Counterclaim ¶ 34.)  As alleged in Count XVIII, De Simone's attempt to rescind that agreement, by attempting to reclaim ownership of the VSL#3 IP, constitutes a breach of that agreement.  These allegations are sufficient to allow the Court to find that the Product Development and Collaboration Agreement required De Simone and Mendes Italy to transfer their intellectual property to VSL, and the Court should deny De Simone's Motion to Dismiss Count XVIII.

### P.   Count XIX (Conversion) States a Viable Claim Because the VSL Information Is Property Capable of Being Converted.

De Simone incorrectly argues that the "VSL Information" that he refused to return upon leaving VSL is incapable of being converted.  De Simone argues that VSL has not alleged the existence of "any tangible documents evidencing a property interest in the @vslpharma.com email address," and therefore VSL has failed to state a cause of action for conversion.  (De Simone Mem. in Supp. at 48-49.)

In making this argument, De Simone ignores altogether VSL's additional allegation that De Simone converted its "documents, data, drawings, manuals, letters, notes, reports, electronic mail, and recordings;" all of which are alleged to contain "VSL's confidential and proprietary information."  (Counterclaim ¶ 389.)  Under Maryland law, the tort of conversion may extend to the type of intangible property rights that are merged or incorporated into a transferable document.  *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 965 (Md. 1999).  The "document" into which intangible property rights are merged or incorporated "need not be paper, as long as it is tangible and transferable."  *Thompson v. UBS Fin. Servs., Inc.*, 115 A.3d 125, 132 (Md. 2015).  Digital media is both tangible (*i.e.,* capable of being seen on an electronic device's screen) and transferable (*i.e.,* subject to an exertion of ownership or dominion).  *Id.*  Electronic documents and records stored on a computer can be converted "by simply pressing the delete button."  *Id.*

Here, VSL has alleged that the documents, data, drawings, manuals, letters, notes, reports, electronic mail, and recordings converted by De Simone contain VSL's "confidential and proprietary information" (*i.e.*, the VSL#3 Know-How), which all parties admit is extremely valuable.  As such, the VSL Information is capable of being converted, and the fact that some of it may have been in electronic format is of no consequence.  Although De Simone—who refused to return VSL's Information—is in the best position to know exactly what information he has

withheld from VSL, VSL's claim for conversion is sufficient to survive De Simone's Motion to Dismiss.

> **Q.     The Court Should Not Dismiss VSL's Counts Requesting Entry of an Injunction (Count XXV and XXVII) as VSL Has Properly Pleaded Several Separate Causes of Action.**

Although De Simone correctly asserts that injunctive relief is a remedy and not a cause of action, and that it is generally improper to frame a request for an injunction as a separate cause of action; where, as here, the plaintiff has properly pleaded several separate causes of action, that "impropriety is inconsequential," and the Court should not dismiss the request.  *TBC, Inc. v. DEI Holdings, Inc.*, No. 14-3644, 2015 WL 1396120, at *7 (D. Md. Mar. 24, 2015); *Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 574 (D. Md. 2012).[15]

## CONCLUSION

WHEREFORE, for the reasons set forth herein, VSL Pharmaceuticals, Inc. respectfully requests the Court enter an Order denying Claudio De Simone's Motion to Dismiss Defendant VSL Pharmaceuticals, Inc.'s Counterclaim, and granting such additional relief the Court deems appropriate.

Dated: July 24, 2015

---

[15] In further support of VSL's request for entry of injunctions, VSL incorporates by reference the arguments contained in its Opening Brief in Support of its Motion for Injunction [Dkt. 55-1].

**VSL PHARMACEUTICALS, INC.,**


By: _____/s/_____


Brian Cashmere, Esq. (USDC MD Bar No. 14170)
Williams Mullen
8300 Greensboro Drive, Suite 1100
McLean, VA 22102
Telephone: (703) 760-5200
Facsimile: (703) 748-0244
bcashmere@williamsmullen.com


*Admitted pro hac vice*:
Douglas M. Nabhan, Esq. (VSB #24078)
Turner A. Broughton, Esq. (VSB #42627)
Harold E. Johnson, Esq. (VSB # 65591)
Richard T. Matthews, Esq. (VSB # 71241)
Andrew O. Mathews, Esq. (VSB #77068)
Williams Mullen
P.O. Box 1320
Richmond, VA 23218-1320
Telephone:  (804) 420-6000
Facsimile:  (804) 420-6507
dnabhan@williamsmullen.com
tbroughton@williamsmullen.com
hjohnson@williamsmullen.com
rmatthews@williamsmullen.com
amathews@williamsmullen.com
          *Counsel for VSL Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I hereby acknowledge that on this 24th day of July, 2015, I caused a copy of the foregoing Brief in Opposition to Plaintiff/Counterclaim Defendant Claudio De Simone's Motion to Dismiss to be filed with the Electronic Case Filing system of the District of Maryland, which will provide electronic notice to the parties of record:

By: _____/s/_____
Brian Cashmere, Esq. (USDC MD Bar No. 14170)
Williams Mullen
8300 Greensboro Drive, Suite 1100
McLean, VA 22102
Telephone: (703) 760-5200
Facsimile: (703) 748-0244
bcashmere@williamsmullen.com

44