## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CLAUDIO DE SIMONE,

      Plaintiff/Counterclaim Defendant,

      v.

VSL PHARMACEUTICALS, INC., and
SIGMA-TAU PHARMACEUTICALS, INC.,

      Defendants/Counterclaim Plaintiffs,

      v.

EXEGI PHARMA, LLC,
DANISCO USA, INC., and
MENDES SA,

      Third-Party Defendants.

Civil Action No. TDC-15-1356

## MEMORANDUM OPINION

Presently pending are Plaintiff Claudio De Simone's Motion to Dismiss the Counterclaim of Defendant VSL Pharmaceuticals, Inc. ("VSL"), Third-Party Defendant ExeGi Pharma, LLC's ("ExeGi") Motion to Dismiss VSL's Counterclaim, and the joint Motion to Dismiss Counts III, IV, VII, and VIII of the Counterclaim of Defendant Sigma-Tau Pharmaceuticals, Inc. ("Sigma-Tau") filed by De Simone and ExeGi (collectively "the De Simone Parties"). Having reviewed the submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the following reasons, the Motions to Dismiss are GRANTED IN PART and DENIED IN PART.

## DISCUSSION

The factual background of this case is set forth in the Court's September 23, 2015 Memorandum Opinion on the First Motion for a Preliminary Injunction, *De Simone v. VSL Pharm., Inc.*, 133 F. Supp. 3d 776, 780-88 (D. Md. 2015), and June 20, 2016 Memorandum Opinion on the Second Motion for a Preliminary Injunction, *De Simone v. VSL Pharm., Inc.*, No. TDC-15-1356, 2016 WL 3466033 at *1-12 (D. Md. June 20, 2016). Additional facts and procedural history are provided below as necessary.

## I.   Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). To the extent that VSL alleges fraud, those claims are subject to the heightened pleading standards of Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Under this heightened pleading standard, VSL must allege "the time, place, and contents" of the fraudulent representation, the identity of the person who made the misrepresentation, and "what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

## II.     Extrinsic Evidence

In his Motion, De Simone relies on documents attached as exhibits to his brief, in particular, (1) documents from litigation before the United Kingdom High Court of Justice, Chancery Division, between De Simone and Actial Farmaceutica LDA ("Actial"), a corporate affiliate of VSL (the "UK Litigation"), including an affidavit filed by Actial's counsel on December 8, 2014 ("the Actial Affidavit") and the judgment by the court ("the UK Judgment") issued on March 31, 2015. "[A]s a general rule, extrinsic evidence should not be considered at the 12(b)(6) stage." *Am. Chiropractic Assoc., Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (internal quotation marks and citation omitted). A court may consider documents attached to a motion to dismiss only if those documents were "integral to and explicitly relied on in the complaint," if the plaintiff had "actual notice" of those documents, and if the plaintiff does not challenge their authenticity. *Id.* This standard is not met here.

As to the documents from the UK Litigation, although VSL references that lawsuit in its Counterclaim, it does not include the UK Judgment or the Actial Affidavit as exhibits. Undeterred, De Simone argues that the Court should consider the UK Judgment because VSL "intended to attach" it to its Counterclaim, but mistakenly attached an Order dated May 7, 2015 instead. De Simone Mot. Dismiss VSL Countercl. at 6 n. 1, ECF No. 177. This argument lacks either factual or legal support. Moreover, the UK Litigation is not so central to VSL's claims that the judgment and affidavit could be deemed integral to the Counterclaim. VSL marshals the UK Litigation for the dubious purpose of convincing this Court of the validity of its claims based on a foreign court's acceptance of some of its arguments in a related matter, but VSL would not "unquestionably [have] to offer" the UK Judgment or the Actial Affidavit to sustain its Counterclaim here. *Fudge v. Penthouse Int'l., Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988). De

Simone's use of the UK Litigation documents in his Motion to Dismiss is a response in kind, amounting to an unpersuasive preclusion argument based on a ruling by a foreign court. *Cf. Andes v. Versant Corp.*, 878 F.2d 147, 149 (4th Cir. 1989) ("The Full Faith and Credit Clause of Article IV § 1 of the Constitution of the United States does not apply to foreign judgments."). De Simone has offered no precedent for taking judicial notice on a motion to dismiss of a document such as the Actial Affidavit, which was filed in a foreign court in litigation to which VSL was not a party. Where to do so would circumvent the purposes of a Rule 12(b)(6) motion to assess the sufficiency of the complaint rather than litigate the facts, the Court rejects De Simone's request and will not consider these extrinsic documents in evaluating the pending Motions.

As for the September 18, 2009 Board Meeting Minutes, that document was not mentioned at all by VSL in its Counterclaim and thus cannot be deemed to be integral to and explicitly relied on in the Counterclaim. Even if De Simone is correct that those minutes defeat one or more of VSL's claims, VSL has not yet had an opportunity to test the authenticity of that evidence or to adduce contradictory evidence through discovery. The Court therefore declines to consider that exhibit or other extrinsic materials.

### III.    Choice of Law

The applicable law on VSL's counterclaims differs depending on the cause of action. On VSL's federal Lanham Act claims, this Court applies federal law as interpreted by the United States Court of Appeals for the Fourth Circuit.

For the state law causes of action, this Court applies the choice-of-law principles of the forum state, in this case, Maryland. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941);

*Branhaven, LLC v. BeefTek, Inc.*, 965 F. Supp. 2d 650, 664 (D. Md. 2013) ("When a claim is based on state law, the choice of law rules are those of the state in which the district court sits.").

For common law torts, Maryland applies the law of the state in which the injury occurred. *Lab. Corp. of Am. v. Hood*, 911 A.2d 841, 845 (Md. 2006). Here, the alleged torts are civil conspiracy, fraud, tortious interference with a business relationship, usurpation of a corporate opportunity, conversion, unjust enrichment, tortious interference with economic relations, and tortious interference with prospective economic advantage. The injuries resulting from these torts are economic, rather than personal, so are traditionally interpreted as accruing where the injured party resides. *See* 21 M.L.E. Torts § 2 ("The place of injury means the place where the injury was suffered rather than the place where the wrongful act took place[.]"); *Restatement (Second) of Conflict of Laws* § 145 (Am. Law Inst. 1971) ("The effect of the loss, which is pecuniary in its nature, will normally be felt most severely at the plaintiff's headquarters or principal place of business."). Furthermore, "[w]hen a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made." *Restatement (First) of Conflict of Laws* § 377 n.4 (Am. Law Inst. 1934); *see also Lab. Corp. of Am.*, 911 A.2d at 845 (noting that Maryland courts follow the principles stated in the *Restatement (First) of Conflict of Laws*).

VSL is headquartered in Virginia, so the Court applies Virginia law to its common law tort claims. Sigma-Tau is headquartered in Maryland, so the Court applies Maryland law to its common law tort claims. Although the parties have proceeded under the assumption that Maryland law applies to all the claims, the Court notes that there is no appreciable difference between Maryland law and Virginia law as to the causes of action at issue here, so the Court's

choice of law does not alter its determination as to the viability of VSL's or Sigma-Tau's common law tort claims.

As for contract claims, Maryland courts follow the principle of *lex loci contractus,* under which the applicable law is that of the jurisdiction where the contract was made. *See, e.g., Allstate Ins. Co. v. Hart,* 611 A.2d. 100, 101 (Md. 1992). However, if a contract contains a choice-of-law provision, Maryland courts will apply the law stipulated to in that provision, because "parties to a contract may agree to the law which will govern their transaction, even as to an issue going to the validity of the contract." *Kunda v. C.R. Bard, Inc.,* 671 F.3d 464, 469 (4th Cir. 2011) (*citing Kronovet v. Lipchin,* 415 A.2d 1096, 1104 (Md. 1980)). Accordingly, for contract interpretation and claims of breach, this Court applies the law specified by the parties in the agreement and, in the absence of a choice-of-law provision, applies the law of the jurisdiction where the contract was formed.

On a claim for breach of fiduciary duty, which involves "a matter peculiar to the relationships among and between the corporation and its directors," Maryland courts apply the law of the state of incorporation. *See Storetrax.com, Inc. v. Gurland*, 895 A.2d 355, 372-73 (Md. Ct. Spec. App. 2006), *aff'd* 915 A.2d 991 (Md. 2007) (holding that because the plaintiff corporation was incorporated in Delaware, the trial court erred in not applying Delaware law to its claim that the defendant had breached his fiduciary duty, but finding that such error was harmless); *Restatement (Second) of Conflict of Laws* § 309 ("The local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation[.]"). VSL is incorporated in Delaware, so this Court applies Delaware law to its breach of fiduciary duty claim.

6

As for procedural issues on the common law claims, such as the running of the statute of limitations, this Court applies Maryland law, because "the statute of limitations of the forum state applies even when that state's choice-of-law rules require that another state's substantive law be applied." *Sherwin-Williams Co. v. Artra Group, Inc.*, 125 F. Supp. 2d 739, 756-57 (D. Md. 2001); *see Lewis v. Waletzky*, 31 A.3d 123, 133 (Md. 2011) (holding that Maryland law controls procedural matters and that "statutes of limitations are procedural for choice-of-law purposes"). In Maryland, civil suits must be filed within three years from the date the action accrues. Md. Code Ann., Ct. & Jud. Proc. § 5-101 (West 2011).

## IV.    Know-How Claims

The origins of the present dispute trace back to United States Patent number 5,716,615 ("the 615 Patent") obtained in 1998 by De Simone and two other researchers for pharmaceutical compositions used in the probiotic VSL#3. The 615 Patent expired in February 2015, so the core of this dispute is the ownership of certain "know-how" ("the Know-How") associated with that patent, consisting of a unique biochemical profile, formulae, data processes, data, and other technical and non-technical information necessary to make, develop, and use the probiotic that was the subject of the 615 Patent. The Court first addresses the claims that relate to the ownership and alleged misappropriation of the Know-How, consisting of the declaratory judgment, misappropriation of trade secrets, unjust enrichment, conversion, and breach of contract claims in VSL Counts I, III, IX, X, XI, XVII against De Simone; VSL Counts XIX and XX against ExeGi; and Sigma-Tau Count III against De Simone and ExeGi.

### A.    Contract Interpretation

In resolving the First Motion for a Preliminary Injunction, the Court concluded that VSL and Sigma-Tau (collectively, "the VSL Parties") were unlikely to succeed on the merits of their

respective claims that they own and have an exclusive license to use the Know-How and, by extension, their claims that the De Simone Parties had misappropriated that trade secret. *De Simone*, 133 F. Supp. 3d at 794. In their Motions to Dismiss, the De Simone Parties attempt to parlay that preliminary victory into a dismissal of the VSL Parties' trade secrets claims, arguing that the relevant agreements between De Simone and VSL, attached to VSL's Counterclaim, plainly do not convey the Know-How to VSL.

The De Simone Parties' arguments for dismissal based on the substance of the relevant agreements fail. In making its preliminary determination that the VSL Parties were unlikely to succeed on their claims to own and have an exclusive license to use the Know-How, this Court concluded that the 2000 Mendes Assignment, the document that VSL cites as proof that De Simone transferred his rights to the Know-How to VSL, is ambiguous in that it is susceptible to more than one interpretation. In interpreting an ambiguous agreement, the Court considers extrinsic evidence on the parties' intent. *See World-Wide Rights Ltd. v. Combe, Inc.*, 955 F.2d 242, 245 (4th Cir. 1992) ("Only an unambiguous writing justifies summary judgment without resort to extrinsic evidence."). Accordingly, for purposes of the First Motion for a Preliminary Injunction, the Court considered other agreements between the parties in assessing meaning of the 2000 Mendes Assignment. Although VSL attaches to its Counterclaim many of the same agreements considered at the preliminary injunction stage, the Court has not previously concluded, and does not now conclude, that those materials constitute the only relevant extrinsic evidence on the question whether the 2000 Mendes Assignment effected the transfer of rights in the Know-How to VSL. The Court thus cannot dismiss, as a matter of law, VSL's claims that rely upon its interpretation of the 2000 Mendes Assignment, including the misappropriation of trade secret claims, without inappropriately short-circuiting discovery on the question of the

parties' intent in entering into that agreement. *See id.*; *Van Wagner Adver. Corp. v. S & M Enter.*, 492 N.E.2d 756, 758-59 (N.Y. 1986) (noting that "[w]hether or not a contract provision is ambiguous is a question of law to be resolved by a court" but concluding that the trial court's resolution of that ambiguity by reference to extrinsic evidence was a finding of fact).[1]

### B.    Statute of Limitations

The De Simone Parties alternatively argue that VSL's claims that it owned the Know-How and that De Simone unlawfully misappropriated that trade secret are barred by the statute of limitations.   A statute of limitations argument is an affirmative defense that may be raised through a Rule 12(b)(6) motion only if "the time bar is apparent on the face of the complaint." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).   De Simone asserts that the 2001 Patent License Agreement, the 2006 Confidential Disclosure Agreement, and the January 2010 Know-How Agreement each contained language that put VSL on notice of De Simone's claims of ownership of the Know-How, such that, at the latest, VSL's claims accrued in January 2010. This argument fails.

The core theory of VSL's declaratory judgment and trade secret claims is that De Simone transferred the Know-How to VSL through the 2000 Mendes Assignment but later put in place secret side agreements, including the 2006 Confidential Disclosure Agreement and the January 2010 Know-How Agreement, aimed at undoing that transfer, a scheme of self-dealing that VSL asserts it learned of only years later, in 2014. While De Simone may reject that premise, the Court, on a Motion to Dismiss, may not. *Albright*, 510 U.S. at 268.   When the Court credits, as it must at this stage, VSL's chronology of events and its assertions about when and how it

---

[1]   The 2000 Mendes Assignment contains a provision stating that it is governed by New York law.

discovered that there was a dispute with De Simone about the alleged transfer of ownership in the Know-How, those assertions prevent dismissal on statute of limitations grounds.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-203 ("If the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud.");  *Poffenberger v. Risser*, 431 A.2d 677, 680 (Md. 1981) (holding that, in Maryland, a claim accrues when a litigant "in fact knew or reasonably should have known of the wrong").

Nor can the Court accept De Simone's argument that because some of the side agreements were reviewed by Paolo Cavazza, one of VSL's ultimate owners through various VSL holding companies, or signed on behalf of a VSL holding company by Maurizio Terenzi, who at one point served on VSL's Board of Directors, notice of De Simone's claim to ownership of the Know-How must be imputed to VSL as of the dates of those agreements.  This argument would require the Court either to consult evidence not integral to VSL's Counterclaim, such as minutes from VSL board meetings or documents from foreign litigation, or to make its way through the Cavazza corporate labyrinth to determine in what capacity Cavazza and Terenzi saw these documents and whether their knowledge as officers of VSL holding companies could be imputed to VSL, a convoluted undertaking that cannot be accomplished based only on the face of VSL's Counterclaim.  *Dean*, 395 F.3d at 474.

The Court is also unconvinced by De Simone's remaining arguments that VSL's claims accrued either in 2001 or in 2008, based on, respectively, the Patent License Agreement or the reissuance of the 615 Patent, which listed De Simone as that patent's sole owner.  As no one in this litigation disputes, and as the Court noted in its Memorandum Opinion on the First Preliminary Injunction Motion, the 615 Patent is not commensurate with the Know-How.  De

Simone himself avers in his Complaint that "the 2001 Patent License Agreement does not mention the 'Know How' and does not purport to license any such information to VSL." Compl. ¶ 54, ECF No. 1. Instead, the Know-How has appeared in this case, from the outset, as a trade secret separate and distinct from the 615 Patent. As a result, the 2001 Patent License Agreement and the 2008 patent reissuance cannot be deemed, as a matter of law, to have placed VSL on notice of De Simone's claims to ownership of the Know-How.

Accordingly, although additional factual development may provide a basis to establish a statute of limitations defense to certain of VSL's claims, the allegations in the Counterclaim do not support dismissal on this ground.

### C.     The ExeGi Misappropriation Claim

Finally, ExeGi's individual argument that VSL has failed to plead a claim against ExeGi for misappropriation of trade secrets also fails. As relevant here, under the Maryland Uniform Trade Secrets Act ("MUTSA"), Md. Code Ann., Com. Law. §§ 11-1201–09 (West 2013), a misappropriation of a trade secret requires either (1) "[a]cquisition" of a trade secret by someone who "knows or has reason to know" that it was acquired by "improper means"; or (2) "[d]isclosure or use of a trade secret of another without express or implied consent" by someone who knew or had reason to know that his or her knowledge of the trade secret was "derived from or through a person who had utilized improper means to acquire it" or was "[d]erived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use." *Id.* § 11-1201(c).

On the first prong, by referencing the February 27, 2015 letter from ExeGi Chief Executive Officer ("CEO") Marc Tewey (the "Tewey Letter") stating that De Simone would be "granting ExeGi access to his know-how and supply" and would produce a competing probiotic

11

of the same formula, VSL has alleged facts that support an inference that ExeGi acquired the Know-How from De Simone.   VSL 2d Am. Countercl. ¶196, ECF No. 153.  By alleging that it responded to the Tewey Letter the same day with a letter (the "VSL Letter") asserting VSL's claim of ownership in the Know-How and stating that De Simone had misappropriated it, VSL has properly alleged that ExeGi "knew or had reason to know" that the trade secret was obtained by improper means.

These same facts support a misappropriation claim under the second prong.  The Tewey Letter, along with the separate allegations that ExeGi was marketing Visbiome, supports the inference that ExeGi engaged in "use" of the Know-How.  The VSL Letter supports the inference that VSL did not consent to the use of the Know-How, and that ExeGi knew or had reason to know that its knowledge derived from a person (De Simone) who either used improper means to acquire it or owed a duty to VSL to maintain its secrecy.

To the extent that ExeGi claims that VSL's misappropriation claim necessarily fails because VSL did not actually own the Know-How, that issue, as discussed above, is not properly resolved on a motion to dismiss.  Although ExeGi also claims that neither VSL nor ExeGi have ever possessed the Know-How, that is a factual issue that is properly the subject of discovery.

Accordingly, the De Simone Parties' Motions to Dismiss Counts I, III, IX, X, XI, XVII, XIX, and XX of the VSL Counterclaim and Count III of the Sigma-Tau Counterclaim are denied.

## V.    Corporate Duty Claims

### A.    Breach of Fiduciary Duty and Related Claims

The Court next considers the VSL claims against De Simone relating to his fiduciary duty to VSL as its CEO, consisting of VSL's breach of fiduciary duty claim (Count IV), breach of

contract claim relating to the 2001 Patent License Agreement (Count XV), and unjust enrichment claim relating to the Patent License Agreement (Count XVI).  The Court has already found, on the First Motion for a Preliminary Injunction, that VSL is likely to succeed on its breach of fiduciary duty claim arising from De Simone's execution of agreements with VSL "that purported to divest VSL of intellectual property rights that had already been fully assigned to VSL," VSL 2d Am. Countercl. ¶ 269(b), so it is necessarily unpersuaded by De Simone's current assertion that VSL has failed adequately to plead that cause of action. *De Simone*, 133 F. Supp. 3d at 795-96.  The statute of limitations does not bar this aspect of the breach of fiduciary duty claim, because the events at issue either occurred within the three-year statute of limitations or occurred after, as VSL alleges, De Simone had begun his campaign of fraud and self-dealing. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-203 ("If the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud.").

VSL, however, also asserts a second theory of breach of fiduciary duty, that De Simone failed "to grant VSL the option to acquire the entire ownership rights or the exclusive exploitation rights of the '615 Patent."  VSL 2d Am. Countercl. ¶ 269(a).  This same claim underlies Counts XV and XVI.  As De Simone correctly argues, any claim based on De Simone's alleged failure to offer VSL his rights in the 615 Patent is barred by the three-year statute of limitations.

According to VSL, De Simone was required under the terms of the 2001 Patent License Agreement to offer any rights he obtained in the 615 Patent to VSL, but when, in 2005, he settled his lawsuit related to the 615 Patent and obtained full rights to it, he failed to make the requisite

13

offer. The face of the Counterclaim establishes that VSL's claims stemming from De Simone's alleged failure to offer the 615 Patent rights to VSL accrued in 2005, so they had to be brought by 2008. In this instance, VSL is not shielded from this deadline by its other allegations about De Simone's conduct. Although VSL claims that De Simone's failure to offer his rights in the 615 Patent was part of the alleged self-dealing, it acknowledges that VSL paid for De Simone's legal representation in the lawsuit leading to the settlement that provided him with those rights. *See id.* ¶ 72. Significantly, VSL was also a counterclaim defendant in that case. *See Simone v. Estate of Renata Maria Anna Cavaliere Vesely*, No. 1:02-cv-01650-RJL (D.D.C. 2002). Under these circumstances, VSL cannot plausibly claim that it was not on notice of the results of the litigation. Moreover, because "issuance of a patent and recordation in the Patent Office constitute notice to the world of its existence," *Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.*, 297 U.S. 387, 393 (1936), VSL was on notice as of 2008, when the 615 Patent was reissued, that De Simone's obligation to offer VSL his rights in that patent had been triggered. *See* 35 U.S.C. § 252 ("[E]very reissued patent shall have the same effect and operation in law ... as if the same had been originally granted in such amended form[.]"). Thus, VSL cannot plausibly assert that, by 2008 at the latest, it either did not know or should not reasonably have known that De Simone failed to make the required offer to transfer to VSL his full interest in the 615 Patent. *Poffenberger*, 431 A.2d at 680 (holding that, in Maryland, a claim accrues when a litigant "in fact knew or reasonably should have known of the wrong"). VSL's claims related to the alleged breach of the 2001 Patent License Agreement are thus time-barred.[2]

---

[2]  Pursuant to Fed. R. Evid. 201(b)(2), the Court takes judicial notice of the docket in *Simone v. Estate of Renata Maria Anna Cavaliere Vesely*, No. 1:02-cv-01650-RJL (D.D.C. 2002), which was referenced in the VSL Counterclaim, and of the reissuance of the 615 Patent in 2008.

Accordingly, the Court grants the Motion to Dismiss as to the patent license aspect of Count IV (breach of fiduciary duty), and as to Count XV (breach of contract) and Count XVI (unjust enrichment) in their entirety. Count XVI is also dismissed based on the alternative ground that an equitable action for unjust enrichment will not lie when the alleged harm is a breach of a contract. *So. Biscuit Co., Inc. v. Lloyd*, 6 S.E.2d 601, 606 (Va. 1940) ("It has been well settled by repeated decisions of this court than an express contract defining the rights of the parties necessarily precludes the existence of an implied contract of a different nature containing the same subject matter."); *see also County Com'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 610 (Md. 2000) ("We hold that, generally, quasi-contract claims such as quantum meruit and unjust enrichment cannot be asserted when an express contract defining the rights and remedies of the parties exists.").

## B.   Fraud

VSL has adequately pleaded the related fraud claim against De Simone alleged in Count VI. Under Virginia law, the elements of fraud are "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage." *Thompson v. Bacon*, 425 S.E.2d 512, 514 (Va. 1993); *see also Nails v. S & R, Inc.*, 639 A.2d 660, 668 (Md. 1994) (noting that, in Maryland, fraud consists of a knowing false representation, made for the purpose of defrauding the plaintiff, upon which the plaintiff was entitled to and did rely, leading the plaintiff to suffer a compensable injury). The "concealment of a material fact" satisfies the element of a false representation. *Van Deusen v. Snead*, 441 S.E. 2d 207, 209 (Va. 1994); *see also Parish v. Md. & Va. Milk Prod. Ass'n*, 242 A.2d 512, 539 (Md. 1968) ("It is well established that actionable fraud may result from the concealment of material facts as well as from the false statement of material facts.").

Here, VSL alleges all of these elements. Specifically, VSL alleges that De Simone, as CEO of VSL, had a duty to disclose to VSL his intention to compete with it in supplying VSL#3, but deliberately failed to do so. VSL further asserts that it relied on and was misled and harmed by De Simone's omissions about his lack of fidelity to VSL, leaving it unprepared when De Simone invoked the contractual provisions he had put in place to enable him to cut off VSL's supply of its only profitable product at the very moment when De Simone was poised to launch his competing product, Visbiome. *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999) (stating that under Virginia law, "[a]lthough silence does not constitute fraud in the absence of a duty to disclose, concealment of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud") (internal citations and quotation marks omitted).

De Simone counters that he had no duty under Maryland law to disclose his intent to compete with VSL. First, Maryland law does not govern this claim. Second, the Maryland case that De Simone cites in fact sets forth the general principle that "while an employee is under an obligation to be candid with his employer in preparing to establish a competing enterprise, he is not bound to reveal the precise nature of his plans to the employer unless he has acted inimically to the employer's interest beyond the mere failure to disclose" such as through "misappropriation of trade secrets." *Md. Metals, Inc. v. Metzner*, 382 A.2d 564, 569 (Md. 1978). Here, VSL has alleged that De Simone not only sought to compete with VSL, but also employed various secret contractual agreements to misappropriate the Know-How and to cripple VSL's supply chain for VSL#3. Where VSL's allegations, taken as true for purposes of this motion, go beyond a mere intention to compete honestly, and instead paint a picture of a covert plan to sabotage VSL that was years in the making, De Simone's fiduciary duty as CEO of VSL may well have required

16

him to disclose his intentions to VSL. *See Hitachi Credit Am. Corp.*, 166 F.3d at 629. Where VSL has alleged that De Simone failed to do so, De Simone's motion to dismiss as to VSL's fraud claim, Count VI, is denied.

### C.    Civil Conspiracy

In Count V against De Simone, VSL alleges civil conspiracy arising from De Simone's alleged collusion with Beth Park, Chief Operating Officer and a Director of VSL, to strip VSL of its ownership interest in the Know-How and to supplant it in the marketplace with a new, De Simone-controlled entity. To plead a claim of civil conspiracy, a party must allege facts that, taken as true, establish "a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in damage to the plaintiff." *Glass v. Glass*, 321 S.E.2d 69, 74 (Va. 1984). VSL alleges that De Simone and Park conspired to position De Simone unlawfully to misappropriate the Know-How which he had originally conveyed to VSL, and to take over VSL's entire supply chain, leaving VSL unable to readily obtain supply of its only profitable product. Among the acts that VSL alleges were taken in furtherance of this conspiracy is De Simone's signing, and Park's ratification on behalf of VSL, of the January 2010 Know-How Agreement, which provided that De Simone alone owned the rights to the Know-How, that VSL had only a license to use that trade secret, and that De Simone could terminate VSL's license to use the Know-How if there were a change in control of VSL, provisions that De Simone later used to cut off VSL's supply chain. Although competing with VSL may be a lawful purpose, the Counterclaim alleges that De Simone engineered this competition through, at a minimum, the unlawful means of the misappropriation of a trade secret and the breach of his fiduciary duty. De Simone's motion to dismiss as to VSL's civil conspiracy claim in Count V is thus denied.

### D.    Punitive Damages

De Simone asks that, if the Court allows Counts V and VI to proceed, it strike VSL's request for punitive damages because VSL fails to plead with sufficient detail that De Simone acted with malice. Although the awarding of punitive damages requires a showing of actual malice, VSL has expressly made that allegation. *See* VSL 2d Am. Countercl. ¶ 277; *Jordan v. Suave*, 247 S.E.2d 739, 741 (Va. 1978); *see also Scott v. Jenkins*, 690 A.2d 1000, 1003-04 (Md. 1997) (stating that "in order to recover punitive damages in *any* tort action in the State of Maryland, facts sufficient to show *actual malice* must be pleaded and proven by clear and convincing evidence"). Notably, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Furthermore, VSL's exhaustive Counterclaim contains ample, detailed allegations that, if true, would support an inference that De Simone acted with malice in deliberately scheming to usurp VSL's business. The request to strike VSL's demand for punitive damages in Counts V and VI is denied.

### E.    Business Torts

In Count VII against De Simone, VSL pleads tortious interference with a business relationship, based on the allegedly secret 2008 Danisco Supply Agreement, the January and March 2010 Know-How Agreements, and the 2014 Danisco Supply Agreement. Through these agreements, VSL asserts, De Simone interfered with VSL's relationship with, and supply from, Danisco. However, VSL's original and only contract with Danisco—the 2006 Confidential Disclosure Agreement, included as an exhibit to VSL's Counterclaim—is signed by De Simone both on behalf of VSL and in his individual capacity. "A person cannot intentionally interfere with his own contract." *Fox v. Deese*, 362 S.E. 2d 699, 708 (Va. 1987); *see also Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 313 (Md. Ct. Spec. App. 1995) ("As a matter of law, a

18

party to a contract cannot tortiously 'interfere' with his or her own contract; the party can, at most, breach it."). Because VSL bases its tortious interference claim on an agreement to which De Simone is a party, the claim fails. De Simone's Motion to Dismiss is granted as to Count VII, which is dismissed with prejudice.

In Count VIII against De Simone, VSL pleads a claim for usurpation of corporate opportunity arising from his termination of the January 2010 Know-How Agreement while he was CEO of VSL in order to divert, pursuant to the 2014 Danisco Supply Agreement, Danisco's supply of VSL#3 to him in his personal capacity. However, when the party being sued is a fiduciary of the injured corporation, "usurpation of corporate business opportunity is generally considered a breach of fiduciary duty rather than conduct constituting a distinct cause of action." *Feddeman & Co., C.P.A. v. Langan Assoc., P.C.*, 530 S.E.2d 668, 675 n.1 (Va. 2000). Notably, Delaware courts have likewise treated the usurpation of corporate opportunity as a form of breach of fiduciary duty. *See Guth v. Loft, Inc.*, 5 A.2d 503, 510-11 (Del. 1939) (stating that self-dealing in breach of one's fiduciary duty includes usurping a corporate opportunity for oneself); *see also Pittman v. Am. Metal Forming Corp.*, 649 A.2d 356, 359 (Md. 1994) (citing *Guth v. Loft* and stating that the corporate opportunity doctrine "has developed around the duty owed by directors and officers" to the corporation) (internal citation and quotation marks omitted)). Because VSL has pleaded a claim for breach of fiduciary duty that encompasses this claim, and Virginia courts have not recognized usurpation of a corporate opportunity as a distinct claim when a fiduciary duty exists, the Court dismisses Count VIII with prejudice.

In Count IV of its Complaint, Sigma-Tau pleads tortious interference with economic relations against De Simone. Sigma-Tau claims that De Simone interfered with Sigma-Tau's economic relationship and contract with VSL by establishing ExeGi and arranging to divert

19

Danisco's supply of VSL#3 to ExeGi.   Specifically, Sigma-Tau alleges that De Simone tortiously interfered with the economic relationship between Sigma-Tau and VSL, codified through the 2003 and 2010 VSL–Sigma-Tau License Agreements, and the economic relationship between Sigma-Tau and Danisco, codified through the 2006 Confidential Disclosure Agreement. In Maryland, a claim of tortious interference with economic relations can advance only if the defendant is not a party to the business relationship at issue. *See Kaser v. Fin. Mkt. Protection Mktg., Inc.*, 831 A.2d 49, 54 (Md. 2003) ("[T]his Court has consistently taken the position that the tort of wrongful interference with economic relations will not lie where the defendant is a party to the economic relationship with which the defendant has allegedly interfered."). Here, De Simone is not a party to the economic relationship between VSL and Sigma-Tau.  Though he signed the 2003 VSL–Sigma-Tau Licensing Agreement, he did so in his capacity as a representative of VSL, not in his individual capacity.   This aspect of Sigma-Tau's claim is therefore viable. Sigma-Tau's claim of interference in the relationship between Sigma-Tau and Danisco, however, cannot proceed because that relationship stems from the 2006 Confidential Disclosure Agreement, which De Simone signed both as a representative of VSL and in his individual capacity.     Thus, De Simone's Motion to Dismiss Count IV of Sigma-Tau's Counterclaim is granted as to the Sigma-Tau–Danisco relationship, but denied as to the Sigma-Tau–VSL relationship.

In Count VIII, Sigma-Tau pleads tortious interference with prospective economic advantage against ExeGi, based on ExeGi's alleged false statements on its website and directly to Sigma-Tau's customers in which ExeGi has claimed or implied that VSL and Sigma-Tau would no longer be supplying VSL#3.   When a business relationship is not codified in a contract—and no contractual relationship between Sigma-Tau and its customers is alleged

20

here—a defendant has a "broader right to interfere" with it, on the theory that such interference is, from a different perspective, simply competition in the marketplace. *Macklin v. Robert Logan Assoc.*, 639 A.2d 112, 120 (Md. 1994). Thus where a defendant's purpose in interfering with a non-contractual business relationship is "at least in part to advance his interest in competing" with one of the parties, he is not liable in tort for that interference unless the defendant acts with "tortious intent" and by means which are themselves "wrongful." *Natural Design, Inc. v. Rouse Co.,* 485 A.2d 663, 676 (Md. 1994) (quoting *Restatement (Second) of Torts*, § 768).

In this context, wrongful conduct is "incapable of precise definition," but examples include the use of violence, intimidation, injurious falsehood or fraud, or violations of criminal law. *Id.* For the conduct to be wrongful for purposes of the tort, it must be "conduct that is independently wrongful and unlawful, quite apart from its effect on the plaintiff's business relationships." *Alexander & Alexander Inc. v. B. Dixon Evander & Assoc.*, 650 A.2d 260, 271 (Md. 1994). Here, Sigma-Tau alleges that ExeGi has deliberately used false statements and engaged in other forms of unfair competition in order to poach Sigma-Tau customers. Accepting those allegations as true, Sigma-Tau has adequately alleged that ExeGi has engaged in independently wrongful conduct that interferes with Sigma-Tau's prospective economic advantage. ExeGi's Motion to Dismiss as to Count VIII of Sigma-Tau's Counterclaim is denied.

### F.      Conversion

In Count XVIII against De Simone, VSL asserts a claim of conversion relating to De Simone's removal of VSL property upon his resignation as CEO. Conversion is "an intentional exercise of dominion or control over chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *United States v. Arora*, 860 F. Supp. 1091, 1097 (D. Md. 1994), *aff'd* 56 F.3d 62 (4th

Cir. 1995) (quoting *Restatement (Second) of Torts*, § 222A(1)). An action for conversion therefore generally "applies only to tangible property," extending to intangible property only when that intangible property is "merged with a document, such as a valid stock certificate, promissory note, or bond." *United Leasing Corp. v. Thrift Ins. Corp.*, 440 S.E. 2d 902, 906 (Va. 1994). There is no cause of action for conversion for "interference with *undocumented* intangible property rights." *Id.*; *see also Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 965 (Md. 1999) (holding that "the tort of conversion generally may extend to the type of intangible property rights that are merged or incorporated into a transferable document" and refusing to extend the tort any further).

Here, VSL asserts that De Simone removed VSL property including documents, data, computers, laptops, servers, drawings, manuals, letters, notes, reports, and recordings, all of which are tangible property that can be the subject of a conversion claim. The conversion claim also references account information, log-in information, passwords, and electronic mail, including email messages sent to and from De Simone's @vslpharma.com email address and information related to the @vslpharma.com domain. De Simone argues that these latter items are intangible property that will not support a conversion claim. However, De Simone cites no authority for the proposition that emails, which can be reduced to paper, and information about internet domains, which can be stored on a hard drive, are necessarily "intangible" in this context. Where the conversion claim is plainly viable, and the only issue is whether certain specific items are subject to that claim, the Court declines to parse the claim that finely at this time and denies the Motion to Dismiss as to Count XVIII.

## VI.    Lanham Act

In its Counterclaim, VSL assert violations of the Lanham Act, 15 U.S.C. §§ 1051-1141n (2012), for trademark infringement, unfair competition, and false advertising against De Simone in Counts XII, XIII, and XXVIII, respectively, and against ExeGi in Counts XXI, XXII, and XXVIII, respectively.  This Court has already found that VSL is likely to succeed on its claims that the De Simone Parties have engaged in unfair competition, including trademark infringement and false advertising. *See De Simone*, 133 F. Supp. 3d at 796-99; *De Simone*, No. TDC-15-1356, 2016 WL 3466033 at *18-23.   Having twice explained at length the reasons that VSL is likely to succeed on the merits of these claims, the Court necessarily is unpersuaded by the De Simone Parties' arguments here that the VSL Parties have failed to state a claim under the Lanham Act.

To the extent that the De Simone Parties specifically argue that VSL has not stated a false advertising claim relating to the email from Saara Khadir on January 28, 2016, including because it was not a commercial advertisement, they have acknowledged that "[d]etermining if a particular statement qualifies as a commercial advertisement is a fact-specific inquiry."  De Simone Mot. Dismiss VSL Countercl. at 47.  Given that on a motion to dismiss the Court must draw all reasonable inferences from the factual allegations in favor of the nonmoving party, it cannot conclude that the Khadir email was disseminated so narrowly that it did not amount to a commercial advertisement, or that it contained only truthful statements.  The Court therefore denies the Motion as to VSL's Lanham Act claims (Counts XII, XIII, XXI, XXII, and XXVIII).

## VII.    Injunctive Relief

Counts XXIII, XXIV, XXV, XXVI, and XXVII of VSL's Counterclaim seek a preliminary and permanent injunction based on various other causes of action alleged.  The

requests for injunctive relief are then repeated in VSL's prayer for relief. The De Simone Parties seek to have these counts dismissed, arguing that an injunction is a remedy, not a cause of action. They are correct. "[A] request for injunctive relief does not constitute an independent cause of action; rather, the injunction is merely the remedy sought for the legal wrongs alleged in ... the substantive counts." *Fare Deals, Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 682 n.1 (D. Md. 2001); *see Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 573-74 (D. Md. 2001).

Although VSL tries to save these claims by arguing that the court in *Dwoskin* did not dismiss the request for injunctive relief, in that case the request was not otherwise pleaded in the Complaint. 850 F. Supp. 2d at 573-74. Where, as here, injunctive relief is included in the request for relief, there is no reason to allow these duplicative requests to proceed in the improper guise of independent causes of action. The Court therefore dismisses with prejudice VSL Counts XXIII, XXIV, XXV, XXVI, and XXVII. This dismissal has no effect on VSL's prayer for injunctive relief as a remedy.

## VIII.   Unripe Claims

In Count II, VSL seeks a declaratory judgment stating that any rights held by De Simone in any invention he has made in the field of pharmaceutical nutritional compositions belongs to VSL and asks that this Court also "requir[e] De Simone to provide a list of all such inventions." VSL 2d Am. Countercl. ¶ 261. In order to proceed, a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, must satisfy the constitutional requirement of an active case or controversy. *Organic Seed Growers & Trade Ass'n v. Monsanto, Co.*, 718 F.3d 1350, 1354-55 (Fed. Cir. 2013). Although a declaratory judgment action may be filed before an actual injury has occurred, parties seeking declaratory relief "must show that they are at 'substantial risk' of ...

24

harm, and that costly precautions are a reasonable response." *Id.* at 1360 (quoting *Clapper v. Amnesty Int'l.,* 133. S Ct. 1138, 1150 n.5 (2013)).  Count II fails to meet this standard for ripeness.  Apart from its general assertion that, "[u]pon information and belief," De Simone has failed to transfer various inventions to VSL, VSL identifies no specific invention that it believes De Simone has withheld.  VSL 2d Am. Countercl. ¶ 260.  Rather, VSL asks for a list of De Simone's discoveries, a request that suggests that this cause of action is a search for information, not an assertion of a palpable threat of harm.  Further, VSL fails to provide any plausible basis to conclude that De Simone's purported withholding of inventions poses the substantial risk of harm required for this Court to hear this declaratory judgment claim.  The Court therefore concludes that Count II is not ripe for adjudication and grants the Motion to Dismiss as to that count.

In Count XIV, VSL seeks a declaratory judgment cancelling and declaring invalid two trademark applications, one for the term "VSL3TOTAL" and one for the phrase "VSL3 BY DE SIMONE."  The Court also dismisses this claim on ripeness grounds.  Cancellation of a trademark is permitted in cases "involving a *registered* mark." 15 U.S.C. § 1119 (emphasis added).  These applications have not yet been approved by the United States Patent and Trademark Office.  Because the marks have not yet been registered, there is nothing for this Court to cancel. *Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F. Supp. 2d 823, 831 (E.D.V.A. 2001) (holding that a claim for the cancellation of a trademark was not ripe "[b]ecause this case does not involve any registered marks," and that the claim could not be brought until "the registration of one of [the] proposed marks by the PTO"); *see also* 3 *McCarthy on Trademarks and Unfair Competition* § 20:40 (4th ed. 2016) (noting that courts have the power to cancel "a federally registered mark").  De Simone's Motion to Dismiss Count XIV is granted.

## IX.  ExeGi as a Third-Party Defendant

ExeGi also seeks dismissal of all of VSL's claims against it because VSL improperly joined ExeGi as a third-party defendant. ExeGi is correct that third-party defendant actions are limited to those in which a defendant believes another party "is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). However, to dismiss VSL's claims against ExeGi on this basis would elevate form over substance. Such a dismissal would not bar VSL from repleading to join ExeGi under Rule 20 as a counterclaim defendant, nor does ExeGi contend otherwise. Fed. R. Civ. P. 20(a)(2). Under the Federal Rules of Civil Procedure, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Notably, the parties have already effectively addressed this issue by altering the caption on their filings to list the original "Third-Party Defendants," including ExeGi, as "Additional Counterclaim Defendants." In the interest of judicial economy, the Court will direct the Clerk to amend the caption in this case to list the Third-Party Defendants as Additional Counterclaim Defendants.

## CONCLUSION

For the reasons set forth above, De Simone's and ExeGi's Motions to Dismiss are GRANTED IN PART and DENIED IN PART. The Motions are granted as to Counts II and XIV of VSL's Counterclaim, which are dismissed as unripe. The Motions are also granted as to Counts VII, VIII, XV, XVI, XXIII, XXIV, XXV, XXVI, and XXVII of VSL's Counterclaim, which are dismissed with prejudice. The Motion is granted as to Count IV of VSL's Counterclaim only to the extent that the allegations relating to the 2001 Patent License Agreement are dismissed, but denied as to all other aspects of Count IV. The Motion is granted

as to Count IV of Sigma-Tau's Counterclaim to the extent that claim relates to the Sigma-Tau–

Danisco relationship, but denied as to the Sigma-Tau–VSL relationship.  The Motions are denied

as to all other counts.  A separate Order shall issue.


Date:   January 5, 2017

THEODORE D. CHUANG
United States District Judge