**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| CLAUDIO DE SIMONE,<br><br>        Plaintiff/Counterclaim Defendant,<br><br>        v.<br><br>VSL PHARMACEUTICALS, INC., and<br>SIGMA-TAU PHARMACEUTICALS, INC.,<br><br>        Defendants/Counterclaim Plaintiffs,<br><br>        v.<br><br>EXEGI PHARMA, LLC,<br>DANISCO USA, INC., and<br>MENDES SA,<br><br>        Counterclaim Defendants. | Civil Action No. TDC-15-1356 |

**MEMORANDUM OPINION**

Presently pending is Counterclaim Defendant Mendes SA's ("Mendes") Motion to Dismiss Counts XII, XIII, and XIV of the Counterclaim filed by VSL Pharmaceuticals, Inc. ("VSL"). Having reviewed the submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6 (2016). For the following reasons, the Motion to Dismiss is GRANTED.

**BACKGROUND**

The Court has previously set forth the underlying facts and procedural history of this case in opinions on the two Motions for a Preliminary Injunction filed by VSL and Defendant and Counterclaim Plaintiff Sigma-Tau Pharmaceuticals, Inc., *De Simone v. VSL Pharm., Inc.*, 133 F. Supp. 3d 776 (D. Md. 2015), and *De Simone v. VSL Pharm., Inc.*, No. TDC-15-1356, 2016 WL 3466033 (D. Md. June 20, 2016), and the Motions to Dismiss the Counterclaim filed by Claudio

De Simone and Counterclaim Defendant ExeGi Pharma, LLC ("ExeGi"), *De Simone v. VSL Pharm., Inc.*, No. TDC-15-1356, 2017 WL 66323 (D. Md. Jan. 5, 2017). The Court therefore describes only the additional background information relevant to the resolution of Mendes's pending Motion.

Mendes, a type of corporation known as a "société anonyme," was established and is headquartered in Switzerland. According to VSL, Mendes was founded by De Simone and has sought to bring to market Vivomixx, a product designed to compete with VSL#3, the probiotic at the center of this case. De Simone has since sold Mendes to Salvatore Orlando, who took over in January 2013. In October 2014, Orlando formed ExeGi, a New York limited liability company headquartered in Maryland, which obtained from De Simone the exclusive rights to market and sell in the United States the formulation used in VSL#3. Whether those rights were De Simone's to license is in dispute in this case, but is not at issue on this Motion. Mendes currently sells Vivomixx in various foreign markets.

In its Counterclaim, VSL asserts three causes of action against Mendes stemming from the sale of Vivomixx, all of which were also pleaded against De Simone, consisting of Count XII: Trademark Infringement, in violation of 15 U.S.C. § 1114; Count XIII: Unfair Competition, in violation of 15 U.S.C. § 1125(a); and Count XIV: a declaratory judgment action seeking the cancellation of Mendes's pending trademark applications. These causes of action stem from Mendes's alleged violation of VSL's registered trademark "VSL#3" by using the terms "VSL3TOTAL" and "VSL3 BY DE SIMONE" in its marketing and branding of Vivomixx, particularly the inclusion of those terms on Vivomixx packaging and in internet advertising on non-U.S. websites suggesting that VSL#3 has been rebranded as Vivomixx. VSL concedes that Mendes registered the marks VSL3TOTAL and VSL3 BY DE SIMONE for use in the European

2

Union and Switzerland but notes that the validity of those marks is currently the subject of separate litigation. VSL's claims in this Court against Mendes are based not on the validity of those foreign trademarks, but on VSL's assertion that Mendes is selling or inducing the sale of Vivomixx in the United States, where Mendes has no trademark rights in those terms and where, instead, Mendes's use of those marks could infringe VSL's trademark rights. Specifically, VSL asserts that Mendes advertises on its website that Vivomixx can be purchased from Farmaline Online Pharmacy and submits a page from the Farmaline website which inartfully states, "You can Vivomixx of brand Vivomixx, produced by Mendes SA, can be ordered in United States by Farmaline" [*sic*]. VSL 2d Am. Countercl. Ex. 55 at 3, ECF No. 153.

Mendes filed trademark applications for VSL3TOTAL and VSL3 BY DE SIMONE with the United States Patent and Trademark Office ("USPTO") in September 2013 and June 2014, respectively. Both of Mendes's applications were filed on the basis that the terms had already been trademarked in another country. *See* 15 U.S.C. § 1126(d) (2012) (as to VSL3TOTAL); 15 U.S.C. § 1141f (as to VSL3 BY DE SIMONE). As part of the application for VSL3TOTAL, Mendes stated that it had a bona fide intent to use that mark in U.S. commerce. Those registrations were refused based on VSL's prior registrations for the marks "VSL#3," "VSL," and "VSL#3-DS." As a result, on January 19, 2015, Mendes filed a petition with the Trademark Trial and Appeal Board ("TTAB") seeking to cancel VSL's three marks. That action is currently suspended, over VSL's objection, based on Mendes's assertion that the resolution of the trademark infringement claims in this action could be dispositive on the issues raised in the cancellation petition.

## DISCUSSION

Mendes asserts three grounds for dismissal. First, Mendes argues, pursuant to Federal Rule of Civil Procedure 12(b)(1), that this Court lacks subject matter jurisdiction over Count XIV of VSL's Counterclaim, which seeks a declaratory judgment to cancel Mendes's VSL3TOTAL and VSL#3 BY DE SIMONE applications. Having previously dismissed Count XIV as to De Simone as unripe, the Court applies the same reasoning and dismisses that count as to Mendes as well. *See De Simone*, No. TDC-15-1356, 2017 WL 66323at *11 (D. Md. Jan. 5, 2017). Second, Mendes argues, pursuant to Rule 12(b)(2), that all claims must be dismissed because this Court lacks personal jurisdiction over Mendes. Third, Mendes seeks dismissal, pursuant to Rule 12(b)(6), because VSL has failed to state a viable cause of action.

As to personal jurisdiction, Mendes asserts that VSL's claims against it cannot proceed because Mendes lacks sufficient contacts to be properly subject to this Court's jurisdiction. In response, VSL asserts three factual predicates for this Court to exert personal jurisdiction over Mendes. First, VSL offers Mendes's dealings with the USPTO, located in Alexandria, Virginia. Although in its Counterclaim, VSL identified only Mendes's activities in the USPTO related to the trademark applications for VSL3TOTAL and VSL#3 BY DE SIMONE, in its response to Mendes's Motion, VSL also references 16 other trademark applications filed by Mendes from 2013 to 2015, none of which sought registration of marks using the term "VSL" in any way. VSL also notes that Mendes, after having its applications for VSL3TOTAL and VSL#3 BY DE SIMONE refused, chose to pursue a cancellation proceeding as to VSL's marks.

Next, VSL identifies Mendes's dealings with Danisco, which manufactures at its Madison, Wisconsin facility the product sold as Vivomixx. VSL asserts that in obtaining its Vivomixx supply from Danisco, Mendes takes advantage of the "labor, facilities, and

4

transportation" associated with Danisco's fulfillment of those orders, such that Mendes could reasonably foresee being haled into court as a result of that contact. VSL Opp'n Mot. Dismiss ("VSL Opp'n") at 9, ECF No. 201. Beginning in 2014, the supply agreement between De Simone and Danisco, which covers the total amount of the probiotic to be delivered to locations in the United States, Europe, and Asia, not just the supplies for Mendes, guaranteed at least $8.5 million in orders per year, with that amount gradually increasing to $10 million by 2018.

Finally, VSL argues that Mendes is subject to personal jurisdiction in this Court because Mendes "prominently advertises" the online pharmacy Farmaline on its website, and Farmaline, in turn, indicates on its own website that it will ship Vivomixx to the United States. VSL Opp'n at 13. As proof that this allegedly purposeful distribution channel is active, VSL asserts that it ordered Vivomixx from another online pharmacy, Pharmacy2go, that the order was delivered to Maryland in June 2015, and that the text printed on the Vivomixx packaging included the mark "VSL3TOTAL."

As set forth below, the Court finds that it lacks personal jurisdiction over Mendes. Accordingly, the Court will not address Mendes's alternative grounds for dismissal.

## I.      Legal Standard

It is the plaintiff's burden to establish personal jurisdiction. *Mylan Labs. Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). To carry that burden at the pleading stage and without a hearing, the plaintiff need only make a *prima facie* showing that a defendant is properly subject to this Court's jurisdiction. *Id.* In evaluating the plaintiff's showing, this Court must accept the plaintiff's allegations as true, and it must draw all reasonable inferences and resolve any factual conflicts in the plaintiff's favor. *Id.* The Court may consider evidence outside the pleadings in

resolving a Rule 12(b)(2) motion. *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d. 757, 763-64 (D. Md. 2009).

## II.    Basis for Personal Jurisdiction

Ordinarily, a federal court establishes personal jurisdiction over a party based on a finding that it is subject to the jurisdiction of "a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A).  Such jurisdiction exists if that party's contacts with the forum state render it subject to the state's long-arm statute and the exercise of jurisdiction is consistent with the party's constitutional due process rights. *Base Metal Trading v. OJSC Novokuznetsky Aluminum*, 283 F.3d 208, 212 (4th Cir. 2002).  Although VSL asserts that Maryland courts, and thus this Court, have personal jurisdiction over Mendes, it relies primarily on the claim that personal jurisdiction exists pursuant to Federal Rule of Civil Procedure 4(k)(2), which provides that:

> For a claim that arises under federal law, serving a summons … establishes personal jurisdiction over a defendant if:
>
> (A)  the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2).  Jurisdiction over Mendes must thus be routed through either Rule 4(k)(1)(A), which allows for personal jurisdiction through the relevant state long-arm statute, or Rule 4(k)(2), which allows for personal jurisdiction through what amounts to a federal long-arm statute. *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 275 (4th Cir. 2005) ("Rule 4(k)(2) is in essence a federal long-arm statute.").

Both Mendes and VSL focus almost exclusively on Rule 4(k)(2) in arguing for or against personal jurisdiction.  The plain language of the rule, however, cabins its applicability to

instances where a defendant "is not subject to jurisdiction in any state's court of general jurisdiction." Fed. R. Civ. P. 4(k)(2). Rule 4(k)(2) is thus not a parallel route for the establishment of personal jurisdiction; rather, it can be used only after a plaintiff has established not only that jurisdiction is not proper in the state courts of the forum state, but also that jurisdiction would not be proper in the courts of any other state. Courts have thus made clear that Rule 4(k)(2) applies only to the "relatively narrow range of cases,". *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 40 (1st Cir. 1999), in which the plaintiff has established that the defendant "is not subject to personal jurisdiction in any state," *Base Metal Trading*, 283 F.3d at 215. *Cf. Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 111 (1987) (noting, in a case decided before the implementation of Rule 4(k)(2), that any federal long-arm statute should be "narrowly tailored").

Litigants therefore may not, as Mendes seeks to do, bypass a jurisdictional analysis under Rule 4(k)(1), nor may they proceed, as VSL attempts to do, under Rule 4(k)(2) while reserving the opportunity to proceed later under Rule 4(k)(1). The personal jurisdiction analysis must instead proceed first under Rule 4(k)(1), which here requires the Court to determine whether Mendes is subject to suit in Maryland. *See Base Metal Trading*, 283 F.3d at 215.

## III.    Personal Jurisdiction in Maryland

Mendes is incorporated and headquartered in Switzerland and thus is not a citizen of Maryland. For this Court to find personal jurisdiction over Mendes under Rule 4(k)(1), VSL must make a *prima facie* showing that Mendes is subject to suit under both the long-arm statute of Maryland and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Because courts have interpreted the Maryland long-arm statute, Md. Code Ann., Cts.

& Jud. Proc. § 6–103 (West 2011), to reach as far as the Constitution allows, the statutory and due process components of the personal jurisdiction analysis merge. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002).

The due process analysis requires a showing that Mendes has sufficient "minimum contacts" with Maryland such that "maintenance of the suit [in this state] does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Personal jurisdiction can be "general" or "specific." A court has general personal jurisdiction when the defendant maintains "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). Here, where Mendes's only asserted contact with Maryland is the single delivery to the state of its allegedly infringing product, VSL has failed to make the requisite showing that Mendes has contacts with Maryland so continuous and systematic that this Court could exercise general jurisdiction.

As for specific jurisdiction, a defendant corporation must "purposefully avail[] itself of the privilege of conducting activities within the forum State," and its "conduct and connection with the forum State" must be "such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Thus, a court has specific personal jurisdiction when the defendant has established minimum contacts with the forum state by purposefully directing its activities at the residents of that state, and the cause of action "results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). The United States Court of Appeals for the Fourth Circuit has found that, where a non-resident defendant has not engaged in any activities within the forum state, specific personal jurisdiction is appropriate only when the defendant "has

intentionally directed his tortious conduct toward the forum state, knowing that that conduct would cause harm to a forum resident." *Carefirst*, 334 F.3d at 398.

Where, as here, the defendant is a non-resident company whose only alleged connection to a forum is that its products have ended up there, the United States Supreme Court has recognized a "stream of commerce" theory of personal jurisdiction under which the forum state "does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *World-Wide Volkswagen*, 44 U.S. at 297-98. The Supreme Court's jurisprudence on the stream of commerce theory of personal jurisdiction has not been univocal. *See Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102 (1987) (advancing two different theories of stream of commerce personal jurisdiction, neither of which garnered a majority of the Court). At present, Justice Breyer's concurrence in *J. McIntyre Mach. Ltd. v. Nicastro*, 564 U.S. 873 (2011), a case in which no majority opinion was issued, provides controlling guidance. *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .") (citation omitted). In *McIntyre*, six justices agreed that there was no personal jurisdiction over a British company that directed marketing and sales efforts at the United States through a distributor, but whose only contact with the forum state was the sale of one of its machines to a resident of that state. *McIntyre*, 564 U.S. at 887-88. In his concurrence, Justice Breyer concluded that none of the Supreme Court's stream of commerce precedents would permit a "single isolated sale" of a product to a customer in the forum to be sufficient to establish

9

minimum contacts on the part of the manufacturer, and that without a showing of a "regular course of sales" in the forum state, or a showing of "something more," such as "special state-related design, advertising, advice, marketing or anything else" that would indicate a "specific effort" by the defendant to sell in the forum, the exertion of personal jurisdiction over the manufacturer would violate due process. *Id.* at 889 (Breyer, J., concurring).

Here, Mendes's only identified contact with Maryland is a "single isolated sale" of the type that Justice Breyer flatly rejects. Even if a single sale could be sufficient, this particular sale cannot establish purposeful availment of the Maryland market because it was not made from the Vivomixx website, or any website linked to it, but from "Pharmacy2go," an online pharmacy with no identified connection to Mendes or Vivomixx. Furthermore, this single instance in which a Mendes product was shipped into Maryland was the result of a deliberate scheme by VSL's attorneys to place an order for Vivomixx, a product marketed and sold in Europe, to be delivered in Maryland, for the sole purpose of manufacturing jurisdiction. Thus, while a solitary box of Vivomixx has made its way to Maryland's shores, it has done so not because of Mendes's specific effort to create and capitalize on a stream of commerce to this state, but because of VSL's legal maneuvering. As the equivalent of a sting operation, this tactic has been rejected as a legitimate means to establish personal jurisdiction. *See, e.g., ISI Brands, Inc. v. KCC Intern., Inc.*, 458 F. Supp. 2d 81, 89 (E.D.N.Y. 2006) ("It is beyond dispute that jurisdiction cannot be manufactured by the Plaintiff."); *Millennium Enter., Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 911 (D. Or. 1999) (rejecting, in a trademark infringement case, the plaintiff's attempt to "manufacture a contact" with the jurisdiction by having someone order the allegedly infringing product because defendants "cannot be said to have 'purposely' availed themselves of the protections of this forum when it was an act of someone associated with plaintiff, rather than

defendants' web site advertising, that brought defendants' product into this forum"); *DeSantis v. Hafner Creations, Inc.*, 949 F. Supp. 419, 425 (E.D. Va 1996) (holding, when determining whether jurisdiction was proper under Virginia's long-arm statute, that "a plaintiff to whom a cause of action has accrued may not thereafter initiate a transaction for the sole purpose of creating jurisdiction"). *See also Carefirst*, 334 F.3d at 400-01 (affirming the district court's determination that it lacked personal jurisdiction over the defendant where one of the defendant's alleged contacts with the forum was the defendant's interactive company website through which the only specific exchange between the defendant and a Maryland resident was a "single [website] donation initiated by Carefirst's counsel (and ostensibly made to bolster the position of her client in this litigation)").

Beyond this single sale, VSL has identified no evidence of the constitutionally required "specific effort" to sell into Maryland. Neither the Vivomixx website nor the website of the online pharmacy Farmaline, referenced by VSL, has any mention of any specific intention or effort to sell Vivomixx to Maryland customers. *See McIntyre*, 564 U.S. at 889 (Breyer, J., concurring) (requiring "special state-related design, advertising, advice, [or] marketing" for the exercise of specific jurisdiction to satisfy due process); *Carefirst*, 334 F.3d at 399 (holding that "a person's action of placing information on the Internet is not sufficient by itself to subject that person to personal jurisdiction in each State in which the information is accessed"). To exercise jurisdiction over Mendes in Maryland based on these facts would therefore offend traditional notions of fair play and substantial justice. The Court concludes that Maryland courts would not have personal jurisdiction over Mendes, such that this Court lacks jurisdiction under Rule 4(k)(1).

11

## IV. Rule 4(k)(2)

VSL's claim of personal jurisdiction must therefore derive from the narrow form of national personal jurisdiction based on Rule 4(k)(2), which has three requirements: (1) the claim arises under federal law; (2) the defendant is not subject to personal jurisdiction in any state; and (3) the defendant has sufficient contacts with the United States such that the exercise of jurisdiction would be consistent with the Constitution and laws of the United States. Fed. R. Civ. P. 4(k)(2); *Base Metal Trading*, 283 F.3d at 215. The first requirement, that the claim arises under federal law, is satisfied because VSL's claims against Mendes arise under the Lanham Act. On the second requirement, the Fourth Circuit has required that a plaintiff make a threshold showing that the defendant is not subject to personal jurisdiction in any state. *Base Metal Trading*, 283 F.3d at 215. If a plaintiff makes that threshold showing, the third requirement is then considered. *See id.*

### A. Jurisdiction in a State

Although VSL does not specifically demonstrate that there is no personal jurisdiction over Mendes in any state, neither side claims that such jurisdiction exists, and the Court's analysis of the proffered jurisdictional facts reveals no basis to conclude that Mendes has sufficient contacts with any particular state to establish personal jurisdiction in its courts. Beyond its allegations relating to Maryland, VSL offers two additional bases for jurisdiction over Mendes: (1) its filings in the USPTO, and (2) its contract with Danisco to purchase the probiotic in Vivomixx.

#### 1. Trademark Applications

VSL asserts as jurisdictional facts Mendes's trademark applications filed with the USPTO, which is located in Arlington, Virginia, a fact of which this Court takes judicial notice.

12

Fed. R. Evid. 201(b)(2).   These contacts, however, do not establish personal jurisdiction in Virginia.

The Virginia long-arm statute "has been construed to extended *in personam* jurisdiction to the outmost perimeters of due process," so the statutory and due process components of the personal jurisdiction analysis merge. *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982).   Although VSL alleges that Mendes has filed 18 trademark applications with the USPTO and has sought to cancel VSL's marks, these actions do not establish personal jurisdiction in Virginia because of the "government contacts" exception, which provides that "petitioning the national government does not count as a jurisdictional contact" for purposes of establishing *in personam* jurisdiction over a defendant in the forum state. *Zeneca Ltd. v. Myland Pharm.,* 173 F.3d 829, 831 (Fed. Cir. 1999) (finding that the defendant's filing of a petition with the Federal Drug Administration in Maryland did not provide a basis to support personal jurisdiction over the defendant in Maryland).   Because this exception derives from the First Amendment, it extends to "a party's efforts to advance its commercial or proprietary interests," such as by seeking intellectual property protection. *Nichols v. G.D. Searle & Co.*, 783 F. Supp. 233, 242-43 (D. Md. 1992); *see Zeneca*, 173 F.3d at 831 (applying the government contacts exception in a patent infringement case).

The government contacts exception does not apply if the defendant's government filings were fraudulent. *See* Nichols, 783 F. Supp. at 233, 243 (stating that the government contract exception does not apply when there is evidence of "the fraudulent exercise of one's right to petition").   As part of its request for jurisdictional discovery, VSL accuses Mendes of fraud, but that allegation does not implicate the applicability of the government contacts exception. VSL claims not that Mendes falsely asserted an intent to use certain marks in U.S. commerce in its

USPTO filings; rather it claims that Mendes had and continues to have that intent but is now disavowing it in an effort to circumvent VSL's trademark infringement claims.   VSL's allegations of fraud thus do not relate to the content of Mendes's trademark applications, but rather to Mendes's subsequent conduct.   Accordingly, based on the government contacts exception, the Court is satisfied that there is no basis for personal jurisdiction over Mendes in Virginia.

2.   **Danisco**

Mendes's purchase of its probiotic supply from Danisco does not establish personal jurisdiction in any particular state.   The Danisco plant that supplies Mendes is located in Wisconsin.   The Wisconsin long-arm statute "is intended to reach to the fullest extent allowed under the due process clause" of the Fourteenth Amendment, so the statutory and due process components of the personal jurisdiction analysis merge.   *Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1217 (7th Cir. 1990).   Mendes's purchases of supply from Danisco, although regular, are not the kind of continuous and systematic interaction required for the exercise of general jurisdiction in Wisconsin.   *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (stating that general jurisdiction requires contacts that are "sufficiently extensive and pervasive to approximate physical presence") (internal citation omitted).   Furthermore, the Supreme Court has held that, as to general jurisdiction, "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation." *Helicopteros Nacionales*, 466 U.S. at 418.

Nor are Mendes's purchases sufficient to establish specific jurisdiction.   The United States Court of Appeals for the Seventh Circuit, which includes Wisconsin, has formulated the test for specific jurisdiction to include three requirements:

(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state, ...

(2) the alleged injury must have arisen from the defendant's forum-related activities, and

(3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice.

*Felland*, 682 F.3d at 673. For intentional torts, which include claims of trademark infringement and unfair competition, courts focus on "purposeful direction." *Id.* at 674; *David Berg and Co. v. Gatto Intern. Trading Co., Inc.*, 884 F.2d 306, 311 (7th Cir. 1989) ("[U]nfair competition and trademark infringement are tortious[.]"). Purposeful direction, in turn, requires that the defendant engage in (1) intentional conduct, (2) expressly aimed at the forum state, (3) with the knowledge that "the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Felland*, 682 F.3d at 675. As to what intentional conduct may considered under the first factor, the Seventh Circuit has previously noted a circuit split as to whether the intentional conduct to be considered in this analysis is *any* intentional conduct directed at the forum state, which, here, would include Mendes's orders from Danisco, or only *allegedly tortious* conduct directed at the forum state, which would require that Mendes have directed some allegedly infringing activity at Wisconsin. *See Tamburo v. Dworkin*, 601 F.3d 693, 704 (7th Cir. 2010). However, the Seventh Circuit recently emphasized that "[s]pecific jurisdiction must rest on the *litigation-specific* conduct of the defendant in the proposed forum state." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014).

By this standard, Mendes's only intentional conduct aimed at Wisconsin, namely its standing order with Danisco, is not related to the litigation. VSL's causes of action against Mendes relate only to trademark infringement and unfair competition. Although the product that Mendes ultimately sells as Vivomixx was obtained from Danisco, such a limited nexus does not

support specific jurisdiction, where there is no allegation or evidence that Danisco has any role in the branding and marketing of that product, which are the activities that form the basis of VSL's claims. *Cf. Saudi*, 427 F.3d at 276 (finding that where the plaintiff had sued for a personal injury that occurred on a merchant ship at sea, the fact that the refurbishment of the ship had been supervised by an American company from the United States was not a contact that provided "a basis for the suit" that would support specific jurisdiction).

Even if Mendes's standing purchase order with Danisco could be construed as litigation-specific intentional conduct, specific jurisdiction fails on the remaining two prongs, which largely overlap. *Tamburo*, 601 F.3d at 704. For specific jurisdiction to be permissible, a defendant must either target its conduct "at a plaintiff whom the defendant knows to be a resident of the forum state," or "the forum state [must] be the focal point of the tort." *Id.* (citation omitted). Here, VSL is not a resident of Wisconsin, and that state is not a focal point of the alleged trademark infringement and unfair competition claims against Mendes. Thus, the Court is satisfied that there is no personal jurisdiction over Mendes in Wisconsin.

### B.     National Jurisdiction

Although VSL's claims arise under federal law, and there apparently is no state with personal jurisdiction over Mendes, VSL has not met the third requirement under Rule 4(k)(2), that the defendant's contacts with the United States as a whole are substantial enough that the exercise of jurisdiction would be consistent with the Due Process Clause. The rubric for analyzing personal jurisdiction under Rule 4(k)(2) is no different than that under Rule 4(k)(1). *Saudi*, 427 F.3d at 275 (emphasizing that Rule 4(k)(2) "does not operate to relax the requirement that the defendant's contacts with the forum be constitutionally sufficient"). All that differs is the scope—nationwide rather than statewide—of the contacts under consideration. Thus personal jurisdiction under Rule 4(k)(2) must be either general or specific, and specific

jurisdiction continues to require that "the cause of action arise[] out of the defendant's contacts with the forum." *Id.* at 276 (quoting *Base Metal Trading*, 283 F.3d at 213).   Here, as VSL does not contest, general jurisdiction is inappropriate because Mendes's contacts with the United States are not so "continuous and systematic as to render [it] essentially at home" here. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011).   If Mendes is to be subject to personal jurisdiction under Rule 4(k)(2), then, it must be through specific jurisdiction. As a result, the only salient contacts for the jurisdictional analysis are those that "provide the basis for the suit." *Saudi*, 427 F.3d at 276 (quoting *Carefirst*, 334 F.3d at 397).

The only Mendes contacts with the United States identified by VSL are (1) the trademark applications and related filings to the USPTO; (2) the purchase of probiotic product from Danisco; (3) the single sale of Vivomixx into Maryland pursuant to an order placed by VSL's counsel; and (4) the reference on the Farmaline website to the ability to ship Vivomixx to the United States.   These factors, whether considered individually or collectively, do not provide a basis for specific jurisdiction over Mendes.

Mendes's trademark applications with the USPTO cannot support specific jurisdiction. As an initial matter, because VSL's claims against Mendes relate to the unlawful use of VSL's trademarks, none of the Mendes trademark applications other than those for marks containing the term "VSL" could arguably be jurisdictionally relevant, leaving only the applications for the marks VSL3TOTAL and VSL 3 BY DE SIMONE.   Even these applications, however, do not "provide the basis for the suit." *Saudi*, 427 F.3d at 276.   With Count XIV dismissed on other grounds, VSL's remaining claims against Mendes are based on Mendes's alleged infringement of the VSL#3 mark by using it in commerce, not on the mere filing of trademark applications for similar terms.   The statutory language makes this clear, requiring for both trademark

17

infringement and unfair competition that the infringing mark or designation be used in commerce. 15 U.S.C. § 1114(1)(a) ("Any person who shall, without the consent of the registrant, use in commerce..."); *id.* § 1125(a)(1) ("Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce..."). While a USPTO application might be a jurisdictionally significant contact under Rule 4(k)(2) if that filing is itself the basis of the alleged injury, *see Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403 (Fed. Cir. 2009) (finding in a legal malpractice action that the Court had personal jurisdiction under Rule 4(k)(2) over attorney defendants based on their filing of the flawed patent application that gave rise to the malpractice claims), that is not the situation here. Mendes's filing of trademark applications is not commensurate with the alleged infringement of VSL's separately registered trademark.

VSL essentially, but perhaps unwittingly, acknowledges this distinction. In responding to Mendes's alternative argument that VSL has failed to state a viable claim of trademark infringement or unfair competition based on Mendes's alleged use of the VSL#3 mark, VSL provides a list of the conduct underlying those claims. That list consists of (1) Mendes's use of VSL3TOTAL and VSL3 BY DE SIMONE on boxes of Vivomixx; (2) Mendes's inclusion on its website of a link to the Farmaline website and Farmaline's offer on its own website to ship Vivomixx to the United States; and (3) the shipping to Maryland of a box of Vivomixx, with the mark VSL3TOTAL on it, by the online pharmacy Pharmacy2Go. In articulating the factual basis for its trademark and unfair competition claims relating to the VSL#3 mark, VSL makes no mention of Mendes's unapproved trademark applications and thus reveals their irrelevance to those claims.

18

The United States Court of Appeals for the Fifth Circuit reached a similar conclusion in *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 345 (5th Cir. 2002). In *Quick*, the plaintiff, which held the U.S. trademark "SAGE INFORMATION SYSTEM," alleged trademark infringement against a foreign corporation that used the mark "SAGE," which it had registered in the United Kingdom. *Id.* at 342. The plaintiff argued that personal jurisdiction existed under Rule 4(k)(2) in part because the defendant had filed an intent-to-use application for the mark SAGE with the USPTO and had filed an opposition to the plaintiff's trademark application. The Fifth Circuit disagreed, holding that the plaintiff's trademark infringement claims did not "arise out of or relate to" the defendant's filings with the USPTO for purposes of establishing specific jurisdiction. *Id.* at 345. Likewise, VSL's trademark infringement and unfair competition claims arise from the alleged sale of product infringing on the VSL#3 mark, not from Mendes's USPTO filing of trademark applications and its opposition to VSL's trademark.

As discussed above, Mendes's standing purchase order from Danisco likewise does not provide the basis for VSL's trademark infringement claims and thus cannot support jurisdiction under Rule 4(k)(2) any more than it could in Wisconsin. *See supra* part IV.A.2. Even if they could support specific jurisdiction, Mendes's regular purchases from Danisco do not constitute minimum contacts with the United States sufficient to satisfy due process requirements. VSL's argument for jurisdiction based on Mendes's contact with Danisco might be described as a reverse stream of commerce argument, where jurisdiction is based on a stream of products purchased from a jurisdiction rather than distributed there for sale. The stream of commerce theory of personal jurisdiction, however, has repeatedly been described by the Supreme Court as applying to defendants offering items for sale into the forum, not the other way around. *See McIntyre*, 564 U.S. at 882 (stating that the stream of commerce theory does not alter basic

precepts of jurisdiction, but instead simply applies it to instances where "manufacturers or distributors seek to serve a given State's market" by "sending [their] goods rather than [their] agents"); *Asahi*, 480 U.S. at 117 (Brennan, J., concurring) (noting, in seeking to widen the plurality's definition of activity that would satisfy jurisdiction under the stream of commerce theory, that "[a]s long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise."); *World-Wide Volkswagen*, 444 U.S. at 297-98 (finding that the forum state "does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state"). VSL has offered no authority, and the Court has not identified any, to support a finding of specific jurisdiction based on purchases by a defendant from a forum state or jurisdiction, rather than sales into that jurisdiction. *See, e.g.*, *Nonpareil Corp. v. Reddy Raw, Inc.*, No. CV 07-253-E-EJL, 2008 WL 711037 at *5-6 (D. Idaho Mar. 14, 2008) (in a trademark dispute in which the defendant's alleged contacts with the forum state included large, regular orders of products from the forum state, considering in the personal jurisdiction analysis only the defendant's sales of the allegedly infringing product). Even if this reverse-stream of commerce theory is viable, where the purchases of probiotic product from Danisco themselves caused no trademark infringement against VSL, they cannot be deemed to establish "purposeful direction," expressly aimed at the United States, that was the source of injury to the plaintiff. *See supra* part IV.A.2; *Carefirst*, 334 F.3d at 397-98 (finding that specific jurisdiction over an out-of-forum defendant can be based on contacts constituting "tortious conduct" that was "intentionally directed" toward the forum state).

The only remaining purported contacts with the United States are the single shipment of Vivomixx to Maryland and the statement on the Farmaline website that Vivomixx can be shipped to the United States. As discussed above, the attorney-engineered single shipment cannot fairly be considered both because it was procured for the sole purpose of manufacturing jurisdiction in this litigation and because it was purchased from an online pharmacy, Pharmacy2go, with no demonstrated link to Mendes or Vivomixx. *See supra* part III.

As for other online activity, the Vivomixx website itself, registered in the European Union, gives no indication that it markets or ships product to the United States. Although the website does advertise that Vivomixx is "available at [F]armaline online pharmacy," that announcement fails to connect Mendes with the United States. Farmaline is a Belgium-based company that sells in numerous countries, including the United Kingdom and various European nations, such that Mendes's link to the Farmaline website cannot fairly be deemed purposeful direction of Vivomixx to the United States market. To the extent that Farmaline, in turn, notes on one of its many websites that it will ship Vivomixx to the United States, there is no indication that Mendes was aware of or supported such advertising by Farmaline. Particularly where there is no evidence of any bona fide sales of Vivomixx into the United States, through Farmaline or otherwise, this tenuous chain of statements on various websites is insufficient to establish specific jurisdiction over Mendes. *See Carefirst*, 334 F.3d at 400 (stating that in order for website to bring a defendant within the jurisdiction of a forum, "the company must have done something more than merely place information on the Internet" but instead must have acted with the "manifest intent" to target residents of that jurisdiction).

Even if all of Mendes's contacts with the United States are taken together, they are not sufficient to establish that the exercise of personal jurisdiction over Mendes would comport with

fair play and substantial justice.  Rule 4(k)(2) is an infrequently used tool that is not meant to allow for personal jurisdiction simply because a defendant has a number of different contacts with the United States. *See, e.g., Saudi*, 427 F.3d at 276 (in a ship-related personal injury and products liability case, finding no Rule 4(k)(2) jurisdiction over the defendant that owned the foreign shipyard where the ship had been refurbished when the defendant's contacts with the United States consisted of an alleged on-going joint venture with the New Jersey company that supervised the refurbishment and ownership of a subsidiary shipyard in Texas); *Base Metal Trading*, 283 F.3d at 214-15 (finding no Rule 4(k)(2) personal jurisdiction over a Russian aluminum company where the company's contacts with the United States consisted of a few shipments of aluminum arriving at American ports, attendance by company officials at trade conferences in the United States, sporadic negotiations with American companies about possible joint ventures, and a few purchases of secondary aluminum from the United States).  In *Quick Technologies*, a trademark infringement case brought by a U.S. company against a foreign company using a similar mark registered in the United Kingdom, the defendant's contacts consisted of filing an intent-to-use application with the USPTO; filing an opposition, through an American attorney, to the plaintiff's trademark application; maintaining a website with links to its U.S. subsidiaries; using its foreign-registered mark in publications circulated in the United States; and contacting and visiting U.S. companies about its rebranding efforts.  313 F.3d at 344. The court held that these contacts were insufficient to establish personal jurisdiction under Rule 4(k)(2).  *Id.* at 345.  Likewise, this Court concludes that Mendes's USPTO activity, its purchases of supply from Danisco, its link to the Farmaline website on the Vivomixx webpage, and the single sale by Pharmacy2Go into the United States do not constitute sufficient contacts to support specific jurisdiction in this case under Rule 4(k)(2).

## V.    Motion for Jurisdictional Discovery

In the alternative, VSL seeks jurisdictional discovery to secure additional facts with which to establish personal jurisdiction over Mendes.  VSL offers two bases for this request. First, it asserts that Mendes's "contacts with the United States are sufficient to warrant the reasonable inference that there are probably more."  VSL Opp'n at 17.  Second, VSL asserts that Mendes has engaged in "fraud or intentional misconduct."  *Id.*

"[T]he decision whether or not to permit jurisdictional discovery is a matter committed to the sound discretion of the district court."  *Base Metal Trading,* 283 F.3d at 216 n.3.  "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery."  *Carefirst*, 334 F.3d at 402. That is the situation here.  As discussed above, the bases for personal jurisdiction that VSL offers are insufficient to make exercise of such jurisdiction comport with fair play and substantial justice.  Beyond those contacts it has already alleged, VSL identifies no other possible contacts that it believes Mendes may have with Maryland or the United States as a whole, nor does it articulate any particular line of inquiry that would be reasonably calculated to uncover evidence that would establish personal jurisdiction.  Thus, to permit jurisdictional discovery would amount to authorizing a "fishing expedition in hopes of discovering some basis of jurisdiction."  *Base Metal Trading*, 283 F.2d at 216 n.3.  The Court declines to do so.

Rather than offering a concrete basis for jurisdictional discovery, VSL spends its energy accusing Mendes of fraud and intentional misconduct because its statements in its trademark applications that it had the intent to use the proposed marks in U.S. commerce are arguably at odds with its present claims that it no longer intends to conduct business in the United States. Fraud and misrepresentation as to jurisdictional facts may provide a basis to grant jurisdictional

discovery.  *See Carefirst*, 334 F.3d at 403 (finding that the district court did not abuse its discretion in refusing jurisdictional discovery because there was "no indication of fraud or intentional misconduct on the part of [the defendant] in its jurisdiction[al] affidavits").  VSL's argument, however, misses the mark for multiple reasons.  First, any past or current intent on the part of Mendes to conduct business in the United States, if proven, would be insufficient to establish personal jurisdiction.  The "minimum contacts" necessary to establish purposeful direction to the Maryland or United States market must be an actual, not merely intended, "regular course of sales" in or a "specific effort" to target the forum.  *McIntyre*, 564 U.S. at 889 (Breyer, J., concurring).  Second, although VSL argues that Mendes's statement of intent to conduct business in the United States indicates that discovery may uncover such activity, the fact that VSL has been unable to identify even a single bona fide sale of a Mendes product into the United States severely undercuts the force of that claim.  Third, Mendes has offered an entirely plausible explanation for why it once had, but no longer has, the intent to conduct business in the United States, specifically, that ExeGi was established as a separate company to focus on the United States market.  ExeGi is already a counterclaim defendant in this case.  Accordingly, the Court concludes that jurisdictional discovery is not warranted.

## CONCLUSION

For the foregoing reasons, Mendes's Motion to Dismiss is GRANTED.  The Clerk is directed to dismiss Mendes as a counterclaim defendant in this action.

Date: February 16, 2017

THEODORE D. CHUANG
United States District Judge