IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CLAUDIO DE SIMONE, *et al.*, | * | |
| Plaintiffs/Counterclaim Defendants, | * | |
| v. | * | Civil No. TDC-15-1356 |
| VSL PHARMACEUTICALS, INC., *et al.*, | * | |
| Defendants/Counterclaim Plaintiffs. | * | |

\*       \*       \*       \*       \*       \*

## MEMORANDUM OPINION

Pending before the Court is the Motion for Sanctions ("Motion") filed by Defendant VSL Pharmaceuticals, Inc. ("VSL") (ECF No. 458-1). Having considered the submissions of the parties (ECF Nos. 458, 473, 478, 484, 506 & 508), I find that a hearing is unnecessary.[1] *See* Loc. R. 105.6. For the reasons set forth below, VSL's Motion will be granted in part and denied in part.[2]

The factual background and procedural history of this case has previously been summarized by the Court. *See De Simone v. VSL Pharm., Inc.*, 133 F. Supp. 3d 776 (D. Md. 2015), *De Simone* v. *VSL Pharm., Inc.,* No. TDC-15-1356, 2017 WL 66323 (D. Md. Jan. 5, 2017), and *De Simone v. VSL Pharm., Inc.*, No. TDC-15-1356, 2016 WL 3466033 (D. Md. June 20, 2016). Some additional background regarding the progress of discovery in this case is relevant to this opinion. This case was referred to me for discovery and related scheduling matters on March 6, 2017. (ECF No. 285.) During the course of discovery, the Court held a

---

[1] On December 20, 2017, the Court granted De Simone leave to file a surreply concerning the issue of his alleged spoliation. (ECF No. 496.) The Court also granted VSL leave to file a response to De Simone's surreply.

[2] The related motions to seal (ECF Nos. 459, 474, 479, and 509) will be granted.

number of telephone conferences to hear argument regarding discovery disputes. (*See* ECF Nos. 312, 326, 356, 392, 415, 441, 470 & 499.) Following the telephone conferences held on August 9 and September 1, 2017, the Court ordered Plaintiff Claudio De Simone ("De Simone") and others to "produce the documents requested and respond substantively to the interrogatories propounded" by the opposing parties that sought trade secret information. (ECF No. 417.) Following the telephone conference held on October 5, 2017, the Court granted VSL leave to "file a motion for sanctions regarding De Simone's alleged non-compliance with the Court's orders and his discovery obligations." (ECF No. 443.)

VSL moves for sanctions against De Simone on three grounds: (1) that De Simone's destruction of certain documents amounts to spoliation; (2) that De Simone's production of a document written in a shorthand version of Italian braille violated Rule 33(d) and the Court's September 1, 2017 order; and (3) that De Simone failed to produce certain documents to VSL, even after certifying that his discovery production was complete.

## I.     Spoliation

VSL argues that De Simone should be sanctioned because his destruction of certain documents amounts to spoliation. (ECF No. 458-2 at 10-19.) Spoliation is the "destruction or material alteration of evidence . . . or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (internal citations omitted). In order to prove that spoliation warrants a sanction, a party must show that:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that

the lost evidence would have supported the claims or defenses of the party that sought it.

*Charter Oak Fire Ins. Co. v. Marlow Liquors, LLC*, 908 F. Supp. 2d 673, 678 (D. Md. 2012) (internal citations, quotation marks, and brackets omitted); *see also Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 179 (D. Md. 2008) ("This standard applies when a party is seeking any form of sanctions for spoliation, not just an adverse inference jury instruction").

VSL's allegation of spoliation stems from De Simone's admitted destruction of certain documents that he received from the law firm Hyman, Phelps & McNamara, P.C. ("Hyman Phelps"). (ECF No. 458-2 at 5.) In September 2014, while he was still the Chief Executive Officer of VSL, De Simone requested that attorney Diane McColl of Hyman Phelps remove from its files documents containing sensitive information about the VSL#3 product formulation and send the documents to De Simone.[3] (*Id.*)

According to a declaration signed by Diane McColl (ECF No. 458-11), Hyman Phelps "spent more than fifty hours reviewing its files to identify sensitive information about the VSL#3 product formulation in its possession." (*Id.* at 2.) Hyman Phelps identified "numerous documents" that matched De Simone's request and sent them to him. (*Id.*) The documents "included non-public communications with VSL employees, expert panel members, [and] scientific consultants that describe the composition of VSL#3 products." (*Id.*) At De Simone's instruction, Hyman Phelps destroyed its copies of the documents that it sent to De Simone. (*Id.*)

Approximately one week after De Simone received the documents from Hyman Phelps, he filed a motion to intervene in related litigation in Delaware state court. (ECF No. 458-14.) In that motion, De Simone stated that "VSL possesses certain of Prof. De Simone's proprietary and

---

[3] Hyman Phelps served as counsel for VSL from the mid-2000s until 2014. (*Id.*) During that time, Hyman Phelps accumulated "voluminous files related to VSL#3." (ECF No. 458-11 at 1.)

confidential information" related to VSL#3. (*Id.* at 10.) De Simone sought to intervene to prevent that confidential information from "find[ing] its way into the hands of VSL's and/or Prof. De Simone's potential competitors." (*Id.*)

During De Simone's October 3, 2017 deposition, he testified about the documents that he received from Hyman Phelps. He stated that after he received the documents, he reviewed them, determined that they "were only articles" and "threw them away." (ECF No. 458-13 at 4.) De Simone further testified that the documents that he "threw away" were publicly available articles that can be "download[ed] from the internet in a few seconds." (*Id.* at 5.) VSL argues that De Simone's actions were part of "a premeditated plan to deprive VSL of its own highly relevant documents in the Delaware litigation and in the current action." (ECF No. 458-2 at 7.)

### A.    Breach of Obligation to Preserve Relevant Evidence

The first consideration in determining whether spoliation has occurred is whether a party breached its duty to preserve potentially relevant evidence. Once a party reasonably anticipates litigation, it is obligated to implement a "litigation hold" to ensure that potentially relevant evidence under its control is identified, located, and preserved for use in the anticipated litigation. *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 511 (D. Md. 2009); *see also Silvestri*, 271 F.3d at 591 ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.") The duty of preservation applies to

> any documents or tangible things . . . made by individuals "likely to have discoverable information that the disclosing party may use to support its claims or defenses." The duty also includes documents prepared *for* those individuals, to the extent those documents can be readily identified (*e.g.,* from the "to" field in e-mails). The duty also extends to information that is relevant to the claims or defenses of *any* party, or which is "relevant to the subject matter involved in the

action." Thus, the duty to preserve extends to those employees likely to have relevant information—the "key players" in the case.

*Goodman*, 632 F. Supp. 2d at 511-12.

VSL argues that De Simone had a duty to preserve the documents that he received from VSL because he was aware of the ongoing litigation in Delaware (in which he sought to intervene) and because he anticipated litigation related to the ownership of the intellectual property rights underlying the VSL#3 product. (ECF No. 458-2 at 11.) VSL points to two statements in De Simone's Amended Complaint as evidence that he anticipated litigation at the time that he destroyed the Hyman Phelps documents. (*Id.* at 11-12.) In one place, De Simone stated that the positions taken by the opposing parties in the Delaware litigation are contrary to "numerous prior agreements entered among the relevant parties in which it was clearly acknowledged that Prof. De Simone, and only Prof. De Simone, is the sole rightful owner of all intellectual property rights relating to the probiotic formulation underlying VSL#3." (ECF No. 316 ¶ 162.) In another place, De Simone alleged that the opposing parties in the Delaware litigation were "contesting and denying Prof. De Simone's rightful claims to ownership of the intellectual property rights underlying the VSL#3 product." (*Id.* ¶ 195.)

De Simone argues that the composition of VSL#3 was "simply not at issue at the time" that he admittedly discarded the Hyman Phelps documents. (ECF No. 473-1 at 22.) De Simone notes that information about the composition of VSL#3 was not material to the claims and defenses at issue in the Delaware "books and records" litigation. (*Id.*) Instead, the Delaware litigation concerned "a contract interpretation dispute that is not influenced any way by the facts of the composition." (*Id.*)

I find that De Simone had a duty to preserve the documents he received from Hyman Phelps at the time that he received and then disposed of them in October or November 2014. By

that time, De Simone had expressed his concerns about safeguarding the confidentiality of his alleged trade secrets in the VSL#3 product. Although the Delaware litigation was not itself concerned with substantive issues regarding De Simone's know-how or the composition of VSL#3, De Simone should have reasonably anticipated litigation concerning these issues at that time.

In the June 16, 2014, letter from Douglas Nabhan on behalf of certain minority shareholders of VSL, the shareholders requested access to 18 categories of documents, including "[d]ocuments describing and/or concerning any and all intellectual property rights that VSL Pharmaceuticals owns or has any title or right to." (ECF No. 458-6 at 5.) Later, in July and August 2014, the minority shareholders notified counsel for VSL that they had "reason to believe Claudio De Simone . . . may be diverting resources or other property of [VSL] to other entities in which he has an interest . . . or destroying certain records of [VSL]." (ECF No. 458-8 at 49.) In addition, VSL has submitted evidence that in August or September 2014, De Simone briefly discussed licensing the VSL#3 formulation to Marc Tewey. (ECF No. 478-4 at 3-4.) At that time, De Simone expressed dissatisfaction with VSL's intention to change the formulation of VSL#3 to save money and indicated that he did not "know what's going to happen." (*Id.*) Given the ongoing litigation in Delaware and the demands made by the minority shareholders in that litigation, and considering the evidence of De Simone's expression of uncertainty regarding what might happen between himself and VSL, I find that De Simone should have reasonably anticipated litigation in which the documents he obtained from Hyman Phelps might be relevant. *See generally Hawkins v. Coll. of Charleston*, No. DCN-12-0384, 2013 WL 6050324, at *3 (D.S.C. Nov. 15, 2013) ("When litigation is 'reasonably foreseeable' is a flexible fact-specific

standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry.")

## B. Culpability

The second consideration in the spoliation analysis is whether the party's loss or destruction of the potentially relevant evidence was accompanied by a culpable state of mind. "In the Fourth Circuit, for a court to impose some form of sanctions for spoliation, any fault—be it bad faith, willfulness, gross negligence, or ordinary negligence—is a sufficiently culpable mindset." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 529 (D. Md. 2010) (*citing Goodman*, 632 F. Supp. 2d at 518, 520). In the context of spoliation, ordinary negligence is the failure to identify, locate, and preserve evidence, where a reasonably prudent person acting under like circumstances would have done so. *See In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 519 (S.D.W. Va. 2014). A finding of gross negligence requires a similar showing as ordinary negligence, but to a greater degree. *Id.* Willfulness and bad faith will only be found where a party has engaged in "intentional, purposeful, or deliberate conduct." *Id.* (quoting *Victor Stanley*, 269 F.R.D. at 529). While bad faith requires the destruction of evidence "for the purpose of depriving the adversary of the evidence," *Goodman*, 632 F. Supp. 2d at 520, willfulness only requires a demonstration of intentional or deliberate conduct resulting in spoliation. *Buckley v. Mukasey*, 538 F.3d 306, 323 (4th Cir. 2008).

The parties do not appear to dispute that De Simone's destruction of the documents he received from Hyman Phelps was willful. They do disagree, however, about whether De Simone destroyed the documents in bad faith. VSL argues that De Simone destroyed the Hyman Phelps documents because he "knew there would be a dispute over the ownership of the intellectual property underlying VSL#3." (ECF No. 458-2 at 13.) By destroying the Hyman Phelps

documents, VSL argues, De Simone destroyed evidence "regarding the VSL#3 formulation and the changes to it over time, all in an effort to hamper VSL's ability to contest De Simone's claims of ownership." (*Id.* at 14.) And then, a few weeks after destroying the documents, De Simone resigned from VSL, which VSL construes as further evidence of his bad faith.

De Simone argues that his destruction of the Hyman Phelps documents was not done in bad faith. Instead, he argues that it was an effort to prevent a competitor, Sigma Tau Italy, from "improperly learn[ing] his Know-How and trade secrets," not because of any anticipated litigation or the ongoing litigation in Delaware. (ECF No. 473-1 at 23.) In addition, De Simone notes that Danisco (the sole producer of VSL#3 at the relevant time) was in possession of the "full information about the composition of the VSL#3 [product] that it was making." (ECF No. 473-1 at 20.) De Simone suggests that this shows that he did not have a culpable state of mind in "throwing away" the Hyman Phelps documents.

I find that De Simone's destruction of the Hyman Phelps documents was accompanied by a culpable state of mind. By his own admission, De Simone threw the documents away intentionally. This is a sufficiently culpable mindset to support a finding of spoliation. *See Victor Stanley*, 269 F.R.D. at 529. However, VSL has not presented sufficient evidence that De Simone's destruction of the documents was in bad faith. Although the timing of De Simone's retrieval and destruction of the documents from Hyman Phelps is suspect, De Simone's argument that he was principally concerned with safeguarding the VSL#3 formulation from Sigma Tau Italy is persuasive. De Simone certainly should have anticipated litigation at the time that he destroyed the documents, but the Court finds it just as likely that he destroyed the documents to prevent an overseas competitor from obtaining his purported trade secrets as to prevent their use

in subsequent litigation. Accordingly, the Court is unable to conclude that De Simone's destruction of the documents was in bad faith, but does conclude that the destruction was willful.

## C.    Relevance

The final consideration in determining whether spoliation has occurred is the relevance of the spoliated evidence. "The test for relevance for purposes of establishing the third element is somewhat more stringent than merely meeting the standard provided in Federal Rule of Evidence 401." *Sampson*, 251 F.R.D. at 179. In the context of spoliation, lost or destroyed evidence is relevant if "a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Victor Stanley*, 269 F.R.D. at 531 (internal citations omitted). In addition, in order for a court to impose sanctions, "the absence of the evidence must be prejudicial to the party alleging spoliation." *Id.* ("Put another way, a finding of 'relevance' for purposes of spoliation sanctions is a two-pronged finding of relevance and prejudice."). When a party alleging spoliation shows that the alleged spoliator acted willfully or in bad faith in failing to preserve the evidence, "the relevance of that evidence is presumed in the Fourth Circuit." *Id.* at 532. Even where the relevance of spoliated evidence is presumed, however, "the spoliating party may rebut this presumption by showing that the innocent party has not been prejudiced." *Id.*

Because I have found that De Simone willfully destroyed the Hyman Phelps documents, the relevance of those documents is presumed. *See Victor Stanley*, 269 F.R.D. at 532; *see also Sampson*, 251 F.R.D. at 179. Even setting aside this presumption, I find that the documents contained information that was relevant to the claims and defenses in this case.

Diane McColl declared under oath that the documents "included non-public communications with VSL employees, expert panel members, [and] scientific consultants that

describe the composition of VSL#3 products." (ECF No. 458-11 at 2.) VSL argues that such information is relevant to the pending misappropriation of trade secrets claims, as well as the false advertising claim. This is because information about "the composition of VSL#3 products would relate to issues of defining the know-how at issue, identifying any changes in the VSL#3 formulation over time, and marking the metes and bounds of De Simone's alleged trade secret." (ECF No. 458-2 at 15.) VSL's argument on this point has merit and persuades me that even without employing the presumption, a finding of relevance is warranted.

### D.     Prejudice

In order for a Court to impose sanctions upon a spoliator, the misconduct must have caused prejudice to the opposing party. *Victor Stanley*, 269 F.R.D. at 532. A party is prejudiced by the spoliation of evidence where the party's ability to present its case is compromised as a result of the missing evidence. *Id.* (noting that "[p]rejudice can range along a continuum from an inability to prove claims to little or no impact on the presentation of proof") (internal quotation marks omitted).

At the time that VSL filed its Motion, the degree to which VSL was prejudiced by De Simone's destruction of the Hyman Phelps documents was hotly disputed. VSL argued that the destruction hindered its ability to present its claims and defenses. VSL further argued that information about "changes to the composition of the VSL#3 formulation over time could have completely changed the character and course of this litigation, particularly as it concerns De Simone's credibility." (ECF No. 458-2 at 15.) VSL stated that the VSL#3 "blend and manufacturing processes have changed over time," and "there is no singular 'De Simone Formulation.'" (*Id.*) VSL suggested that the Hyman Phelps documents would have been evidence of the changes, in contradiction of De Simone's claims that the formulation did not

change over time. VSL stated that the documents De Simone destroyed are "irreplaceable, impossible to reconstruct, and directly relevant to the central questions" in this case. (*Id.* at 16.)

De Simone contended that any information that Hyman Phelps sent to De Simone was "superfluous" and available from other sources, including Danisco and De Simone himself. (ECF No. 473-1 at 19-20.) De Simone also suggests that Diane McColl's declaration[4] should not be credited, at least to the extent that it is inconsistent with De Simone's deposition testimony, because her memory is unreliable. (*Id.* at 25.)

On December 14, 2017, counsel for De Simone filed a letter forewarning the Court that "critical new evidence has come to light that completely, forcefully refutes" VSL's allegation that De Simone engaged in spoliation. (ECF No. 484.) The Court held a telephone conference to discuss De Simone's letter and granted him leave to file a surreply in opposition to the Motion for Sanctions. (ECF No. 496.)

De Simone's surreply (ECF No. 506) casts light on the degree to which VSL may have been prejudiced by De Simone's destruction of the Hyman Phelps documents. In December 2017, Hyman Phelps responded to a subpoena that De Simone had issued in an effort to identify the documents that were sent to him in 2014. (ECF No. 506-4.) The response included a copy of the October 23, 2014 memorandum from Diane McColl (*id.* at 4) and a FedEx Express air waybill ("Waybill") (*id.* at 5). The Waybill, which lists De Simone as the addressee and Fred Rivera of Hyman Phelps as the sender, indicates that the package to which it corresponds was shipped on October 23, 2014 (the same date as Diane McColl's memorandum) and had an actual

---

[4] Diane McColl submitted a second declaration, which is attached to VSL's reply (ECF No. 478-2.) In her second declaration, she clarifies the statements she made during a telephone conversation with De Simone's counsel. (*Id.*) She also "reiterate[s] that [she] did not send Dr. De Simone published studies, or other documents that were publicly available, in October of 2014." (*Id.*)

weight of 0.5 pounds. (*Id.*) In consideration of FedEx's company policies (*see* ECF No. 506-5), De Simone argues that the envelope that Hyman Phelps sent him could have only contained a "very limited number of documents," perhaps about 35 pages. (ECF No. 506 at 5.)

Critically, De Simone now maintains that he has identified "all, or nearly all" of the discarded Hyman Phelps documents. (*Id.* at 7.) During the course of their review of documents to produce in discovery, De Simone's attorneys came across two computer files titled "Diane confidential documents I.pdf" and "Diane confidential documents II.pdf." The metadata of the files indicates that they were last modified on November 4, 2014, which is approximately two weeks after Hyman Phelps shipped the envelope to De Simone. (*Id.*) Copies of the contents of the PDF files are attached to De Simone's surreply at ECF Nos. 506-7 and 506-8. Combined, the documents total 22 pages. De Simone notes that he previously produced "the substantive portion of those very documents," and that Danisco produced portions of one of the documents. (ECF No. 506 at 8.)

A declaration signed by De Simone is attached to the surreply. (ECF No. 506-9.) In the declaration, De Simone explains that he did not have a clear memory of what he did with the Hyman Phelps documents at the time of his October 31, 2017 deposition, and that he "answered to the best of [his] recollection." (*Id.* at 2.) Having reviewed the documents attached to the surreply as ECF Nos. 506-7 and 506-8, De Simone states that "his recollection was refreshed," and he believes those documents are the same documents that Hyman Phelps sent to him on October 23, 2014. (*Id.*) De Simone stands by his recollection that he discarded certain publicly available articles that were included in the files sent to him by Hyman Phelps. He states that "it is possible" that "ten or so pages of publicly available articles" were included in the Hyman Phelps FedEx package," and that he "did not bother to scan and save those documents as [he] did [ECF

Nos. 506-7 and 506-8], because they were clearly publicly available and did not need to be saved." (*Id.* at 3.) De Simone argues that he cannot be found to have committed spoliation because some of the documents that he previously thought were destroyed have been located, and any other documents that may have been destroyed are publicly available articles, the destruction of which is not prejudicial to VSL.

In its response to De Simone's surreply, VSL accuses De Simone of rewriting history. (ECF No. 508.) It notes that De Simone was confident of the responses he gave during his deposition, and that his counsel had been alerted to the issue of the missing Hyman Phelps documents one week prior to the deposition. (*Id.* at 4-5.) VSL argues that De Simone's assumption that the package that Hyman Phelps mailed to him could not have weighed more than 0.5 pounds should be dismissed because FedEx's stated policy "is simply not true in practice." (*Id.* at 6.) The Court is not required to resolve the dispute over whether FedEx adheres to its own policies. De Simone concedes that some of the documents that Hyman Phelps sent to De Simone may have been destroyed. Because he did no keep a record of the documents that he "threw away," it is impossible to know what those documents contained. VSL suggests that De Simone's description of the nature of the destroyed documents should not be given any credence because his recollection is unreliable on this point. VSL insists that it has made a sufficient showing of prejudice because "it remains . . . possible that De Simone destroyed documents that contained sensitive information related to the VSL#3 formulation." (*Id.* at 7.)

I find that VSL has been prejudiced by De Simone's destruction of some of the Hyman Phelps documents. Although it appears that some or even most of the documents have been located, there is no dispute that other documents have been destroyed by De Simone. It may be that the documents that De Simone discarded were publicly available articles that can be

obtained from other sources and that have no bearing on any of the claims or defenses in this case. But it is also possible that the documents contained information that VSL might have used to support its claims or defenses, including information that would undermine De Simone's credibility regarding changes to the VSL#3 formulation over time. While it is a difficult task to quantify the degree to which VSL has been prejudiced, after careful consideration I find that the likely prejudice to VSL is slight. VSL has engaged in extensive discovery in this case. It is unlikely that the documents that De Simone destroyed before this litigation was even instituted contain information that is unavailable from other sources. But because the Court cannot ever know what documents De Simone destroyed, the Court will assume that VSL suffers some prejudice.

### E.    Sanctions

"Spoliation sanctions should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Goodman*, 632 F. Supp. 2d at 523 (internal quotation marks omitted). Federal courts may impose a number of types of sanctions for spoliation: "assessing attorney's fees and costs, giving the jury an adverse inference instruction, precluding evidence, or imposing the harsh, case-dispositive sanctions of dismissal or judgment by default." *Victor Stanley*, 269 F.R.D. at 533 (citing *Goodman*, 632 F. Supp. 2d at 506). A court must "impose the least harsh sanction that can provide an adequate remedy." *Id.* at 534 (quoting *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 469 (S.D.N.Y. 2010)).

De Simone characterizes the sanctions that VSL seeks as "case-crippling." (ECF No. 506 at 10.) VSL requests that the Court dismiss De Simone's claims against VSL (ECF No. 458-2 at 16), but this sanction is clearly unwarranted. The Court has found that De Simone did not destroy

the Hyman Phelps documents in bad faith and VSL has made no showing of prejudice so extraordinary for the Court to conclude that it has been denied the ability to adequately prepare its defenses. While it may be true that the "information destroyed by De Simone cannot be recovered or replaced" (*id.* at 17), this axiom is true in nearly all instances of spoliation. Yet not all spoliators are sanctioned with dismissal of their claims, and for good reason. In the alternative, VSL requests that De Simone be prohibited "from contesting VSL's claims to ownership of any know-how or trade secrets associated with VSL#3 and from arguing that he has exclusive rights to such intellectual property." (*Id.* at 18.) Again, in consideration of the degree of De Simone's culpability and the slight prejudice to VSL, this sanction is also too drastic.

VSL also requests as an alternative sanction that the Court sanction De Simone with an adverse inference jury instruction. (*Id.* at 18.) Such an instruction would state that De Simone destroyed evidence "because it was detrimental to [his] claims and . . . both relevant and favorable to VSL's claims and defenses." (*Id.* at 18-19.) This sanction is also too severe. VSL's prejudice because of De Simone's spoliation is probably very slight and this instruction is far too general. De Simone's spoliation was limited to one instance and it occurred before this litigation was instituted. An adverse inference instruction like the one proposed by VSL is unnecessary to level the evidentiary playing field or to punish De Simone for his misconduct. VSL has engaged in extensive discovery and the Court has not been presented with any evidence to suggest that the documents that De Simone destroyed likely contained the critical piece of missing evidence that VSL will need to prove its claims or establish its defenses.

Finally, VSL requests that the Court order De Simone to reimburse it for the "reasonable expenses and attorneys' fees it incurred in making the motion, and also for the cost of

investigating the spoliator's conduct." (*Id.* at 19.) The imposition of costs and fees "compensate the prejudiced party but also punish the offending party for its actions and deter the litigant's conduct, sending the message that egregious conduct will not be tolerated." *Victor Stanley, Inc.*, 269 F.R.D. at 536 (internal quotation marks omitted). In determining whether the imposition of fees and costs is warranted, the Court focuses "more on the conduct of the spoliating party than on whether documents were lost, and, if so, whether those documents were relevant and resulted in prejudice to the innocent party." *Id.* Courts may "award costs or fees in conjunction with a spoliation motion as an alternative to a harsher sanction." *Id.*

I find that the imposition of reasonable costs and fees is an appropriate sanction for De Simone's spoliation. First, although VSL has only been slightly prejudiced in its ability to prove its claims and defenses, this is hardly a case of "no harm, no foul." (*see* ECF No. 508 at 6.) VSL has likely incurred significant costs, mostly in the way of attorney's fees, for investigating De Simone's spoliation and presenting it to the Court in the Motion for Sanctions. Had De Simone not destroyed some of the documents he received from Hyman Phelps, VSL would not have had to incur such costs. Fairness dictates that De Simone shoulder these costs, not VSL.[5] Second, in a general sense, De Simone and similarly situated future litigants must be deterred from destroying documents that may be relevant in future litigation. Admittedly, determining what documents and information must be preserved for possible future litigation is not easy. *See, e.g.*, *Victor Stanley*, 269 F.R.D. at 522 ("Beyond these basics, the duty to preserve evidence should not be analyzed in absolute terms; it requires nuance, because the duty cannot be defined with precision.") (Internal quotation marks omitted). Some documents may appear to be irrelevant or

---

[5] In addition, as Judge Grimm noted in *Victor Stanley*, "resolution of spoliation motions takes a toll on the court, separate from that extracted from the litigants, for which there is no satisfactory remedy short of criminal contempt proceedings." 269 F.R.D. 497 at 528.

unimportant at one time, but later prove to be relevant and important. The circumstances of this case, however, are a cause for serious concern. Here, a company's executive was planning his departure from the company. Before resigning, he contacted the company's long-time law firm in order to retrieve documents that belonged to the company. He instructed the law firm to destroy its copies of those documents and later destroyed some of the documents that they sent to him. Although I do not find that De Simone acted in bad faith as that term is used in the spoliation inquiry, this was not an innocent mistake in judgment regarding what documents should be preserved. De Simone appears to have had little regard for his duty to preserve relevant evidence. There are only two reasons why the court is not imposing more severe sanctions: (1) at least some of the documents thought to be destroyed have been recovered, and (2) the prejudice to VSL is not significant.

Because the parties are currently in the midst of briefing their cross-motions for summary judgment (*see* ECF No. 522), the Court will allow VSL until May 18, 2018 to submit a request for costs and fees. VSL's request should be limited to the costs that VSL incurred in investigating De Simone's spoliation (for example, the time it spent interviewing Diane McColl) and in preparing the parts of its Motion and related briefing concerning De Simone's spoliation. VSL should not seek costs associated with the Italian braille document (*see* ECF No. 458-2 at 19-22) or De Simone's general purported failure to produce all responsive documents (*see id.* at 22-24). VSL should consult Appendix B of the Court's Local Rules for guidance on the hourly rates that the Court believes are reasonable for attorneys, paralegals, and law clerks. Any response to VSL's request for reimbursement of costs and fees shall be filed by June 1, 2018. Any reply shall be filed by June 15, 2018.

## II.     Italian Braille Document

On September 1, 2017, the Court entered an Order Regarding Trade Secret Information (ECF No. 417). Among other things, the Order directed De Simone "to produce the documents requested and respond substantively to the interrogatories propounded, allegedly containing trade secret information, within 21 days." (*Id.*) In response to VSL's discovery requests, De Simone produced several documents. One of the documents was written in a shorthand version of Italian braille. (ECF No. 458-2 at 20.) VSL charges that De Simone's production of a document that is so difficult to decipher "violates this Court's order that De Simone substantively respond to the interrogatories propounded by VSL." (*Id.*) VSL requests that De Simone "be required to provide VSL with a full and complete transcription of the braille document and an explanation of his shorthand abbreviations." (*Id.* at 21.) VSL also requests that it be permitted to depose De Simone regarding the document. (*Id.* at 22.)

De Simone argues that his production of the Italian braille document was entirely proper because the document that was produced "is exactly how the trade secret formula has been kept" by De Simone "for the past two decades." (ECF No. 473-1 at 10.) De Simone also notes that he produced a narrative description of the contents of the Italian braille document that was sufficient for VSL to understand its contents. (*Id.* at 11.) De Simone notes that VSL was able to have the document translated. (*Id.*)

On October 23, 2017, after VSL filed its Motion, the Court entered an order allowing VSL to reopen De Simone's deposition for the purpose of "allow[ing] the parties to meaningfully depose De Simone regarding the alleged trade secrets at issue, including those set forth in the document produced in Italian braille, and to depose De Simone regarding the documents Plaintiffs produced on the day of his deposition." (ECF No. 460 at 2.)

I find that sanctions are not warranted for De Simone's production of an Italian braille document containing his alleged trade secrets. Even assuming that De Simone's production of the document was improper and in violation of the spirit of the Court's Order of September 1, 2017, any prejudice that VSL may have sustained has been cured by the reopening of De Simone's deposition. By allowing VSL to reopen De Simone's deposition, the Court granted VSL an opportunity to ask De Simone questions regarding the purported trade secrets contained in the Italian braille document. De Simone's production of the Italian braille document warranted reopening his deposition, but sanctions under Rule 37(b) are not appropriate.

## III. Forensic Examination of Electronic Devices

VSL argues that De Simone did not produce all of the documents it requested in discovery. (ECF No. 458-2 at 22-24.) VSL points to discovery requests that it propounded to De Simone and to Danisco. Danisco included in its response documents reflecting communications with De Simone, but De Simone did not produce documents reflecting the same communications. VSL suggests that De Simone made a selective production of documents rather than producing all documents responsive to VSL's discovery requests.

As a remedy, VSL requests permission to forensically image and examine De Simone's electronic devices. It argues that the discrepancy between De Simone and Danisco's document productions justifies its request. VSL urges the Court to consider the discrepancy in the context of De Simone's spoliation of other evidence, which "incites . . . skepticism as to the completeness of De Simone's production" and "raises serious questions as to his abuse of the judicial process." (*Id.* at 23.)

De Simone gives four explanations for the discrepancy. (ECF No. 473 at 15-18.) First, he states that the discovery request that VSL posed to Danisco sought a broader set of documents than the discovery request propounded on De Simone. (*Id.* at 15.) Because Danisco was asked to

produce a broader set of documents, it is not surprising that some of the documents it produced were not produced by De Simone. Second, De Simone notes that he "is a person with a variety of email addresses, who is not computer savvy, whose lab was buried in an earthquake and who did not possess his own computer for many years." (*Id.* at 16.) Danisco, on the other hand, "is a corporate entity with backup capabilities and long term electronic storage." (*Id.*) Third, De Simone suggests the documents that were produced only by Danisco are not unfavorable to him, which suggests he would have had no reason to hide them. (*Id.*) Fourth, De Simone reviewed the bulk of the documents that Danisco produced before the time of their production. Because De Simone knew what Danisco was going to produce, he would have known that withholding his own copies of those documents to prevent their discovery by VSL would have been futile. (*Id.*) For these reasons, De Simone suggests that there is no basis for the Court to permit VSL to forensically examine his electronic devices and email accounts.

While courts sometimes allow for the forensic examination of an opposing party's electronic devices, *see, e.g.*, *Kilpatrick v. Breg, Inc.*, No. 08-10052, 2009 WL 1764829, at *3 (S.D. Fla. June 22, 2009), courts have been reluctant to allow such examination where the contents of the device sought to be inspected do not go "to the heart of the case." *Hespe v. City of Chicago*, No. 13-7998, 2016 WL 7240754, at *4 (N.D. Ill. Dec. 15, 2016). In cases where the existence of a document on an electronic device would itself be probative of an issue in dispute, courts are more likely to find that the intrusions, costs, and delays attendant to a forensic examination are proportional to the needs of the case.

I find that VSL has not made a showing sufficient to warrant an order allowing for the forensic imaging and examination of De Simone's electronic devices. VSL has taken extensive discovery in this case. Throughout discovery, the Court has ensured that VSL has its opportunity

to obtain all of the information that is relevant to the pending claims and defenses in this case. De Simone has often resisted VSL's discovery efforts, but the Court has just as frequently ordered De Simone to produce additional discovery. In this instance, it is not clear that the forensic examination of De Simone's electronic devices would be proportional to the needs of this case, particularly considering the amount of discovery that has already been produced. Unlike other cases where courts have permitted the forensic examination of electronic devices, *e.g.*, *Ameriwood Indus., Inc. v. Liberman*, No. 06-524-DJS, 2006 WL 3825291, at *4 (E.D. Mo. Dec. 27, 2006), *as amended on clarification,* No. 06-524-DJS, 2007 WL 685623 (E.D. Mo. Feb. 23, 2007), whether De Simone had certain documents on his computer is immaterial to the central issues in dispute.

In cases where defendants are alleged to have improperly secreted confidential information on their computers, the presence of a document containing misappropriated information may itself be probative of a claim. *Id.* ("Plaintiff asserts that defendant former employees forwarded plaintiff's customer information and other trade secrets from plaintiff's computers to defendants' personal email accounts, presumably for the purpose of using other computers to access and store those files."); *See also A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 895, 900 (S.D. Tex. 2015) (collecting cases where courts have permitted forensic imaging of opposing parties' computer equipment).

In this case, the probative value of a document being located on one of De Simone's electronic devices is, by itself, insubstantial. Allowing VSL to examine De Simone's devices might help it to establish that De Simone's discovery production is incomplete. But balancing the privacy, cost, and time concerns associated with forensically imaging and examining De Simone's devices against the importance of the discovery in resolving the issues in dispute, I find

that the forensic imaging and examination of De Simone's devices is not warranted. The contents of De Simone's devices are not intricately related to the claims and defenses in this case and the discovery of those contents will not help resolve critical factual issues. *See Hespe*, 2016 WL 7240754, at * 5; *see also Memry Corp. v. Kentucky Oil Tech., N.V.*, No. 04-03843-RMW-HRL, 2007 WL 832937, at *4 (N.D. Cal. Mar. 19, 2007) ("The current lawsuit is simply not comparable to the cases discussed above where computer content was intricately related to the very basis of the lawsuit.")

For these reasons, the Court will not allow the forensic examination of De Simone's electronic devices.

## IV.    Conclusion

For the reasons set forth above, VSL's Motion for Sanctions (ECF No. 458-1) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is granted to the extent that it seeks a finding that De Simone committed spoliation by destroying some of the documents that he obtained from Hyman Phelps. It is also granted to the extent that it seeks an award of reasonable costs and attorney's fees associated with De Simone's spoliation. The Motion is denied in all other respects.

An accompanying Order follows.


<u>March 16, 2018</u>                    _____/s/_____
Date                                    Timothy J. Sullivan
                                        United States Magistrate Judge