IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CLAUDIO DE SIMONE, *et al.*,              *

    Plaintiffs/Counterclaim Defendants,   *

v.                                         *    Civil No. TDC-15-1356

VSL PHARMACEUTICALS, INC., *et al.*,       *

    Defendants/Counterclaim Plaintiffs.   *

                       *    *    *    *    *    *

**MEMORANDUM OPINION**

Previously, the Court entered a Memorandum Opinion and Order ("sanctions order") granting in part and denying in part the Motion for Sanctions (ECF No. 458-1) filed by Defendant VSL Pharmaceuticals, Inc. ("VSL"). (ECF Nos. 556 & 557.) In sum, I found that Plaintiff Claudio De Simone ("De Simone") committed spoliation and that VSL was entitled to an award of its reasonable costs and attorney's fees associated with the spoliation.[1] Now pending before the Court is VSL's "Motion and Application for Attorneys' Fees" (ECF Nos. 600 & 601.) Having considered the submissions of the parties (ECF Nos. 600, 601, 629 & 631), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, VSL's request for attorney's fees will be granted in part and denied in part. The Court awards VSL reasonable attorney's fees and costs in the amount of $39,028.15.

**I.    Introduction**

As explained in the sanctions order (ECF No. 556), in the fall of 2014, when De Simone was still the Chief Executive Officer of VSL, he retrieved documents from the law firm that

---

[1] VSL filed objections (ECF No. 565) to the sanctions order, but the objections were overruled and the sanctions order was affirmed. (ECF No. 785.)

1

represented VSL. The documents contained sensitive information about the VSL#3 product formulation. De Simone initially stated that he destroyed all the documents, but he was later able to locate copies of most of them. Because De Simone located copies of most of the documents that were thought to have been destroyed, I concluded that De Simone engaged in spoliation, but that VSL was not significantly prejudiced. Nonetheless, because of De Simone's disregard for his duty to preserve relevant evidence at a time when litigation was foreseeable, I concluded that sanctions were appropriate. Specifically, I found that "the imposition of reasonable costs and fees is an appropriate sanction for De Simone's spoliation." (ECF No. 556 at 16.) I reached this conclusion for two reasons. First, De Simone's spoliation caused VSL to incur significant costs and attorney's fees. It would not have incurred these fees had De Simone kept the documents he obtained from the law firm in the first instance. Second, De Simone and similarly situated litigants must be deterred in the future from destroying documents that may be relevant in future litigation. (*Id.*) I directed that any award to VSL would

> be limited to the costs that VSL incurred in investigating De Simone's spoliation (for example, the time it spent interviewing Diane McColl) and in preparing the parts of its Motion and related briefing concerning De Simone's spoliation.

(*Id.*)

## II. VSL's Application

VSL requests that the Court award it a sum of $69,177.90 for the attorney's fees it incurred in connection with De Simone's spoliation. (ECF No. 600.) In support of its request, VSL has submitted time sheets for billing related to the spoliation issue. (ECF No. 601-1.) The time sheets identify the date work was performed, the attorney who performed the work, the amount of time expended, the amount billed, and a description of the work. (*Id.*) In addition, VSL has provided a

summary of the litigation experience of the attorneys who worked on the spoliation issue and their hourly rates. (ECF No. 601 at 6.) A copy of VSL's chart is reproduced below.

| Name/Title/Experience | Standard Rate | Reduced Rate | Time Spent | Total Fees |
|---|---|---|---|---|
| Turner A. Broughton<br>Chair, Litigation<br>20 years' experience | $485 | $480 | 22.3 | $8,774.40 |
| Lauren W. Waller<br>Partner, E-Discovery<br>11 years' experience | $405 | $385 | 43.00 | $14,716.80 |
| Andrew O. Mathews<br>Partner, Litigation<br>10 years' experience | $405 | $385 | 39.3 | $12,851.60 |
| Erica B. Zhang<br>Associate, Litigation<br>3 years' experience | $305 | $280 | 140.90 | $32,835.10 |

De Simone objects to VSL's request for fees. (ECF No. 629.) He characterizes VSL's request as an "absurd overreach," and argues that its time sheets are "full of falsities, errors, inappropriate billing, and bad math." (*Id.* at 1.) De Simone posits that VSL's "astronomical" $69,177.90 request is too high for four reasons: "(1) VSL inappropriately attributing time to the spoliation issue; (2) duplicative, unnecessary staffing by VSL; (3) overbilling; and (4) charging inappropriately high rates." (*Id.* at 3.)

## III. Analysis

In calculating an award of attorney's fees, the Court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008); *see also Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) (noting that the lodestar figure is "the guiding light of our fee-shifting jurisprudence"); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."); *Garcia v. Montgomery Cty., Maryland*, No.

TDC-12-3592, 2018 WL 1441189, at *5 (D. Md. Mar. 22, 2018). In determining whether hours were "reasonably expended," courts consider whether a case was overstaffed, and the degree to which the skill and experience of counsel may have effected the time spent on a task. *Id.* at 434. Counsel for a party seeking attorney's fees must engage in "billing judgment," which means that they must "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.*

Regarding the determination of a reasonable hourly rate, the Court's Local Rules provide some guidance. Appendix B to the Local Rules ("Rules and Guidelines for Determining Attorneys' Fees in Certain Cases") provides that lawyers admitted to the bar for twenty years or more may reasonably bill $300-475 per hour; that lawyers admitted the bar for nine to fourteen years may reasonably bill $225-350 per hour; and that lawyers admitted to the bar for less than five years may reasonably bill $150-225. These rates serve as guidelines in determining the reasonableness of hourly rates.

To ascertain what is reasonable in terms of hours expended and the rate charged, the Fourth Circuit has stated that the Court's

> discretion should be guided by the following twelve factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009); *but see Perdue*, 559 U.S. at 551 (cautioning that these factors give "very little actual guidance to district courts").

4

Once the Court determines a lodestar figure, it must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013), as amended (Jan. 23, 2014). The Court then awards "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

"Reasonableness is the touchstone of any award of attorneys' fees," regardless of whether the award is made because of a fee-shifting statute or as a sanction. *SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, 933 F. Supp. 2d 762, 769 (E.D. Va. 2013). In considering the reasonableness of attorney's fees sought as a sanction for spoliation, courts consider "the nature of the sanctionable conduct, the nature and extent of the inquiry necessary to ascertain and resolve issues respecting the sanctionable conduct, and the nature of the sanction obtained." *SunTrust*, 933 F. Supp. 2d at 774. Courts will reduce fee awards where a party employs "too many professionals and too many hours devoted to the sanctions-related issues," or neglects to exercise adequate billing judgment. *Id.* at 775. Similarly, if "much of the work was unnecessary. . . . considering what was at stake and what was achieved," reasonableness will require lowering the fee award. *Id.* In addition, "[p]roper documentation is the key to ascertaining the number of hours reasonably spent on legal tasks." *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006). Inadequate documentation is a basis for a finding that a party has not met its burden to prove the reasonableness of its requested fee. *Id.* ("Lumping and other types of inadequate documentation are thus a proper basis for reducing a fee award because they prevent an accurate determination of the reasonableness of the time expended in a case.")

The party seeking attorney's fees bears the burden to prove that the requested fee is reasonable. *Hensley*, 461 U.S. at 433. In exercising its broad discretion to determine a reasonable fee award, a district court must provide a "concise but clear explanation of its reasons." *Id.* at 437.

### A. Lodestar Amount

VSL seeks an award of fees for the 245.5 hours of time that it spent working on issues related to De Simone's spoliation. De Simone argues that "numerous entries" on VSL's time sheets "clearly fall outside of the scope" of the sanctions order, and that a total of $9,390.10 should be subtracted from VSL's request for work on matters not related to spoliation. (ECF No. 629 at 3.) On this point, De Simone has interpreted the Court's sanctions order too narrowly. The Court's intention in limiting VSL to the attorney's fees and costs it incurred in "investigating De Simone's spoliation . . . and in preparing the parts of its Motion and related briefing concerning De Simone's spoliation" was to clarify that VSL would not be compensated for any costs incurred in connection with the other issues raised in its sanctions motion. Except as discussed below, the time submitted on VSL's time sheets is within the scope of the Court's sanctions order.

De Simone also objects to VSL's request because VSL's time sheets commingle time spent on the spoliation issue with time spent on other issues. He posits that the hours expended by VSL's counsel on the spoliation issue can be separated into two categories: "Entirely Spoliation" and "Partially Spoliation." (ECF No. 629 at 10.) De Simone suggests that the Court must "separate out the Partially Spoliation entries and determine an appropriate 'spoliation percentage' to apply to those entries." (*Id.* at 11.) In its request, VSL applied a 30% reduction to any time entry related to its Motion for Sanctions generally.[2] VSL applied this reduction because the Motion for Sanctions addressed issues besides De Simone's spoliation, for which VSL does not seek compensation. De Simone is not satisfied with VSL's limited 30% reduction. (*Id.* at 11-12.) He suggests that a 66% reduction should apply to the time VSL spent on its Motion for Sanctions because spoliation was only one of three issues addressed in that motion. (*Id.* at 12.) Alternatively, De Simone suggests

---

[2] VSL actually reduced the billed amount, not the time spent on a given task, by 30%.

that a 49% reduction might apply because only 51% of the pages in VSL's briefing related to the Motion for Sanctions concerned spoliation.[3] (*Id.* at 13.) De Simone's argument that a 30% reduction of VSL's "Partially Spoliation" time may not be sufficient is persuasive. Indeed, other courts have greatly reduced requests for attorney's fees where vague time sheet entries do not explicitly identify the actual time spent on a given issue. *See Integrated Direct Marketing, LLC v. May*, No. LMB-14-1183, 2016 WL 3582065, at *6 (E.D. Va. June 28, 2016). Nonetheless, because the Court will significantly reduce VSL's requested fees for other reasons, it is unnecessary to apply a separate reduction to VSL's "Partially Spoliation" time. The Court's reductions to VSL's hours will account for the time that VSL spent on matters unrelated to the spoliation issue.

The Court now considers the reasonableness of the hours that VSL's counsel expended and the fee charged for the work.

### 1. Reasonable Hourly Rate

De Simone argues that VSL's attorneys' hourly rates are not reasonable. (ECF No. 629 at 16.) He notes that the rates are higher than the rates listed in Appendix B to the Court's Local Rules, and that VSL has not submitted any evidence or justification to "provide support for the deviation from Appendix B for each of its attorneys." (*Id.* at 17.) VSL correctly notes, however, that although the Appendix B rates are presumptively reasonable, they do not impose a cap on the hourly rates that may be awarded. (ECF No. 631 at 5.) VSL cites other cases in which this Court has awarded fees based on hourly rates higher than the Appendix B guidelines. It also points out the acknowledgement in the Local Rules that it may be necessary for the Court to vary from the

---

[3] VSL disagrees with De Simone's calculations. (ECF No. 631 at 4-5.)

Appendix B rates, including in instances where "the market rate differs from the[] guideline rates," as well as "an increase in the cost of legal services" since the adoption of the guidelines.[4]

Considering the arguments of the parties, and in the context of having presided over numerous discovery disputes in this case, the Court finds as follows. A reduction of VSL's hourly rates is warranted. Erica Zhang has three years of litigation experience, but her hourly rate ($280) exceeds even the top of the Appendix B guideline for lawyers admitted to the bar for up to five years ($225). Ms. Zhang's hourly rate will be reduced to $225 to account for her more recent admission to the bar. Andrew Mathews has 10 years of litigation experience and Lauren Waller has 11 years of experience, but their hourly rate ($385) also exceeds the top of the Appendix B guideline for lawyers admitted to the bar for between nine and fourteen years ($350). The hourly rate for Mr. Mathews and Ms. Waller will be reduced to $350. The Court declines to reduce the hourly rate for Turner Broughton, who has 20 years of litigation experience. His rate ($480) is only slightly higher than the top of the guideline for lawyers with twenty years of experience ($475). These reductions to VSL's hourly rates are necessary because VSL has not submitted any justification for why hourly rates higher than the presumptively reasonable Appendix B rates are warranted.[5]

### 2. Hours Reasonably Expended

De Simone argues that VSL's hours are "not only unreasonable, but completely ridiculous." (ECF No. 629 at 14.) He argues that the amount of time that VSL devoted to certain tasks was excessive. For instance, VSL's response to De Simone's surreply (ECF No. 508)

---

[4] The Court's Local Rules were last updated on December 1, 2018, but the Appendix B rates were not changed from the previous version of the rules.

[5] During discovery, the Court found each of VSL's attorneys to be talented and effective advocates. In other cases, it may be reasonable for VSL to charge higher hourly rates. But the Court lacks sufficient evidence to find that the rates requested by VSL are reasonable in this case.

contains nine pages of substantive content. But VSL spent 20 hours drafting the response and 13.1 hours on the review of the draft response. (*See* ECF No. 629 at 14.) Some of the review was performed by multiple partners. De Simone argues that the time spent by VSL on its response to the surreply should be greatly reduced. He makes the same argument regarding VSL's initial Motion for Sanctions (ECF No. 458) and its reply brief (ECF No. 478). He also argues that some of the work performed by VSL's attorneys could have been performed at a lower hourly rate by a paralegal or law clerk, and that De Simone should not be penalized for VSL's decision not to delegate this work. (ECF No. 629 at 15.) VSL does not directly address De Simone's argument that it expended an unreasonable amount of time working on spoliation-related matters.

Regarding the hours expended, the Court finds that VSL spent more time than was reasonable on issues related to De Simone's spoliation. As De Simone rightly points out, VSL's attorneys frequently duplicated work by having multiple partners review a document. In other instances, VSL's attorneys performed work that could have been performed at a lower hourly rate by a paralegal or law clerk. But fundamentally, VSL spent more time on this issue than was warranted. The facts underlying De Simone's spoliation were not complex. Simply put, at a time when De Simone had a duty to preserve potentially relevant information, he retrieved documents from VSL's former law firm and destroyed them. This is a classic case of spoliation. Likewise, the case law that VSL relied on was not groundbreaking or novel and should not have required an extensive degree of legal research. In fact, VSL cited to several cases from within this district that analyzed spoliation issues in detail. VSL's arguments regarding De Simone's spoliation were straight-forward and need not have taken so much time to develop.

Of course, at the time that it filed its Motion for Sanctions, VSL had no way of knowing that De Simone would ultimately locate copies of the documents that he destroyed (or at least most

of them). But even after such evidence came to light, VSL continued to spend an unreasonable amount of time on the spoliation issue. As De Simone points out (ECF No. 629 at 14), VSL devoted more than 60 hours to its response to De Simone's surreply (ECF No. 508). There is little new information in VSL's surreply response, and only three case citations. At the time that VSL filed its surreply response, it was unreasonable for it to have spent so much time on the matter. By that time, De Simone had credibly asserted that he found copies of the documents believed to have been destroyed. While VSL had every right to persist in its request for spoliation sanctions, the hours that it expended were not reasonable. *Underdog Trucking, LLC v. Verizon Services Corp.*, 276 F.R.D. 105, (S.D.N.Y. 2011) ("The Court recognizes that the reasonableness of the Defendants' hours should depend not on hindsight, but on whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.").

For these reasons, the Court finds that a reduction of VSL's hours is necessary. For Lauren Waller, Andrew Mathews, and Erica Zhang, a 50% reduction in the hours expended is warranted. This reduction accounts for the excessive time that VSL spent on the spoliation issue, including the duplication of work by VSL's attorneys, and for VSL's vague billing entries that do not specify the time devoted specifically to the spoliation issue. No reduction to the hours expended by Turner Broughton is necessary. Accordingly, the Court finds that the following lodestar amount represents the number of hours reasonably expended by VSL on the spoliation issue, multiplied by reasonable hourly rates.

| Name | Lodestar Rate | Lodestar Time | Lodestar Amount |
|---|---|---|---|
| Turner A. Broughton | $480 | 22.3 hours | $8,774.40[6] |
| Lauren W. Waller | $350 | 21.5 hours | $7,525.00 |
| Andrew O. Mathews | $350 | 19.65 hours | $6,877.50 |
| Erica B. Zhang | $225 | 70.45 hours | $15,851.25 |
| | | | **$39,028.15** |

### B. Adjustment of Lodestar Amount

The Court must also consider whether any factors warrant an adjustment of the presumptively reasonable lodestar amount.[7] One such factor is the severity of De Simone's misconduct. De Simone destroyed the documents he retrieved from VSL's law firm while at the same time keeping copies of most, if not all, of them. Of course, De Simone should not have destroyed the documents in the first place. He should have known, and perhaps did know, that litigation in which the documents might be relevant was likely to occur. Certainly, had he consulted with counsel he would have been instructed not to destroy the documents. But a person who destroys documents while also maintaining a copy (although for a time forgetting that he did, in fact, keep a copy) has less need to be punished or deterred than a person who destroys documents that, once destroyed, are lost forever. Part of the Court's calculus in awarding attorney's fees for De Simone's spoliation was to punish De Simone and deter other litigants from engaging in similar

---

[6] VSL reduced Mr. Broughton's fees by 30% for certain matters that were not entirely related to the spoliation issue. The Court accepts this reduction as reasonable for Mr. Broughton's time. Rather than apply a 30% reduction to the time of Ms. Waller, Mr. Mathews, and Ms. Zhang for some matters and a 50% reduction for other matters, the Court applies a 50% across-the-board reduction.

[7] In fee-shifting cases, courts subtract from the lodestar figure fees for time spent on unrelated, unsuccessful claims, and then award a percentage of the remaining amount, depending on the degree of the prevailing party's success. *McAfee*, 738 F.3d at 88. Here, because of the nature of the sanctions imposed, the Court's analysis is somewhat different. The Court has accounted for the time that VSL spent on non-spoliation matters by applying a 50% reduction to the time of three of VSL's attorneys. As discussed in this opinion, this reduction also accounts for VSL's overbilling. The degree of VSL's success is not a significant factor in the Court's decision.

conduct. Here, an award of $39,028.15 is a sufficient amount to punish De Simone for his misconduct.

In a letter dated December 14, 2018, De Simone makes several arguments as to why VSL's request for fees should be denied outright. The Court is persuaded by two of those arguments (that VSL spent too much time working on the spoliation issue, and that VSL was not prejudiced by the spoliation), and those arguments have informed the Court's calculation of the lodestar amount. But a further reduction is not warranted. While VSL spent too much time on the spoliation issue, the only reason that it spent *any* time on the issue was that De Simone destroyed relevant documents before this litigation began. Had De Simone not engaged in spoliation, VSL would have had no reason to seek spoliation sanctions. Had De Simone remembered earlier that he kept copies of the documents at issue, VSL likely would have spent even less time on the matter. I completely reject De Simone's first argument regarding the judgment in this case. The Court previously determined that VSL was entitled to attorney's fees for De Simone's spoliation, and VSL was under no obligation to "move to keep open the issue of the Fees Motion" (ECF No. 855 at 1).

## IV. Conclusion

For the reasons set forth above, the Court approves an attorney's fee award of $39,028.15 in favor of VSL.[8] VSL's "Motion and Application for Attorneys' Fees" (ECF No. 600) is **GRANTED IN PART** and **DENIED IN PART.**

---

[8] "A request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437. That principle is especially clear in this case. De Simone prevailed at trial and has been awarded significant damages. If the parties believe that this ruling on VSL's attorney's fees is unfair, they are encouraged to attempt to settle their disagreement without resorting to additional litigation. By the Court's calculation, the attorney's fee award is less than 0.25% of the judgment against VSL. The Court declines to impose any time limit by which De Simone must pay the attorney's fee award to VSL.

12

An accompanying Order follows.

December 19, 2018
Date

/s/
Timothy J. Sullivan
United States Magistrate Judge