**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

|  |  |  |
|---|---|---|
| | * | |
| CLAUDIO DE SIMONE, *et al.*, | | |
| | * | |
| Plaintiffs/Counterclai m Defendants, | | |
| | * | |
| v. | | Case No. 8:15-cv-01356-TDC |
| | * | |
| VSL PHARMACEUTICALS, INC., *et al.*, | | |
| | * | |
| Defendants/Counterclaim Plaintiffs. | | |
| | * | |

---

**CLAUDIO DE SIMONE AND EXEGI PHARMA, LLC'S REPLY**
**IN SUPPORT OF PLAINTIFFS' POST-TRIAL MOTION FOR A**
**PERMANENT INJUNCTION AND ENHANCEMENT OF DAMAGES AWARD**

Jeremy W. Schulman (Fed. Bar No. 16787)
Jeffrey S. Gavenman (Fed. Bar No. 19946)
Schulman Bhattacharya, LLC
7500 Old Georgetown Road, Suite 901
Bethesda, Maryland 20814
Telephone: (240) 356-8550
Email: jschulman@schulmanbh.com; jgavenman@schulmanbh.com

*Counsel for Plaintiffs/Counterclaim Defendants Claudio De Simone and ExeGi Pharma, LLC*

January 31, 2019

Plaintiffs/Counterclaim Defendants Professor Claudio De Simone ("Prof. De Simone") and ExeGi Pharma, LLC ("ExeGi") (collectively "Plaintiffs"), by and through counsel, respectfully submit this reply in support of Plaintiffs' post-trial motion and in response to the opposition submitted by Defendant Alfasigma USA, Inc. ("Alfasigma") ("Opp."). Plaintiffs incorporate their post-trial motion and opposition to Alfasigma's motion under Rules 50 and 59 (ECF No. 905).

## PRELIMINARY STATEMENT

A typical false advertising defendant, after a resounding defeat at trial, might at least feign contrition and temporarily cease its misconduct in hopes of escaping an injunction. Not Alfasigma. Its false advertising remains entirely (and unapologetically) unchanged. Alfasigma's continued conduct confirms the necessity of an injunction. Without one, the jury's verdict of false advertising—and the three-week trial prompting it—would be rendered ineffective.

Unable to dispute Plaintiffs' entitlement to injunctive relief under the relevant standard, Alfasigma largely avoids it, opting instead to spin a story about the supposed sinister motivations of Prof. De Simone "and his cohorts," whom Alfasigma accuses of scheming to "remove all of ExeGi's competition" to obtain "a massive, undeserved windfall" and "extinguish scientific discussion." As support for its assertions, Alfasigma offers only a single sentence, selectively plucked from this Court's Order temporarily enjoining Plaintiffs from conduct that formed the basis for Defendants' abortive false advertising claim—two years before Defendants were forced to dismiss it with prejudice. The Court's non-binding observation, made in the context of that failed claim, has no bearing on the propriety of injunctive relief for Plaintiffs' successful one.

Along with being unsupported, Alfasigma's accusations are indefensible. It is Alfasigma who seeks an undeserved windfall by making tens of millions from misleading consumers on issues concerning their own health: a point Alfasigma concedes when it admits that enjoining its

1

false advertising would destroy its business entirely. Plaintiffs ask only that Alfasigma be required to tell consumers the truth. Contrary to Alfasigma's contention, that would facilitate scientific discussion by forcing Alfasigma to accurately inform consumers about the science, its product, and this litigation. If advertising VSL#3 with such accuracy would harm Alfasigma's business, the law provides no respite. Alfasigma elected to build its business on false advertising. Neither the Lanham Act nor the equities empathize. Plaintiffs remain entitled to the relief they request.

Rather than arguing against it, Alfasigma offers the flimsy assertion that Plaintiffs never really proved their claim. The jury's verdict says otherwise; that verdict should be implemented. When Alfasigma points out that it is impossible to know precisely which of its misstatements the jury found to be false, Alfasigma only admits that it could be all of them, which hardly permits its false advertising to continue unabated. Alfasigma insists: Plaintiffs "exploited the general verdict form." But the verdict form was within the Court's discretion, and Alfasigma agreed to it. Alfasigma cannot attribute its dissatisfaction with the result it requested to judicial impropriety.

Nor can Alfasigma viably argue that an injunction would be contrary to the public interest, when preventing false advertising serves that interest, particularly when it involves public health. The Lanham Act was designed to promote fair competition and protect consumers, not to reward pharmaceutical giants for lying to them. As the relief Plaintiffs seek is supported decisively by the verdict, the law, and the evidence, Plaintiffs' post-trial motion should be granted in its entirety.

## ARGUMENT

### I.      Plaintiffs are Entitled to a Permanent Injunction.

#### A.  Applicable Legal Standard.

As Alfasigma observes, where, as here, "a violation has been established, the Lanham Act vests district courts with the 'power to grant injunctions, according to the principles of equity and

upon such terms as the court may deem reasonable, to ... prevent a violation' under § 1125(a)."
*PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126 (4th Cir. 2011) (quoting 15 U.S.C. §
1116(a)). Alfasigma also aptly notes that, to obtain an injunction, Plaintiffs must show only that:
(1) ExeGi has suffered an irreparable injury; (2) remedies available at law are inadequate; (3) the
balance of the hardships favors ExeGi; and (4) the public interest would not be disserved by the
injunction. *See id.* (citing *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391 (2006)). But after
accurately reciting these elements, Alfasigma runs away from them, dedicating the majority of its
brief to accusing Plaintiffs of harboring improper motives and attempting to re-litigate the merits
of Plaintiffs' false advertising claim.[1] Alfasigma's efforts are as improper as they are unsuccessful.
Under the relevant standard, Plaintiffs are entitled to injunctive relief. *See PBM*, 639 F.3d at 126.

### B.  Plaintiffs' Requested Relief is Supported by the Evidence and the Equities.

#### 1.  The Jury's Verdict Supports Plaintiffs' Requested Injunction.

Alfasigma insists: "In crafting any injunction, this Court is not bound by the jury verdict."
Opp. at 6. Alfasigma is wrong. Not only do "settled principles of collateral estoppel" foreclose
courts from reconsidering the jury's findings, but where, as here, a jury issues a general verdict,
the court cannot make factual findings when fashioning an injunction that are "contrary to or
inconsistent with the jury's resolution." *Ohio–Sealy Mattress Mfg. v. Sealy*, 585 F.2d 821, 844 (7th
Cir. 1978); *Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 131 (3d
Cir. 2004) (reversing denial of permanent injunction as contrary to verdict); *Panda Herbal Int'l,
Inc. v. Luby*, 2007 WL 44023, at *1 (E.D. Pa. Jan. 9, 2007) (considering "the facts of the case and
the jury's verdict" to permanently enjoin defendant's trademark use when any other result "would

---

[1] Notably, Alfasigma previously argued that Plaintiffs failed to show materiality, causation, and
damages, a position Alfasigma now eviscerates by admitting that enjoining its false advertising
would entirely destroy its business and result in a competitive windfall to Plaintiffs.

essentially eviscerate the jury's conclusion"); *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. DE C.V.*, 369 F. Supp. 2d 1075, 1084 (S.D. Iowa 2005), *aff'd*, 464 F.3d 1339 (Fed. Cir. 2006) (noting that "the jury's verdict" supported enjoining infringement and characterizing "arguments that the general verdict received prohibits injunctive relief" as "not persuasive").

The Fourth Circuit recently reaffirmed this rule in *PBM Products*, when the Court considered a false advertising defendant's contention "that because the general jury verdict did not specify which of the four statements" in a piece of false advertising that "the jury found to be false and/or misleading, the injunction must be limited only to" that advertisement or others "not colorably different." 639 F.3d at 128. The Court was clear: "We disagree." *Id*. The Court's reasoning was equally clear: the district court had properly "concluded that the record supported an injunction … because such an injunction would not be inconsistent with the jury's verdict." *Id*. Without an injunction, the false advertising defendant "would be free to use false statements in future advertisements," contrary to both the verdict and "the very purpose of injunctive relief." *Id*.

Although Alfasigma characterizes this line of cases as "distinguishable," because this jury supposedly "served in a purely advisory capacity," Opp. at p. 7, the jury plainly did not serve in an advisory capacity.  As Defendants' counsel conceded, Plaintiffs' false advertising claim would "obviously" be "before the jury." 11/13 Tr.2 148:25-149:2. Defendants contested only the jury's determination of profits, an argument this Court rejected, making clear that the jury was not serving in an advisory capacity on this claim. 11/15 Tr. 17:6-22. Moreover, Plaintiffs consistently reiterated their right to a jury trial, a result for which Alfasigma also advocated.[2] Where, as here,

---

[2] Alfasigma insisted that the jury should find all facts in this case, as the issues were "intimately intertwined," and a separate trial for legal and equitable issues would be a "waste of judicial and party resources." ECF No. 786 at p. 7. Under its own offered precedent, Alfasigma's effort to characterize Plaintiffs' damages as "equitable" fails: the jury's factual findings would be adopted regardless. *Id*. (citing *Five Platters, Inc. v. Purdie*, 419 F. Supp. 372, 376 (D. Md. 1976)).

a jury is requested, the trial "shall so proceed unless the parties or their attorneys of record, by stipulations written or oral entered in the record, consent to trial by the court." *Taylor v. Gulf States Utilities Co.*, 375 F.2d 949, 950 (5th Cir. 1967). "This requires the concurrence by oral stipulation in court of all counsel. This, of course, was not done." *Id.* (rejecting argument that verdict was "merely advisory" when both parties requested a jury trial, and although one party subsequently sought a bench trial, the other did not consent, so "the cause proceeded to trial and a jury verdict").

Setting aside the fact that any concurrence to a bench trial "was not done," equally notable is what *was* done: Alfasigma consented to the verdict form, which included Plaintiffs' (unadvisory) false advertising claim. ECF No. 906, Ex. 1; 11/15 Tr.2 24:6-13. Having failed to object to it then, Alfasigma cannot contest the verdict form now. *See* Fed. R. Civ. P. 49(b) (party must object to verdict form before jury's discharge); *see also White v. Celotex*, 878 F.2d 144, 146 (4th Cir. 1989) (same). When Alfasigma implies it is up in the air "if the Court" will "adopt the general verdict," Alfasigma ignores the reality that the Court already did, at Alfasigma's insistence. ECF No. 826.

Unable to transform this verdict into the advisory verdict it is not, Alfasigma tries for the next best thing: convincing the Court to ignore the verdict. The law does not countenance such a result. *See Sealy*, 585 F.2d at 844. Although Alfasigma accuses Plaintiffs of asking the Court to "infer merely from the general verdict that every challenged statement was false," Opp. at p. 8, Alfasigma asks the Court to infer that the verdict meant nothing. Plaintiffs ask the Court only to fashion an injunction consistent with the jury's resolution, which must preclude Alfasigma from making statements the jury already necessarily found to be false. *See PBM*, 639 F.3d at 128.

The jury examined Leadiant's advertisement stating that VSL#3 was "the same quality product containing the same genus and species of bacteria in the same proportions that you have come to expect" and asserting: "How will this impact you and your patients?  It won't." Trial Ex.

297. Leadiant's other piece of false advertising, Trial Ex. 1203, parroted those statements. Based upon these statements, the jury properly found Leadiant liable for false advertising, and as Alfasigma concedes: the "Leadiant documents contained statements by Leadiant similar to those" by Alfasigma. ECF No. 859-1 at p. 14.[3] The jury reasonably found Alfasigma's indistinguishable statements equally false.[4] Although Alfasigma endeavors to distinguish Leadiant for claiming the "same proportions," which Alfasigma insists it never did, Opp. at p. 10, even accepting its pained efforts to parse the verdict offers Alfasigma no assistance. Alfasigma similarly falsely advertised its product as "maintaining the original proprietary mix." Trial Ex. 412; ECF No. 677.

Alfasigma's suggestion that this Court hold Leadiant liable only for its "same proportions" statement and preclude Alfasigma from advertising only that "VSL#3 was produced in Italy through 2005/2006" is additionally unsupportable. The jury clearly did not find Alfasigma liable to the tune of $15,000,000 solely for its misstatement that "VSL#3 was produced in Italy through 2005/2006." Moreover, "once a violation is established, as at least one is here, the court may properly enjoin the defendant from other related unlawful acts." *Sealy*, 585 F.2d at 845; *see also United States v. Ward Baking Co.*, 376 U.S. 327, 332 (1964) (noting the "salutary principle that when one has been found to have committed acts in violation of a law he may be restrained from committing other related unlawful acts"); *PBM*, 639 F.3d at 127 (affirming injunction precluding false advertising defendant from "infecting the marketplace with *the same or similar claims* in

---

[3] Although Alfasigma argues (again) that Plaintiffs' counsel "muddied the issue" by "asking the jury to hold Alfasigma responsible for everything," Opp. at p. 8, Plaintiffs and Alfasigma clearly explained that Leadiant was responsible only for advertising issued prior to June 30, 2016 (10/30 Tr.2 116:21-117:1; 119:3-5; 11/16 Tr. 156:9-12), and the jury was instructed accordingly. ECF No. 810 at p. 18. Even if the precise line of liability was "muddied" (and it was not), Alfasigma fails to explain how that could possibly render its false advertising accurate.

[4] As Alfasigma admits, the jury also reasonably found its other advertising false. Opp. at p. 28.

different advertisements") (emphasis added); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, No. CIV.A. MJG-06-2662, 2011 WL 4596043, at \*18 (D. Md. Sept. 30, 2011), *aff'd*, 499 F. App'x 971 (Fed. Cir. 2013) (issuing permanent injunction "so as to prevent further false advertising by Defendants *of the type proven* in the instant case") (emphasis added). Even under Alfasigma's suggested strained interpretation of the verdict, the jury necessarily found that Defendants' product was not the "same" as Danisco VSL#3, which entitles Plaintiffs to the injunctive relief they seek. *See id.*; *see also* ECF No. 879, App'x A. For example, Alfasigma should be enjoined from touting its product's alleged 15-year clinical history, as such statements could only be true if Italian VSL#3 was the same as the De Simone Formulation (the real product with the long clinical history).

## 2.   Requiring Alfasigma to Truthfully Advertise its Product is Equitable.

Rather than contesting the propriety of this relief, Alfasigma reverts to accusing Plaintiffs of a "position" that "no one other than De Simone and his licensee can manufacture a product that competes." Opp. at 10.[5] Alfasigma's protestation would make sense,[6] if that were Plaintiffs' position. But it is not. Plaintiffs simply want Alfasigma to stop spreading lies, which "merely enjoins" what Alfasigma is "already prevented from doing." *Victor Stanley*, 2011 WL 4596043, at \*21. Given "the Lanham Act's purpose of protecting…against unfair competition," *POM*

---

[5] To the extent that Alfasigma is still relying upon this Court's observation offered two years ago to suggest otherwise, Alfasigma apparently forgets that "a preliminary injunction decision is just that: preliminary." *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F. Supp. 2d 538, 551 (D. Md. 2013). The Court's finding had no bearing on the jury's resolution of even the claims before it. *See id.* It certainly has no bearing on the propriety of an injunction now.

[6] Alfasigma's accusations remain legally irrelevant. If Plaintiffs were "using the Lanham Act to gain an unfair competitive advantage" (and they are not), the Lanham Act does not require a successful false advertising plaintiff to prove the purity of its motives as a prerequisite to injunctive relief. Either way, the evidence showed that Prof. De Simone was concerned with the threat posed by "selling a different formulation as VSL#3," as it presents "a very serious and unacceptable safety risk for populations using product for their serious medical conditions." Trial Ex. 258. As he testified: "My concern was the patient." 10/31 Tr.2 54:10-11. The same holds true today.

*Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 108 (2014), Plaintiffs welcome any fair competition that might result from such accurate advertising. Plaintiffs just have yet to see it.

Alfasigma characterizes Plaintiffs' request as "untethered" from the evidence because it never made any statements about the "know how, let alone any false statements … in its advertising." Opp. at pp. 10-11. That assertion is itself false: Alfasigma advertised its product as "maintaining the original proprietary mix," Trial Ex. 412, and exhaustively promotes its product by appropriating the history of the De Simone Formulation. Informing the public that De Simone owns the Know-How (to Alfasigma's exclusion) and incorporates his Know-How (in the only product with deep clinical and scientific support) will help correct Alfasigma's misstatements.

Alfasigma resorts to complaining that Plaintiffs' requested injunction "would render it virtually impossible for Alfasigma to sell VSL#3." Opp. at p. 10. In its apparent effort to argue the equities, Alfasigma utterly ignores the law, which makes clear that Alfasigma "simply has no equitable interest in perpetuating the false and misleading claims in [its] advertisements," *PBM*, 639 F.3d at 127, and that anyone, including Alfasigma, "who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Exclaim Mktg., LLC v. DirecTV, LLC*, 2015 WL 5725703, at *4 (E.D.N.C. Sept. 30, 2015), *aff'd* in part, 674 F. App'x 250 (4th Cir. 2016) (characterizing complaints as "of little concern"). Any other rule would "allow a knowing infringer that constructs its business around its infringement" to avoid an injunction by claiming it would have a "devastating effect" on that business, a result courts "cannot condone." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 728-29 (3d Cir. 2004). If accurately informing the public about its product might harm Alfasigma, it "brought any and all difficulties occasioned by the issuance of an

injunction upon itself." *Victor Stanley*, 2011 WL 4596043, at \*21; *Novartis Consumer Health, Inc.*

*v. Johnson & Johnson–Merck Consumer Pharm. Co*., 290 F.3d 578, 596 (3d Cir. 2002) (same).

### 3.  **Alfasigma Cannot Insulate its Misstatements as "Scientific."**

In its final effort to escape an injunction, Alfasigma manufactures a scientific debate where

none exists for the impermissible end of re-litigating issues the jury conclusively resolved.

Alfasigma insists that "Plaintiff did not prove all elements of a false Advertising claim," Opp. at

p. 14, and that Mr. Barrangou established that all of the statements in its advertising "were true."

*Id*. at p. 11. The verdict says otherwise. ECF No. 824. No matter how many times Alfasigma voices

its dissatisfaction with it, ignores it, or tries to transform it into something it is not, the verdict

conclusively established Alfasigma's violations of the Lanham Act. ECF No. 826. Where, as here,

"a violation has been established, the Lanham Act vests district courts with the 'power to grant

injunctions,'" *PBM*, 639 F.3d at 126, not the authority to offer disgruntled defendants a do-over.

Alfasigma's effort to re-advance its self-constructed "scientific debate" argument at this

stage is not only improper, it is untenable. Alfasigma advocated for (and obtained) a jury

instruction encapsulating the very law Alfasigma now sets forth. As the Court instructed the jury:

> If an alleged false statement states a scientific proposition, and you find that
> there is a reasonable difference of scientific opinion about that proposition,
> that is, ***duly qualified*** experts in the field have a ***reasonable disagreement***
> about the accuracy or validity of the proposition, the challenged statement is
> not "literally false," and the plaintiff must therefore prove consumer deception.

ECF No. 810 at p. 28.

Alfasigma has no basis to contend that this instruction was improper or that the jury failed

to follow the same law Alfasigma ensured was before it. *See Trimed, Inc. v. Sherwood Med. Co.*,

977 F.2d 885, 891 (4th Cir. 1992) ("If the instructions correctly state the law and adequately cover

the issues in the case, the charge is sufficient."); *see also Bruton v. U.S.*, 391 U.S. 123, 135 (1968)

(courts presume "the jury will follow the court's instructions where those instructions are clear"). Indeed, Alfasigma declines to do so, although that argument would at least be legally cognizable. Alfasigma's suggestion that the jury got it wrong is not. This Court must align its injunction with the verdict that was entered, *PBM*, 639 F.3d at 128, not the one Alfasigma wishes had been entered.

Notably, Alfasigma already asked this Court to reconsider (and reallocate weight to) Mr. Barrangou's testimony in its Rule 50 motion (ECF No. 859), which was improper enough. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (the court "may not make credibility determinations or weigh the evidence" and must "disregard all evidence favorable to the moving party that the jury is not required to believe"). Alfasigma's instant effort to eviscerate the verdict in the guise of arguing against injunctive relief is even more so. Although Alfasigma (again) trots out Dr. Barrangou's credentials, repeats his opinions, and insists that "no one [] knows more" about VSL#3 than Dr. Barrangou, Opp. at p. 12, the jury considered all of that evidence before assuredly concluding that, if there was a debate,[7] it was not supported on Alfasigma's side by a "duly qualified" expert, and Alfasigma's expert did not proffer a "reasonable" disagreement. In sum, the Court instructed the jury to determine witness credibility,[8] and it did.

Although rearguing the merits of the claim they won at trial is unnecessary for Plaintiffs to obtain the injunctive relief they seek, Plaintiffs are compelled to point out the obvious: Dr. Barrangou was fully discredited on cross-examination. Despite Alfasigma's effort to characterize

---

[7] There was never any scientific debate at trial over the falsity of Alfasigma's statements, most of which were clearly unscientific. The conflicting testimony of one witness—whose testimony the jury was free to (and likely did) reject—can neither vitiate the verdict nor disallow injunctive relief. Even if there had been a scientific debate about the statements in Alfasigma's advertising, an injunction could still issue to preclude the irreparable harm to Plaintiffs' reputation and goodwill as a result. *See PBM*, 639 F.3d at 126 (affirming injunction enjoining defendant's false advertising when plaintiff's "reputation was, and potentially continues to be, damaged"); *see also infra*, p. 17.

[8] As the Court instructed the jury: "You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony." ECF No. 810 at p. 4.

Dr. Barrangou as the foremost expert on the products at issue, he was not: Dr. Barrangou "never actually worked on the product itself." 11/13 Tr.2 88:14-24. As Dr. Barrangou conceded, he could not possibly testify to the medical efficacy of the products at issue, because he is neither a doctor nor a treating clinician. *Id.* at 86:20-24, 89:13-25, 90:6-11. Dr. Barrangou had no familiarity with the implementation of probiotic products in patients and could offer no opinion on how probiotics would function medically, the ability of a probiotic to influence medical conditions, or how VSL#3 functioned in treating those conditions. *Id.* at 91:19-92:12. Dr. Barrangou had never even seen any data or information on the use of CSL VSL#3 for managing medical conditions. *Id.* at 90:12-15. When Alfasigma points out that Dr. Barrangou stated that "the studies previously performed on VSL#3 can continue to be relied on," Alfasigma omits that he had no valid basis for doing so.

As Dr. Barrangou also admitted, even if two products are genetically identical, they might function differently, *id.* at 93:9-94:12 and 103:19-21,[9] although these two products were not genetically identical at all. Instead, as the De Simone Formulation and CSL VSL#3 have different genes, Dr. Barrangou was forced to claim "genetic equivalence," a concept that simply does not apply to naturally occurring strains. *Id.* at 94:14-95:25. But Dr. Barrangou could not even testify credibly to "genetic equivalence," because even that assessment relied upon Douillard's analysis. *Id.* at 99:9-13. As Dr. Barrangou recognized on cross-examination, Dr. Gillevet had subsequently analyzed the Douillard report to conclude that the De Simone Formulation had eight strains, while CSL VSL#3 had seven. *Id.* at 99:14-20. In an apparent effort to refute the same conclusions he

---

[9] The evidence established that the two products did, in fact, function differently. Every study comparing them reached the same conclusion: "the new formulation from Italy is not … comparable to the formulation that is from United States." 11/6 Tr. 136:1-17, 142:6-23. No studies established otherwise. Dr. Mary Ellen Sanders, a scientist hired by Defendants, even warned Defendants that they could not accurately claim functional equivalency without conducting a study establishing as much. Trial Ex. 1425. It is undisputed that Defendants conducted no such studies.

also described as "compelling," *id*. at 103:22-24, a week before trial, Dr. Barrangou issued a report

relying on a new (and suspiciously recent) study by Dr. Mora, which Dr. Barrangou claimed was

based on an evaluation of CSL VSL#3. *Id*. at 99:21-100:19. Yet, as Dr. Barrangou conceded on

cross-examination, he had no idea if the product analyzed in the Mora report was actually the

product it purported to be; he was just "assuming" as much. *Id*. at 101:17-23, 102:2-3; 119:9-11.

A review of his testimony proves instructive:

> Q. You're taking someone's word that the product actually studied and
> reported on in this October 23rd report is really available in the commercial
> market. You don't know that for sure, do you?
>
> A. I don't know that for sure, but I don't go shopping in Italy. I mean, I
> should sometimes, but I don't.
>
> Q. And even it's somehow commercial product in Italy, you don't know if
> this is commercial product that's available here in the United States for
> purchase, do you?
>
> A. I do not, no.

11/13 Tr.2 102:4-13.

The jury considered this testimony, weighed Dr. Barrangou's credibility (or lack thereof),

and found Alfasigma liable for false advertising. Alfasigma cannot avoid the injunctive

consequences of its own defeat by rearguing for a reallocation of the weight of that testimony now.

### a. __Alfasigma's Misstatements on Equivalency and Strains.__

Alfasigma should be required to advertise its product as having seven strains, because it

does, just as it should be precluded from advertising its product as equally efficacious, because it

is not. Ample evidence confirmed as much. *See* ECF No. 879 at pp. 9-12 & ECF No. 905 at pp.

26-30. Although Alfasigma suggests that these conclusions "cannot be inferred from the general

verdict," the relevant question is whether, given the evidence to the contrary, a finding that VSL#3

has eight strains (and remains just as efficacious) would "be inconsistent" with the verdict. *PBM*,

639 F.3d at 128. As the evidence showed that VSL#3 has seven strains and its formula has not been tested for efficacy, the jury assuredly concluded that permitting VSL#3 to advertise otherwise would be false, rendering any other result inconsistent with the verdict—and the evidence. *See id.*

Although Alfasigma continues its improper effort to re-argue the evidence, its only argument against an injunction amounts to a throwaway assertion that an injunction would be "inequitable" and "not in the public interest." Opp. at p. 14. Alfasigma's self-serving statement hardly establishes as much. Its effort to avail itself of the Constitution fares no better.

Having shown no interest in Plaintiffs' rights when it sought (and obtained) the very same type of affirmative injunctive relief, Alfasigma insists that this injunction would "run afoul of the First Amendment." However: "false and misleading representations in advertising are not shielded by the First Amendment." *Design Res., Inc. v. Leather Indus. of Am.*, 900 F. Supp. 2d 612, 620 (M.D.N.C. 2012); *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 322 (4th Cir. 2015) ("advertising regulations that prohibit using false or misleading information" permissibly "restrict speech"). Although Alfasigma insists that it cannot be required to make statements it "vigorously disagrees with," its contention finds no support in the single case it cites. In *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, the Supreme Court considered an Ohio law requiring defendants to include certain statements in advertising. 471 U.S. 626, 650-51 (1985). The Court found the law constitutional, as the "appellant's constitutionally protected interest in *not* providing any particular factual information in his advertising is minimal." *Id.* (emphasis in original). When Alfasigma suggests that, under *Zauderer*, only "purely factual and uncontroversial" statements can be enjoined, Alfasigma is flatly incorrect. As the Court held in full: "The State has attempted only to prescribe what shall be orthodox in commercial advertising, and its prescription has taken the form of a requirement that appellant include in his advertising

13

purely factual and uncontroversial information about the terms under which his services will be available," which passed constitutional muster, given its minimal impact on First Amendment rights. *Zauderer*, 471 U.S. at 651. Nothing in *Zauderer* can grant Alfasigma's false advertising the First Amendment protection it lacks. *See Design Resources*, 900 F. Supp. 2d at 620.

### b. Alfasigma's Citations to Clinical Studies It Never Conducted.

Bent on continuing its attack on the verdict, Alfasigma contends that Plaintiffs "did not introduce any evidence" that it advertised clinical studies, and the "jury was not asked to decide" the issue regardless. Opp. at p. 17.[10] Indulging Alfasigma's improper argument reveals its flaws. The evidence, all of which the jury was asked to evaluate, showed that Alfasigma advertised VSL#3 as backed by "170 published clinical studies and reviews," Trial Ex. 375, and the "majority of the 170 [clinical] studies were completed using VSL#3 from CSL in which all efficacy and safety data yielded stellar results." Trial Ex. 508; Trial Exs. 297, 341, 412, 680, 136. With multiple experts, Mr. Guarna confirmed the obvious: the statements are false. 11/8 Tr. 150:20-153:17.

Alfasigma can hardly argue otherwise. When an advertisement "either expressly or impliedly asserts that the fact is testor study-validated," a claim may "be proven literally false by showing only that the test asserted to validate it did not in fact do so." *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 435 (4th Cir. 1997); *Intendis, Inc. v. River's Edge Pharm., LLC*, 2011 WL 4442849, at *8 (D. Md. Sept. 22, 2011) (plaintiff must only show: "(i) that the tests were not sufficiently reliable to permit the conclusion for which they are cited,

---

[10] Alfasigma argues (again) that its advertising was not "sufficiently disseminated to the relevant purchasing public," but Plaintiffs already refuted this argument, ECF No. 905 at pp. 31-32, and Alfasigma offers nothing new. Alfasigma insists that "it is the genetics" that matter, while "safety and efficacy do not," Opp. at p. 18, but abundant testimony established otherwise. *See, e.g.*, 11/6 Tr.2 17:1-2 ("it is not important, the genetic composition of the strains"; what matters is "how do they function"); 11/6 Tr. 103:3-4 ("what really counts" is the result). Common sense compels the same conclusion: consumers care about efficacy, not genetics.

or (ii) that the tests, even if reliable, do not establish the proposition asserted by the defendant"). Defendants agreed: Alfasigma's cited tests did not validate its claims. 11/8 Tr. 150:20-153:17.

Alfasigma cannot avoid injunctive relief now, when courts "routinely enjoin claims of proven therapeutic efficacy on the ground that the underlying tests are irrelevant and/or unreliable to support them." *Zeneca Inc. v. Eli Lilly & Co*., No. 99 CIV. 1452 (JGK), 1999 WL 509471, at *34-35 (S.D.N.Y. July 19, 1999) (enjoining defendant's advertisements for cancer treatment when it provided "no data—flawed or otherwise—to establish' the proposition that [its drug] has been proven comparable or superior"); *see also Smithkline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson–Merck Consumer Pharmaceuticals Co*., 906 F. Supp. 178, 182–83 (S.D.N.Y. 1995) (enjoining claim that product controlled acid "all day" when studies evaluated night-time acid relief and were "not relevant"). To suggest that it should be permitted to advertise the tests it never conducted regardless, Alfasigma ignores this precedent but offers none of its own.

Instead, Alfasigma shifts the burden to doctors, whom Alfasigma suggests should "make up [their] own mind" about its advertising, then blames Plaintiffs for "creating a situation in which no studies" could be conducted. Opp. at pp. 18-19. Neither doctors nor Plaintiffs created Alfasigma's false advertising or caused investigators to stop clinical studies once they found out that Alfasigma misled them; Alfasigma did. Alfasigma's arguments to lessen its liability amount to excuses. Here, the jury was tasked with making up its mind, and the jury found Alfasigma's statements false. Injunctive relief is clearly warranted. *See Zeneca*, 1999 WL 509471, at *34-35.

### c.  Corrective Advertising.

Contrary to Alfasigma's contention, Plaintiffs hardly suggest that Alfasigma "be enjoined from making any statements concerning VSL#3." Opp. at p. 2. A cursory review of Plaintiffs' requested injunctive relief confirms as much. ECF No. 879, App'x A. In suggesting an injunction

cannot issue regardless, Alfasigma merely repeats its invented "scientific debate" and legally flawed First Amendment arguments. At base, Alfasigma suggests that defendants can freely falsely advertise medical products, so long as a single scientist (who is not qualified to speak to the issue and was thoroughly discredited at trial), says it is permissible. That is not the law. This Court should decline Alfasigma's invitation to carve out a new First Amendment protection for its false advertising. There is still "no constitutional value in false statements of fact." *United States v. Alvarez*, 567 U.S. 709, 746 (2012). Although Alfasigma suggests that corrective advertising would be "superfluous," since Plaintiffs' counsel sent the jury verdict to a few pharmacies, Opp. at p. 22, Alfasigma's appended "evidence" does not amount to evidence at all.[11] And Plaintiffs' patchwork efforts to apprise consumers of the facts cannot alleviate Alfasigma's responsibility to do the same.

## C.   Plaintiffs Meet the Necessary Standards for Granting Injunctive Relief.

### 1.   Plaintiffs Showed Irreparable Injury.

Notably, Alfasigma does not bother attempting to contest Plaintiffs' irreparable injury. Instead, Alfasigma suggests that Plaintiffs failed to establish damages, apparently unaware that would only weigh in favor of an injunction. *See, e.g.*, *Miles Labs. v. Seignious*, 30 F. Supp. 549, 555 (E.D.S.C. 1939) ("Not only is the absence of monetary damage not a reason for denying injunctive relief, but on the contrary it supports an application for such relief."). Although Plaintiffs proved damages, they also fulfilled the relevant burden: proving "monetary damages are inadequate." *eBay*, 547 U.S. at 391. To do so, Plaintiffs were not obligated to "point to an actual loss"; they were required to offer "proof which provides a reasonable basis for th[eir] belief" that they are "likely to be

---

[11] To the extent the Court is willing to consider it regardless, Plaintiffs would also point out that many retailers have raised concerns about Alfasigma's false advertising, and a key Costco pharmacist informed Plaintiffs that he had used VSL#3 for years until it stopped working in mid-2016. Having been informed of Alfasigma's false advertising, he understood why—and is working to switch Costco's sales to Visbiome. An injunction is plainly imperative to protect the public.

injured as a result of the false advertising." *PBM*, 639 F.3d at 126-27. Plaintiffs offered as much, 11/5 Tr.2 72:3-23 & 75:5-13, just as they showed that Alfasigma's VSL#3 website and Facebook page remain unaltered; both still falsely cite clinical studies and state that VSL#3 has eight strains, has been "widely studied in multiple trials," and has a "15-year track record of demonstrated clinical benefits and 170 published clinical studies and reviews." ECF No. 905, Exs. A & B. "A permanent injunction is especially appropriate where a threat of continuing infringement exists," *Disney Enterprises, Inc. v. Delane*, 446 F. Supp. 2d 402, 408 (D. Md. 2006), and even the "likelihood of continued infringement" "renders monetary damages inadequate." *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 868 F. Supp. 2d 468, 497 (D. Md. 2012). Alfasigma's continued false advertising is not just likely: it is undisputed. *See* Opp. at p. 24. Only an injunction will remedy it.

Injunctive relief is additionally necessary, as even the possibility of "being unable to competitively compete in the marketplace" also constitutes irreparable harm. *Sciteck Clinical Labs., Inc. v. U.S. Dep't of Health & Human Servs.*, 2005 WL 3277998, at *3 (W.D.N.C. Dec. 1, 2005); *see also Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) (irreparable harm may exist "where the moving party's business cannot survive absent a preliminary injunction"); *Corp. Healthcare Fin., Inc. v. BCI Holdings Co.*, No. CIV. CCB-05-3391, 2006 WL 1997126, at *4 (D. Md. July 13, 2006) (irreparable injury when failure to grant injunction would "create[] the possibility of permanent loss of customers"). Testimony established that Alfasigma's false advertising has already rendered it difficult for Plaintiffs to compete. 11/5 Tr.2 70:14-21, 73:19-23, 75:5-13. A failure to enjoin it now would only make that harm permanent.

Alfasigma cannot escape an injunction by arguing that "any dollar awarded to ExeGi will more than compensate" it, Opp. at p. 25, as the "mere fact that a plaintiff may recover damages does not negate his right to injunctive relief." *PBM*, 639 F.3d at 127. Damages are "recompense

for past violations"; injunctions work to prevent "any ongoing or future violation." *Exclaim*, 2015 WL 5725703, at *4. Alfasigma's undisputed ongoing violations require an injunction here.

### 2.   The Balance of Hardships Favor an Injunction.

In suggesting that it would suffer some injustice from an injunction, Alfasigma offers no proof of any such harm. Instead, Alfasigma reiterates its specious allegations of Plaintiffs' supposed malintent, although Plaintiffs do not seek (or even desire) "the permanent crippling of Alfasigma and its sales of VSL#3." Opp. at p. 25. Plaintiffs only want Alfasigma to promote its product truthfully, in concordance with "the salutary purposes of the Lanham Act to promote fair competition in the marketplace." *Zenith Elecs. Corp. v. Exzec, Inc*., 182 F.3d 1340, 1354 (Fed. Cir. 1999). If Alfasigma would suffer harm as a result of an injunction, it pales in comparison to the harm Plaintiffs would suffer without one—and Alfasigma still cannot complain about the consequences it brought upon itself. *See Victor Stanley*, 2011 WL 4596043, at *21.

### 3.   An Injunction is in the Public Interest.

To argue that an injunction is not in the public interest, Alfasigma mischaracterizes the purpose of the Lanham Act before focusing on its own interests. Alfasigma insists: the injunction would "thwart competition" and "threaten supply." But "the public interest favors fair competition and truth in advertising," *Lorillard Tobacco Co. v. S & M Brands, Inc*., 616 F. Supp. 2d 581, 589 (E.D. Va. 2009), not allowing pharmaceutical companies to unfairly compete by imparting falsities. Indeed, "it is self-evident that preventing false or misleading advertising is in the public interest in general," which is only "heightened when, as is the case here, the misleading information pertains to issues of public health." *PBM*, 639 F.3d at 126; *see also Amer. Home Prods. Corp. v. Johnson & Johnson*, 654 F. Supp. 568, 590 (S.D.N.Y. 1987) (the "strong public interest in the prevention of misleading advertisements" is "particularly strong where over-the-

counter drugs are concerned"). Avoiding this precedent, Alfasigma suggests Plaintiffs failed to prove that "VSL#3 is unsafe," although that was not Plaintiffs' burden. In this false advertising case, the falsity of Alfasigma's advertising and injury to ExeGi's business constituted the harm.[12] Labeling VSL#3 as merely a "medical food" cannot help Alfasigma, who cites clinical studies and promotes VSL#3 as proven to "effectively manage[] the symptoms of IBS, UC and an ileal pouch." Trial Ex. 508; Trial Ex. 375 (VSL#3 is "supported by numerous studies for specific digestive disorders, such as IBS, UC and ileal pouch"). An injunction is necessary to end these falsities.

### D. Alfasigma's Proposed Injunction Should Be Denied.

In proffering a "proposed alternative injunction," Alfasigma (finally) concedes: "it can be reasonably inferred" from the verdict that the jury determined, among other things, that it was literally false for Alfasigma to advertise that the "majority of 170 studies were completed using VSL#3 from CSL in which all efficacy and safety data yielded stellar results." Opp. at p. 28. Having admitted as much, Alfasigma cannot possibly justify the narrow injunction it proposes, which would only permit Alfasigma to continue misleading consumers—with the Court's blessing. While this Court should grant Plaintiffs' relief in full, under Alfasigma's own rationale, an injunction must at least bar Alfasigma from citing the clinical studies it never conducted, claiming the efficacy and safety it has not established, or advertising its product as in any way "the same."

### II. Plaintiffs Are Entitled to Enhanced Damages.

Alfasigma's only argument to avoid enhanced damages is that Plaintiffs failed to prove damages at all, because Plaintiffs supposedly solely sought "disgorgement of profits" but failed to

---

[12] Alfasigma suggests there are no "public safety concerns," but evidence established otherwise. *See, e.g.*, 11/6 Tr.2 at 43:23-44:4 (it would be "dangerous to treat" patients with products not proven efficacious). Prof. De Simone and Beth Park testified to their concern that VSL would sell a fake product (11/2 Tr.2 34:16-40:25; 10/31 Tr. 150:14-151:1), which prompted Prof. De Simone to resign. 10/31 Tr. 150:5-11. Alfasigma's reliance on *SurgiQuest v. Lexion Med., Inc.*, 2018 U.S. Dist. LEXIS 82323 (D. Del. May 16, 2018), where there was no such evidence, is misplaced.

establish "proximate causation of injury." Opp. at p. 30. Accepting Alfasigma's account dooms its argument. "Proof of injury to the plaintiff is logically relevant only to the remedy of damages," so a failure to prove harm "does not preclude a plaintiff from recovering the defendant's profits," which evaluates "whether the defendant has benefited from his false advertisements." *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 330 F. Supp. 2d 668, 672 (E.D. Va. 2004), *aff'd*, 141 F. App'x 129 (4th Cir. 2005) (collecting cases and noting that any other result would ignore "the availability of the defendant's profits" as a remedy); *Georgia-Pac. Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 717 (4th Cir. 2015) (confirming jury's profits award and noting that a plaintiff may recover "profits based simply on proof of the defendant's sales").

To suggest that awarding Plaintiffs profits regardless would be a "windfall," Alfasigma only contests the conclusions of Plaintiffs' damages expert—before admitting that the jury "was entitled to consider and credit" all of the evidence before it. Opp. at p. 32. As Alfasigma concedes, it has no basis to contest the jury's conclusions now. *See id.* But Plaintiffs have every basis to seek enhanced damages, as the jury's award is inadequate to compensate them, ECF No. 879 at pp. 14-20, just as it is "inadequate to nullify the monetary benefit of the infringement." *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006). One needs look no further than Alfasigma's Opp. to see the clear case for enhanced damages. When Alfasigma admits that, if it was enjoined from continuing its false advertising, it would drive VSL#3 off the market entirely, Opp. at pp. 25-26, Alfasigma proves Plaintiffs' point: all of Alfasigma's profits should be disgorged, as they were derived directly from its false advertising. Any concept of equity demands the same result.

## **CONCLUSION**

For the reasons stated herein, Plaintiffs ask the Court to GRANT their post-trial motion in its entirety and grant Plaintiffs any additional relief as the Court deems just and proper.

Dated: January 31, 2019         Respectfully submitted,

**SCHULMAN BHATTACHARYA, LLC**

By:     /s/ Jeremy W. Schulman
         Jeremy W. Schulman

         Jeremy W. Schulman (Fed. Bar No. 16787)
         Jeffrey S. Gavenman (Fed. Bar No. 19946)
         Schulman Bhattacharya, LLC
         7500 Old Georgetown Road, Suite 901
         Bethesda, Maryland 20814
         Telephone: (240) 356-8550
         Email: jschulman@schulmanbh.com
                 jgavenman@schulmanbh.com

         *Counsel for Plaintiffs/Counterclaim*
         *Defendants Professor Claudio De Simone*
         *and ExeGi Pharma, LLC*