# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| CLAUDIO DE SIMONE, <br><br> Plaintiff/Counterclaim Defendant, <br><br> EXEGI PHARMA, LLC, <br><br> Plaintiff, <br><br> v. <br><br> VSL PHARMACEUTICALS, INC., <br><br> Defendant/Counterclaim Plaintiff, <br><br> LEADIANT BIOSCIENCES, INC. and ALFASIGMA USA, INC. <br><br> Defendants, <br><br> v. <br><br> DANISCO USA, INC., <br><br> Counterclaim Defendant. | Civil Action No. TDC-15-1356 |

## MEMORANDUM OPINION

Having received a favorable jury verdict, Claudio De Simone and ExeGi Pharma, LLC ("ExeGi") (collectively, "the De Simone Parties") have filed a post-trial Motion in which (1) ExeGi asks this Court to increase the jury's award of $15,000,000 against Alfasigma USA, Inc. ("Alfasigma") on its claim of false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a) (2012); (2) ExeGi seeks a permanent injunction against Leadiant Biosciences, Inc. ("Leadiant") and Alfasigma as an additional remedy on the false advertising claim; and (3) the De Simone Parties ask the Court to award them attorney's fees, costs, and pre- and post-judgment interest.

Leadiant, Alfasigma, and VSL Pharmaceuticals, Inc. ("VSL") (collectively, "the VSL Parties") oppose the Motion on all issues with the exception of costs and post-judgment interest. Having reviewed the submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

## DISCUSSION

### I. Enhanced Damages

At trial, ExeGi asked the jury to award it $27,843,149 on its false advertising claim against Alfasigma, representing Alfasigma's profits from sales of VSL#3 from July 1, 2016 through the end of trial. Although the jury found Alfasigma liable for that claim, it awarded ExeGi only $15,000,000. ExeGi now asks this Court to increase that award to its originally requested $27,843,149, supplemented by an additional amount calculated by applying a daily rate of $29,819.08 through January 31, 2019, the day this Motion became ripe.

When a plaintiff seeks the defendant's profits, "[i]f the court shall find that the amount of the recovery ... is either inadequate or excessive[,] the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. § 1117(a). Such adjusted damages must "constitute compensation and not a penalty." *Id.* Beyond this provision, the Lanham Act "gives little guidance on the equitable principles to be applied by a court" in determining whether to adjust a compensation award. *Synergistic Intern., LLC v. Korman*, 470 F.3d 162, 174 (4th Cir. 2006). In the absence of statutory instruction, courts have developed a list of factors to consider when determining appropriate compensation under the Lanham Act:

(1) whether the defendant had the intent to confuse or deceive,
(2) whether sales have been diverted,

2

(3) the adequacy of other remedies,
(4) any unreasonable delay by the plaintiff in asserting his rights,
(5) the public interest in making the misconduct unprofitable, and
(6) whether it is a case of palming off.

*Id.* at 175; *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 349 (5th Cir. 2002) (applying this test to an award of profits).

Here, upon consideration of the evidence and the factors identified in *Synergistic*, the Court concludes that the jury award of profits in the amount of $15,000,000 was justified. The De Simone Parties' expert witness on damages, Bryan Callahan, calculated Alfasigma's profits at $27,843,149, significantly above the jury's award. Most of the factors support the jury's award. As discussed in this Court's Memorandum Opinion denying the VSL Parties' Motions for Judgment as a Matter of Law and for a New Trial ("the VSL Parties' Post-Trial Motions"), *De Simone v. VSL*, Rule 50 and 59 Mem Op. § I.B.2, the evidence established that the VSL Parties' senior management, specifically, Luca Guarna, the President and Chief Executive Officer ("CEO") of VSL, knew that in producing a new version of VSL#3 in Italy ("Italian VSL#3"), they had not been able to precisely replicate the original proprietary mix, so the false advertising was deployed with the intent to confuse or deceive. The testimony of Dr. Anthony Fasano, an expert witness on the use of probiotics for the management of gastroenterological and immunological disorders, supports the further inference that, although not easily quantified, sales were diverted away from ExeGi to Alfasigma, particularly where the false advertising had the effect of "palming off" Italian VSL#3 as the same as the original VSL#3 product now sold by ExeGi as Visbiome ("the De Simone Formulation"). Where ExeGi was a new company such that a calculation of its own lost profits would not adequately compensate it, there was no adequate remedy other than Alfasigma's profits. ExeGi did not delay in asserting its claims. As for the public interest, where various expert witnesses testified that Italian VSL#3 was not functionally equivalent to the De Simone

Formulation, there is a public interest in ensuring that the public not be misled into believing that a particular product offered to address health needs will have the same efficacy as a trusted product when that has not been established. Notably, however, there was no evidence definitively establishing that any functional difference between Italian VSL#3 and the De Simone Formulation would render Italian VSL#3 unsafe or clinically ineffective for all of its users.

While the award was not excessive as a matter of equity, it was also sufficiently substantial. Where ExeGi was a start-up company with limited marketing resources, the amount of sales actually diverted, and the amount needed to compensate ExeGi for the harm of the false advertising, would be difficult to quantify, such that an award of less than all of Alfasigma's profits would be reasonable. Under these circumstances, the Court declines to increase the award. *See Synergistic*, 470 F.3d at 175.

## II. Permanent Injunction

### A. Issuance of an Injunction

The Lanham Act provides that courts "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation" of any of the Lanham Act's provisions. 15 U.S.C. § 1116(a). A plaintiff seeking a permanent injunction must demonstrate:

(1) That it has suffered an irreparable injury;
(2) That remedies at law, such as monetary damages, are inadequate to compensate for that injury;
(3) That, considering the balance of hardships between the plaintiff and defendant, a remedy is warranted; and
(4) That the public interest would not be disserved by a permanent injunction.

*Ebay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *Id.*

As to irreparable harm, the Court concludes that for the reasons set forth in the discussion of causation in the Memorandum Opinion denying the VSL Parties' Post-Trial Motions, which the Court incorporates into this Opinion by reference, the De Simone Parties have suffered an irreparable injury. *See De Simone v. VSL*, Rule 50 and 59 Mem Op. § I.B.4. In passing off Italian VSL#3 as the De Simone Formulation, Alfasigma and Leadiant deprived the De Simone Parties "of a legitimate competitive advantage and reduced consumers' incentive" to purchase Visbiome, which actually contains the De Simone Formulation, rather than Italian VSL#3. *McNeilab, Inc. v. Am. Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988) (affirming the district court's grant of a preliminary injunction on the plaintiff's false advertising claim). In *PBM v. Mead Johnson*, 639 F. 3d 111 (4th Cir. 2011), the United States Court of Appeals for the Fourth Circuit upheld the district court's issuance of a permanent injunction because, in relevant part, the plaintiff had suffered an irreparable injury where the "entire goal" of the challenged advertising had been "to influence [consumers] to not even consider a switch" to a competitor's product. *Id.* at 127. Here, Alfasigma's and Leadiant's false insistence that Italian VSL#3 continued to use the De Simone Formulation was aimed at the same goal: to convince customers not to even consider switching from VSL#3 to Visbiome. The first factor is satisfied.

On the second factor, the inadequacy of other remedies, the Court finds that although ExeGi has been awarded $15,000,000, that monetary award alone is inadequate to compensate it for the false advertising. In *PBM*, the Fourth Circuit stated that even when "substantial damages" have been awarded for false advertising, those monetary damages compensate for the direct, prior harm caused by the false advertising but do not prevent the offender "from infecting the marketplace with the same or similar claims in different advertisements in the future." *Id.* Where, as here, Plaintiffs have asserted that Alfasigma continues to advertise a continuity between Italian

VSL#3 and the De Simone Formulation, and where ExeGi Chief Executive Officer Marc Tewey provided uncontradicted trial testimony establishing that this false claim was hampering ExeGi's ability "to leverage the benefits of the brand," 11/5/18 PM Tr. 72, the Court finds that the retrospective remedy of money neither adequately protects ExeGi from future harm nor sanitizes the infected marketplace. This factor therefore weighs in favor of ExeGi as to Alfasigma.

Although Leadiant asserts that an injunction against it is not an appropriate remedy because it no longer distributes VSL#3, "it is well established that the voluntary discontinuance of challenged activities by a defendant does not necessarily moot a lawsuit." *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 800 (4th Cir. 2001) (citation omitted). To avoid an injunction based on such cessation of activity, a defendant bears the "heavy burden" to show that "there is *no* reasonable expectation that the wrong will be repeated." *Id.* Here, Leadiant cites the testimony of its in-house counsel David Sandoval, who stated that as of June 30, 2016, Leadiant sold its division that marketed VSL#3 and no longer had any rights to manufacture, market, or sell VSL#3. While this evidence might ordinarily establish that there is no reasonable expectation that Leadiant will engage in false advertising relating to VSL#3, Leadiant is entirely owned by members of the Cavazza family, Alfasigma is partially owned by the Cavazzas, and the Cavazzas have a two-thirds ownership interest in VSL. With the Cavazzas maintaining control or influence over all of the VSL Parties, they could respond to an injunction against Alfasigma by arranging for the transfer back to Leadiant of the rights to market and sell VSL#3. Thus, under the present circumstances, the Court cannot conclude that Leadiant has met its burden of establishing that there is no reasonable expectation that the wrong will be repeated. *Lyons*, 243 at 800.

As to the third factor, the balance of hardships, the Court again finds *PBM* instructive. There, the Fourth Circuit agreed with the district court's assessment that a defendant found liable

for false advertising "simply has no equitable interest in perpetuating the false and misleading claims." *PBM*, 639 F.3d at 127. Instead, the equities lie with ExeGi, which "cannot fairly compete" until Alfasigma and Leadiant "stop[] infecting the marketplace with misleading advertising." *Id.* Alfasigma's arguments on the equities center not on whether an injunction is warranted, but on the adverse consequences of particular provisions of ExeGi's proposed injunction, and thus do not alter this threshold analysis. *See id.* (finding that because the defendant's "main contentions" about the balance of hardships "concern the nature of injunctive relief, not whether that relief should be granted in the first instance," those contentions do not alter the conclusion that the balance of hardships favored the prevailing plaintiff). The equities therefore weigh in favor of ExeGi.

As for the fourth and final factor, the public interest, the Court finds that it, too, weighs in favor of ExeGi because "it is self evident that preventing false or misleading advertising is in the public interest in general," and that interest is particularly salient here because the false information being circulated "pertains to issues of public health and ... well-being." *PBM*, 639 F. 3d at 127–28. As with the third factor, Alfasigma's contrary arguments generally focus on the scope and nature of the injunction that ExeGi seeks, rather than on the question whether any injunction is appropriate. The Court therefore finds that the VSL Parties have identified no compelling public interest that can act as an adequate counterweight to the public interests aligned with ExeGi. The Court therefore concludes that the public interest factor weighs in favor of ExeGi.

Alfasigma's remaining arguments against an injunction generally duplicate their arguments in support of their Rule 50 motion, including their assertion that the jury's verdict was merely advisory and that the De Simone Parties failed to prove the elements of a Lanham Act false advertising claim. The Court rejects those arguments for the reasons set forth in the accompanying

Memorandum Opinion denying Alfasigma's Rule 50 Motion. *See De Simone v. VSL*, Rule 50 and 59 Mem Op. § I.B.

Where all four factors weigh in favor of an injunction, the Court will grant injunctive relief on terms set forth below.

**B.    Scope of the Injunction**

"It is well established that injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," and thus "an injunction should be carefully addressed to the circumstances of the case." *PBM*, 639 F.3d at 128 (citations omitted).

ExeGi seeks a sweeping injunction that not only would prohibit Alfasigma and Leadiant from making certain statements suggesting that VSL#3 continues to contain the De Simone Formulation, but also would require them to make affirmative statements about Visbiome and to issue corrective advertising. The Court finds that such broad relief is not warranted by the circumstances of this case and would unduly burden the VSL Parties. As discussed above in relation to monetary relief and in the Court's Memorandum Opinion on the VSL Parties' Post-Trial Motions, the crux of this case—and the essential injury to ExeGi—is the VSL Parties' repeated false assertions in their advertising that Italian VSL#3 continues to be composed of the De Simone Formulation. Accordingly, the Court concludes that an injunctive remedy carefully addressed to the circumstances of this case is one focused on curtailing such claims of continuity between Italian VSL#3 and the De Simone Formulation. *See PBM*, 639 F.3d at 128 (citations omitted). The Court will thus permanently enjoin Alfasigma and Leadiant from making any claims in VSL#3 promotional materials that state or suggest a false continuity between Italian VSL#3 and the De Simone Formulation, including but not limited to statements claiming that VSL#3 continues to contain the "original proprietary blend" or the "same mix in the same proportions."

The VSL Parties will also be permanently enjoined from citing any clinical study performed on the De Simone Formulation or implying that any such study was conducted on Italian VSL#3. Where the CEO of VSL has acknowledged that Italian VSL#3 was the result of an attempt to reverse engineer the De Simone Formulation and that the VSL Parties could not actually replicate the original proprietary mix, and the scientific evidence established that the products are not the same, such a remedy is necessary to prevent further harm to ExeGi. Although Alfasigma argues that there is no basis to enjoin citations to clinical studies performed on the De Simone Formulation because the composition of Italian VSL#3 and how it compares to the composition of the De Simone Formulation is a matter of bona fide scientific debate and thus not properly actionable under the Lanham Act, the Court has already considered and rejected that argument in its Memorandum Opinion on the VSL Parties' Post-Trial Motions. *See De Simone v. VSL*, Rule 50 and 59 Mem Op. § I.B.2.

However, the Court finds no basis to grant the other permanent injunctive relief requested by ExeGi. ExeGi seeks an order that Alfasigma affirmatively issue corrective advertising distinguishing Italian VSL#3 from the De Simone Formulation and reporting the results of this lawsuit. The Court finds that where the harm to ExeGi was the promoting of a false continuity between Italian VSL#3 and the De Simone Formulation, not false statements about Visbiome, there is no independent need to require the VSL Parties to make specific statements distinguishing between Italian VSL#3 and Visbiome. An injunction requiring such comparative statements would essentially require the VSL Parties to favorably advertise their competitor's product, a result that would be inequitable when they engaged in no express negative comparative advertising. *Cf. Group SEB USA, Inc. v. Euro-Pro Operating, LLC*, 774 F.3d 192, 206 (3rd Cir. 2014) (finding that the district court's preliminary injunction was not overbroad where the court ordered the

defendant to cover package advertising containing the specific false statements underlying the false advertising claims). For the same reasons, the Court finds that the proposed remedy of requiring statements about the results of this lawsuit would be inequitable. *Cf. Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F. 2d 642, 650 (6th Cir. 1986) (affirming the district court's issuance of a preliminary injunction requiring corrective advertising where the defendant's trademark infringement "affirmatively misrepresented" through the use of the plaintiff's protected marks that the defendants' restaurants were affiliated with the Big Boy restaurant franchise and sold Big Boy food products). Thus, the injunction will be limited to the restrictions on statements linking Italian VSL#3 to the De Simone Formulation and the clinical trials performed on the De Simone Formulation.

## III. Attorney's Fees

The De Simone Parties also seek attorney's fees for the work performed on both the VSL Parties' Lanham Act claims and the De Simone Parties' Lanham Act false advertising claims. Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). As the outset, the Court finds that ExeGi was the prevailing party on all Lanham Act claims. The jury's verdict establishes that ExeGi was a prevailing party on its false advertising claim against Alfasigma and Leadiant. As for the VSL Parties' Lanham Act claims, those claims include VSL's trademark infringement, unfair competition, and false advertising claims against De Simone and ExeGi; Leadiant's claims of trademark infringement, unfair competition, and false advertising against ExeGi and its claims of unfair competition and false advertising against De Simone; and Alfasigma's claim of false advertising against De Simone and ExeGi. When a party is a defendant to a Lanham Act claim, the party prevails for purposes of becoming eligible for attorney's fees "whenever the plaintiff's

10

challenge is rebuffed," such that a defendant can be considered a prevailing party "even if the court's final judgment rejects the plaintiff's claim for a nonmerits reason." *CRST Van Expedited, Inc. v. Equal Employment Opportunity Comm'n*, 136 S. Ct. 1642, 1651 (2016). Here, during trial, the VSL Parties moved to voluntarily dismiss their Lanham Act claims with prejudice, and the Court granted that motion. *See* ECF Nos. 800 and 805. Thus, as no party disputes, the De Simone Parties are prevailing parties on all of the Lanham Act claims asserted in this case.

On the issue of what constitutes an exceptional case under the Lanham Act, the legislative history of the statute provides that fee shifting is appropriate "where the acts of infringement can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'" S. Rep. 93-1400, 1974 U.S.C.C.A.N. 7132, 7133 (1974). In interpreting a similar fee-shifting provision under the Patent Act, 35 U.S.C. § 285 (2012), the United States Supreme Court set forth a less stringent test, finding that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Applying the guidance of *Octane Fitness* to the Lanham Act fee-shifting provision, the Fourth Circuit has stated that in making a determination whether a case is exceptional for purposes of awarding attorney's fees, courts should consider whether, in the totality of the circumstances:

> (1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable;
> (2) the non-prevailing party has litigated the case in an unreasonable manner; or
> (3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence.

*Georgia-Pacific v. von Drehle*, 781 F.3d 710, 721 (4th Cir. 2015) (citations omitted). These factors are non-exclusive, and "a case presenting either subjective bad faith or exceptionally meritless

11

claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Octane Fitness*, 572 U.S. at 554–55. "[T]he losing party's conduct need not have been independently sanctionable or taken in bad faith in order to merit an award of attorney fees to the prevailing party under the Lanham Act." *Verisign, Inc. v. XYZ.COM LLC*, 891 F.3d 481, 487 (4th Cir. 2018). However, it is the "rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Octane Fitness*, 572 U.S. at 555.

On the first factor, a party's position is frivolous or objectively unreasonable where "no reasonable litigant could believe it would succeed." *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 544 (Fed. Cir. 2011) (interpreting the attorney fee provision of the Patent Act). Under this standard, the Court concludes that there was no unusual discrepancy in the merits of the parties' positions. First, the VSL Parties' positions on their Lanham Act trademark and false advertising claims were clearly reasonable. Indeed, the Court granted to the VSL Parties two preliminary injunctions, which required this Court to find that the VSL Parties were likely to succeed on the merits of, as relevant here, their Lanham Act counterclaims. *See Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (identifying likelihood of success on the merits as a prerequisite for a preliminary injunction); *De Simone v. VSL Pharm., Inc.*, 133 F. Supp. 3d 776, 798 (D. Md. 2015) (finding that the VSL Parties were likely to succeed on their trademark infringement claims); *De Simone v. VSL Pharm., Inc.*, No. TDC-15-1356, 2016 WL 3466033 at *20 (D. Md. June 20, 2016) (finding that the VSL Parties were likely to succeed on their false advertising claim relating to statements made on the Visbiome website).

The De Simone Parties argue that even if the VSL Parties' Lanham Act counterclaims were not objectively unreasonable at the outset of the litigation, they became so over the course of the

case. *See Design Resources, Inc. v. Leather Indus. of Am.*, No. 1:10CV157, 2016 WL 5477611 at *4 (M.D.N.C. Sept. 29, 2016) ("[O]ver time, a party's position and litigation approach may move from being objectively reasonable to becoming unreasonable and perhaps exceptional."). This argument, however, is primarily based on the fact that the VSL Parties dismissed their Lanham Act claims with prejudice after the start of trial, with the explanation that where the Court's preliminary injunctions had prevented the alleged violations from causing significant damages, the litigation costs outweighed the possible benefits of taking those claims to the jury. This rationale for dismissal in no way undermines the reasonableness of the VSL Parties' position that the De Simone Parties were liable for trademark infringement and false advertising. *See Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990) (in reversing the district court's entry of judgment on a Lanham Act false advertising claim, distinguishing between "two stages of inquiry—violation of the law [and] remedies for the violation"); *De Simone*, 133 F. Supp. 3d at 798; *De Simone*, No. TDC-15-1356, 2016 WL 3466033 at *20.

As for ExeGi's false advertising claims against Alfasigma and Leadiant, the Court concludes that even though the jury found in favor of ExeGi on those claims, there was not an unusual discrepancy in the merits of the opposing parties' positions. Had the VSL Parties successfully recreated the De Simone Formulation through a reverse engineering process, their statements regarding the continuity between the De Simone Formulation and Italian VSL#3 may have been true. The fact that the jury did not credit their evidence on the genetic and functional equivalence of the products does not mean that their arguments were frivolous or objectively unreasonable. In an effort to establish that the VSL Parties acted with subjective bad faith, the De Simone Parties claim that the VSL Parties acted willfully and that they intentionally "misrepresented their product, including its composition, history of clinical use, and history of

13

clinical studies." Mot. at 24, ECF No. 879. Notably, however, the jury was instructed that to establish liability for false advertising, it was not necessary for the De Simone Parties to prove that Alfasigma or Leadiant had the intent to deceive or acted in bad faith. Jury Instruc. No. 23. *See Proctor & Gamble Co. v. Chesebrough-Pond's, Inc.*, 747 F.2d 114, 118–19 (2d Cir. 1984). Where the jury did not necessarily find bad faith, and where the VSL Parties' positions in claiming that they did not engage in false advertising were neither frivolous or objectively unreasonable, the Court does not find a sufficient disparity in the positions of the parties to render the case exceptional for purposes of attorney's fees.

This conclusion is not altered by *Employers Council on Flexible Compensation v. Feltman*, 384 F. App'x 201 (4th Cir. 2010) (per curiam), or *Merck Eprova AG v. Brookstone Pharmaceuticals, LLC*, 920 F. Supp. 2d 404 (S.D.N.Y. 2013), on which Plaintiffs rely. In *Employers Council*, the Fourth Circuit found that the district court had not clearly erred in finding a Lanham Act trademark infringement case exceptional for purposes of awarding attorney's fees where the defendants had exhibited a clear animus towards the plaintiffs and had conducted only minimal research into their assertion, offered as a defense, that the plaintiffs had lost their rights to the trademark in question. Here, the Court does not find that there was a comparably clear basis to find bad faith in the dissemination of the false advertising, nor does it find support for a conclusion that the VSL Parties conducted insufficient legal research to properly assess the propriety of those statements.

In *Merck Eprova*, a Lanham Act case stemming from allegations of false advertising based on the labeling of generic vitamin substitutes, Merck was the only company to have developed a pure form of a specific synthetic folate, which it licensed to various companies to include in their vitamins. *Merck Eprova*, 920 F. Supp. at 413. The defendants then began to market a vitamin that

they deliberately manufactured to contain a non-pure, or hybrid folate but altered the packaging label to make it appear as though it contained only a single, pure form of folate, and copied Merck's ingredient labels, in an effort to co-opt Merck's customer base. *Id.* at 413–15, 420–21. Here, there was no evidence that Italian VSL#3 was a deliberate deception from the outset. In fact, the evidence establishes that the VSL Parties made extensive, though ultimately unsuccessful, efforts to exactly replicate the De Simone Formulation through reverse-engineering.

As to the second factor of an unreasonable manner of litigation, the De Simone Parties assert that the VSL Parties engaged in vexatious litigation tactics tinged by bad faith. The Court takes seriously the De Simone Parties' complaints about the sheer volume of litigation in this case, and the Court is acutely aware of how strenuously this case has taxed the more limited resources of the De Simone Parties. For example, the VSL Parties filed a bloated set of counterclaims, many of which were dismissed; engaged in unreasonable, obstructionist tactics in several depositions; filed more than 15 motions *in limine*; and continued to pursue their trademark and false advertising claims until late in the trial before voluntarily seeking their dismissal. While the Court in no way condones the excesses of the VSL Parties' litigation strategy, it notes that the De Simone Parties initiated the litigation among the parties, a significant portion of the litigation related to claims separate from the Lanham Act claims that could be subject to attorney's fees, and the VSL Parties' late decisions, including to dismiss their Lanham Act claims, do not necessarily reveal bad faith but instead were more likely the consequence of the inefficiencies created by the VSL Parties' determination of trial strategy by a committee of three different legal teams, including a new law firm engaged by VSL only for the trial.

Moreover, the De Simone Parties themselves engaged in an aggressive litigation strategy with certain questionable tactics that may have triggered some of the VSL Parties' criticized

15

actions. For example, the De Simone Parties were found in contempt for continuing to infringe the VSL#3 mark despite this Court's preliminary injunction, *see De Simone*, No. TDC-15-1356, 2016 WL 3466033 at *18, and De Simone was sanctioned for spoliation and ordered to pay related costs and fees based on his destruction of certain documents, *see De Simone v. VSL Pharm., Inc.*, Mot. Sanctions Mem. Op. at 13, 16, ECF No. 556 (Sullivan, J). The numerous motions *in limine* were filed in response to the De Simone Parties engagement of eight expert witnesses. Where the VSL Parties' litigation posture was not markedly more bellicose than that of the De Simone Parties, and where some of the assertedly unreasonable litigation practices are plausibly a response to aggressive tactics by the De Simone Parties or the result of poor strategy and coordination rather than vexatious intent or bad faith, the Court concludes that the VSL Parties did not engage in an unreasonable manner of litigation warranting the awarding of attorney's fees. *See Octane Fitness*, 572 U.S. at 555 (emphasizing that it is the "rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees"); *Cava Grp, Inc. v. Mezeh-Annapolis, LLC*, No. GJH-14-0355, 2017 WL 2493099 at *2 (D. Md. June 7, 2017) ("[C]onduct triggering relief must go beyond an aggressive litigation strategy.") (citation omitted).

As for the third factor, the need for compensation or deterrence, the De Simone Parties argue that it is satisfied because Alfasigma's false advertising "continues unabated" and that without the imposition of attorney's fees, it might "escape from litigation relatively unscathed." Mot. at 35–36. Where the jury awarded the De Simone Parties over $15,000,000 and where the Court is ordering permanent injunctive relief, the Court is unpersuaded that attorney's fees are a necessary additional remedy to make the De Simone Parties whole. Nor does the Court see a particular need for deterrence where, as discussed above, the VSL Parties proceeded in this

litigation with viable claims of their own, even if those claims were later abandoned, and mounted a substantive, non-frivolous defense to the De Simone Parties' claims.

This case has been hard-fought and costly for both sides, but it has also presented real questions for adjudication. Such a case is not the kind of exceptional one that warrants an award of attorney's fees.

## IV. Costs and Interest

The Lanham Act provides that a prevailing plaintiff is entitled to recover the costs of the action. 15 U.S.C. § 1117(a). 28 U.S.C. § 1920, in turn, provides that:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Here, the DeSimone Parties seek $87,397.35 in costs. Where the VSL Parties have raised no objection, the Motion will be granted as to costs and the Court will award the requested amount.

De Simone asserts that he is entitled to pre-judgment interest on the $1,874,602 awarded by the jury on his claim of unjust enrichment against VSL. "[P]re-judgment interest as a matter of right is the exception rather than the rule." *Ver Brycke v. Ver Brycke*, 843 A.2d 758, 777 (Md. 2004). It is allowable "when the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date." *Harford Cty. v. Saks Fifth Ave.*, 923 A.2d 1, 13 (Md. 2007) (citation omitted). Because of the

17

requirements that the obligation to pay and the amount due are certain prior to judgment, such interest is typically awarded only in, as relevant here, breach of contract actions such as those involving "contracts in writing to pay money on a day certain," "actions under contracts providing for the payment of interest," or "cases upon sums payable as rent." *I.W. Berman Prop. v. Porter Bros., Inc.*, 344 A.2d 65, 75 (Md. 1975).

Here, De Simone's claim of unjust enrichment—in which he sought money damages for the VSL Parties' continued sales of VSL#3 after the expiration of the Patent License Agreement—is necessarily not a breach of contract action, so it would seem to be a case where there is no prejudgment interest as of right. *See County Com'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 610 (Md. 2000) ("We hold that, generally, quasi-contract claims such as quantum meruit and unjust enrichment cannot be asserted when an express contract defining the rights and remedies of the parties exists."). De Simone, however, asserts that it still falls within the category of cases for which prejudgment interest is a matter of right because "the jury determined that VSL owed [him] sums certain" and, in awarding damages, the jury adopted the calculations of De Simone's damages expert, who, De Simone asserts, arrived at his figure by using the royalty terms of the Patent License Agreement. Reply at 4, ECF No. 914. During the period of time at issue, however, there was no written contract between the parties governing the purchase of VSL#3, and there were bona fide disputes as to the equities of access to VSL#3, with De Simone asserting his intellectual property rights and the VSL Parties countering with allegations of breach of fiduciary duty. De Simone ultimately prevailed on those disputes, but the fact that the jury found VSL and Leadiant liable for unjust enrichment and, at least as to VSL, valued that unjust enrichment on terms tracking the royalty payment terms of the Patent License Agreement does not establish that VSL's or Leadiant's obligation to pay and the amount owed

were certain as of a known date prior to the jury's verdict. *See Harford Cty.*, 923 A.2d at 13. The Court therefore concludes that there was not the requisite certainty on VSL's or Leadiant's obligation to pay, or the amounts owed, to support a finding that De Simone is entitled to pre-judgment interest as a matter of right. The Motion will be denied as to pre-judgment interest.

As to post-judgment interest, the De Simone Parties are entitled by statute to such post-judgment interest as calculated under federal law, so the Court need not specifically award it. *See* 28 U.S.C. § 1961(a) (2012) ("Interest shall be allowed on any monetary judgment in a civil case recovered in a district court.").

## CONCLUSION

For the foregoing reasons, the De Simone Parties' Post-Trial Motion is GRANTED IN PART and DENIED IN PART. It is GRANTED as to the Motion for Costs, and the De Simone Parties will be awarded $87,397.35 in costs. It is GRANTED IN PART as to the Motion for Pre-Judgment and Post-Judgment Interest, with the judgment to accrue post-judgment interest as specified in 28 U.S.C. § 1961(a) and consistent with any other agreements of the Parties. It is GRANTED IN PART as to the Motion for a Permanent Injunction, with an injunction to issue on terms consistent with this Opinion and set forth in the accompanying Order. It is otherwise DENIED.

Date: June 20, 2019

THEODORE D. CHUANG
United States District Judge