UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CLAUDIO DE SIMONE,

    Plaintiff/Counterclaim Defendant,

EXEGI PHARMA, LLC,

    Plaintiff,

    v.

VSL PHARMACEUTICALS, INC.,

    Defendant/Counterclaim Plaintiff,

LEADIANT BIOSCIENCES, INC. and
ALFASIGMA USA, INC.,

    Defendants,

    v.

DANISCO USA, INC.,

    Counterclaim Defendant.

Civil Action No. TDC-15-1356

**MEMORANDUM OPINION**

This case, which was resolved after a jury trial in 2018, involved a dispute over the ownership of a proprietary formulation used in a probiotic known by the tradename VSL#3 and now used in a product known as Visbiome. After the jury returned a verdict in favor of Plaintiff and Counterclaim Defendant Claudio DeSimone and Plaintiff ExeGi Pharma, LLC ("ExeGi") (collectively, "the De Simone Parties") and against Defendant and Counterclaim Plaintiff VSL Pharmaceuticals, Inc. ("VSL"), Defendant Leadiant Biosciences, Inc. and Defendant Alfasigma USA, Inc. ("Alfasigma"), the Court issued a permanent injunction on June 20, 2019 barring the

use of promotional statements suggesting that the current product marketed as VSL#3 uses the original formulation invented by De Simone. Afterwards, on July 30, 2020, the Court granted in part ExeGi's Motion for an Order of Civil Contempt, held VSL and Alfasigma (collectively, "the VSL Parties") in contempt for violating the permanent injunction, and ordered them to pay ExeGi's attorney's fees as a sanction. Presently pending is ExeGi's Motion and Application for Attorneys' Fees. ECF No. 996. Having reviewed the briefs and submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Prior relevant factual background and procedural history is set forth in the Court's September 23, 2015 Memorandum Opinion on the First Motion for a Preliminary Injunction, *De Simone v. VSL Pharm., Inc.*, 133 F. Supp. 3d 776 (D. Md. 2015); its June 20, 2016 Memorandum Opinion on the Second Motion for a Preliminary Injunction, *De Simone v. VSL Pharm., Inc.*, No. TDC-15-1356, 2016 WL 3466033 (D. Md. June 20, 2016); its October 9, 2018 Memorandum Opinion on the Parties' Cross Motions for Summary Judgment, *De Simone v. VSL Pharm., Inc.*, 352 F. Supp. 3d 471 (D. Md. 2018); its June 20, 2019 Memorandum Opinion on the VSL Parties' Rule 50 and 59 Motions, *De Simone v. VSL Pharm., Inc.*, 395 F. Supp. 3d 617 (D. Md. 2019); its June 20, 2019 Memorandum Opinion on the De Simone Parties' Motion for a Permanent Injunction, *De Simone v. VSL Pharm., Inc.*, No. TDC-15-1356, 2019 WL 2569574 (D. Md. June 20, 2019); and its July 30, 2020 Memorandum Opinion on the De Simone Parties' Motion for an Order of Civil Contempt, *De Simone v. VSL Pharm., Inc.*, No. TDC-15-1356, 2020 WL 4368103 (D. Md. July 30, 2020). These opinions are incorporated by reference. Additional facts and procedural history are provided below as necessary.

On July 30, 2020, the Court issued its Memorandum Opinion and Order (the "Contempt Order") granting in part ExeGi's Motion for an Order of Civil Contempt ("the Contempt Motion"), and holding the VSL Parties in civil contempt of the permanent injunction. As a sanction, the Court ordered the VSL Parties "to pay the De Simone Parties' reasonable attorney's fees expended in advancing the [Contempt] Motion" and ordered the parties to meet and confer with the aim of reaching an agreement on the amount of attorney's fees. Contempt Order at 2, ECF No. 986. After the parties could not agree on an amount, ExeGi filed its Motion and Application for Attorneys' Fees ("the Motion for Attorney's Fees"). ECF No. 996. The Motion was stayed while the VSL Parties appealed the Contempt Order to the United States Court of Appeals for the Fourth Circuit. After the Fourth Circuit affirmed this Court's Contempt Order, ExeGi filed a Supplement to its Motion for Attorney's Fees ("the Supplement") in which it sought to include in its request attorney's fees incurred on the appeal. The Motion is now fully briefed.

## DISCUSSION

In its Motion, ExeGi seeks an award of attorney's fees pursuant to the Contempt Order. Sanctions may be imposed on a finding of civil contempt if they are "remedial and intended to coerce the contemnor into compliance with court orders or to compensate the complainant for losses sustained." *Cromer v. Kraft Foods, N.A., Inc.*, 390 F.3d 812, 822 (4th Cir. 2004) (quoting *Buffington v. Balt. Cnty.*, 913 F.2d 113, 133 (4th Cir. 1990)). Remedies for civil contempt may "include ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees." *In re General Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995).

ExeGi was represented throughout this litigation by attorneys from the law firm of Schulman Bhattacharya, LLC. ExeGi initially requested $104,548.00 in attorney's fees incurred in advancing the Contempt Motion, as well as $18,698.40 in attorney's fees incurred in preparing

3

the Motion for Attorney's Fees. In its Supplement, ExeGi has requested additional attorney's fees of $106,496.00 incurred in opposing the appeal of the Contempt Order and $17,229.50 incurred in preparing the Supplement. Thus, ExeGi seeks a total of $246,971.90 in attorney's fees associated with the Contempt Motion. The VSL Parties do not dispute that ExeGi is entitled to attorney's fees but instead argue that the fees are excessive because: (1) the hourly rates exceed the prevailing rates in the community; (2) the number of hours expended was excessive, redundant, or unnecessary; and (3) the fees sought are inconsistent with fee awards in similar cases. The VSL Parties also argue that ExeGi should not receive attorney's fees for time spent pursuing unsuccessful claims, for time spent opposing the appeal of the Court's Contempt Order, or for the preparation of the Motion for Attorney's Fees and the Supplement.

I.     **Appeal Fees**

As an initial matter, the VSL Parties argue that ExeGi cannot recover fees in connection with the appeal of the Contempt Order. Specifically, they argue that such recovery would alter or amend the Court's prior order, that only the Court of Appeals may award fees associated with an appeal, that such an award runs contrary to the "American Rule" that parties typically pay their own attorney's fees, and that an award for fees incurred on appeal would constitute an impermissible sanction on the VSL Parties. Opp'n Supp. Mot. Fees at 5, ECF No. 1057. All of these arguments fail.

First, an award of attorney's fees in connection with the appeal is consistent with the terms of the Contempt Order. In the Contempt Order, the Court ordered the VSL Parties "to pay the De Simone Parties' reasonable attorney's fees expended in advancing the [Contempt] Motion." Contempt Order at 2. The broad term "advancing" of the Contempt Motion fairly includes fees incurred at all stages of the litigation of that motion, without limitation, and thus encompasses fees

4

incurred in defending on appeal this Court's ruling on the Contempt Motion. *See id.* As the Fourth Circuit has recognized, although a contemnor has "the right to put on a vigorous defense," a contemnor may end up paying more in associated attorney's fees by "contesting each and every aspect of [a] contempt proceeding." *In re Gen. Motors Corp.*, 110 F.3d 1003, 1006 (4th Cir. 1997). That is what has occurred here. The attorney's fees expended on the appeal are within the ambit of the Contempt Order.

Second, contrary to the VSL Parties' claim, this Court has the authority to award attorney's fees incurred on appeal in the context of a sanction such as the one imposed by the Contempt Order. Although the Fourth Circuit has not addressed the precise issue of whether a district court may award attorney's fees for legal work performed in advancing an appeal, other courts have held that a district court may do so. For example, in a case in which a party appealed a contempt order, the United States Court of Appeals for the Second Circuit held that the district court erred in refusing to award attorney's fees incurred on the appeal because those fees were caused by the contempt, and the appeal would not have been necessary but for the contemnor's actions. *Weitzman v. Stein*, 98 F.3d 717, 720 (2d Cir. 1996). Likewise, the United States Court of Appeals for the Third Circuit has held that it was "entirely appropriate" for a district court to award costs, including charges for attorney time, incurred during the appeal of the district court's civil contempt order. *Schauffler v. United Ass'n of Journeymen & Apprentices*, 246 F.2d 867, 870 (3d Cir. 1957).

The VSL Parties' reliance on *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017), is misplaced. In that case, which involved not sanctions pursuant to a contempt order but a court's inherent authority to sanction a party for bad faith conduct, Goodyear engaged in misconduct by concealing crucial evidence during discovery. *Id.* at 1183–84. When the Haegers discovered this misconduct after the case concluded, the district court awarded them $2.7 million,

5

the full amount of attorney's fees incurred since Goodyear engaged in that misconduct, and that decision was affirmed on appeal. *Id.* at 1185. The United States Supreme Court reversed on the grounds that the district court failed to determine which fees were incurred solely because of the misconduct. *Id.* at 1189. Here, however, there is no question that the attorney's fees incurred on the appeal are directly and solely caused by the VSL Parties' contumacious conduct.

Third, the VSL Parties' claim that awarding attorney's fees is inconsistent with the "American Rule" is unpersuasive. This general rule for attorney's fees is subject to multiple exceptions, and the award of attorney's fees as a sanction for civil contempt is one of them. *See De Simone v. VSL Pharm.*, 36 F.4th 518, 536 (4th Cir. 2022) (stating that a court has "the inherent authority . . . to award attorneys' fees in a civil contempt proceeding"). Finally, where an award of attorney's fees arising from the appeal of the Contempt Motion plainly serves a remedial and compensatory purpose by allowing ExeGi to recoup its financial losses associated with having to litigate the contempt issue on appeal, it is not a punitive sanction. *See In re General Motors Corp.*, 61 F.3d at 259.

For all of these reasons, the Court finds that an award of attorney's fees arising from the litigation of the appeal is permissible.

## II.     Lodestar Calculation

In calculating an award of attorney's fees, a court first "determine[s] the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). In determining the reasonableness of the billing rates and hours worked to be used in a lodestar calculation, the Fourth Circuit has directed courts to consider the following

6

factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (the "*Johnson* factors"):

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*McAfee*, 738 F.3d at 88 & n.5. A court is not required to conduct a specific analysis of each of the *Johnson* factors if they are considered and addressed more broadly. *See, e.g., Imgarten v. Bellboy Corp.*, 383 F. Supp. 2d 825, 836 (D. Md. 2005); *Murrill v. Merritt*, No. DKC-17-2255, 2020 WL 1914804, at *3 (D. Md. Apr. 20, 2020). Here, the Court finds that, upon consideration, the seventh, tenth, and eleventh *Johnson* factors are not particularly relevant to the present case.

### A. Reasonable Rates

In considering the reasonableness of the proposed hourly rates, the Court primarily considers the fourth, fifth, ninth, and twelfth *Johnson* factors. The reasonable hourly rate requirement is typically met by compensating attorneys at prevailing market rates in the community, ordinarily "the community in which the court where the action is prosecuted sits." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994). This Court's Local Rules provide presumptively reasonable hourly rates keyed to an attorney's years of experience. *See* D. Md. Local R. App. B.

Here, ExeGi has requested that the Court apply, for its five different counsel, hourly rates exceeding the guideline ranges for hourly rates based on each attorney's years of experience. Where Jeremy Schulman has 23 years of experience, the proposed hourly rate of $580 is higher

than the applicable Local Rules guideline range of $300 to $475 per hour for attorneys with more than 20 years of experience. Where Jeffrey Gavenman has 13 years of experience, the proposed hourly rate of $390 is higher than the applicable Local Rules guideline range of $225 to $350. Where Sabina Schiller has 8 years of experience, the proposed hourly rate of $450 is higher than the applicable Local Rules guideline range of $165 to $300. Where Jessica Bustamante has 3 years of experience, the proposed hourly rate of $275 is higher than the applicable Local Rules guideline range of $150 to $225. Finally, where Mace Phillips has 4 years of experience, the proposed hourly rate of $395 is higher than the applicable Local Rules guideline range of $150 to $225.

In arguing for the higher hourly rates, ExeGi asserts that the proposed rates are reasonable because they represent a substantial discount from ExeGi's counsel's typical rates, are "a fraction of the rates" charged by the VSL Parties' own counsel, and have remained the same over the past four years, even in the face of annual inflation. Mot. Atty's Fees at 9, ECF No. 996. ExeGi has also submitted a declaration from Maury Epner, a local commercial litigation attorney who is "familiar with the hourly billing rates of other attorneys engaged in commercial litigation in Maryland, and specifically in Montgomery County" and with lead plaintiffs' counsel, Jeremy Schulman, whom Epner describes as "one of the most zealous, diligent, fearless, and effective commercial litigators." Epner Decl. ¶¶ 9, 11, ECF No. 996-4. Epner attests to the reasonableness of the proposed rates. The affidavit of a local attorney "familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community" can be sufficient to verify the prevailing market rate. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 245 (4th Cir. 2009). This declaration, which addresses the second, third, fifth, and ninth *Johnson* factors, provides support for the reasonableness of the hourly rates.

Nevertheless, based on the present record and a consideration of the relevant *Johnson* factors, the Court finds that the legal work conducted in relation to the Contempt Motion, including on appeal, was not so novel or complex, and did not require skill beyond the typical case, so as to warrant the use of hourly rates above those contemplated by the Local Rules. Indeed, where these rates have been consistently published in the Local Rules, application of hourly rates within the guideline ranges is consistent with the sixth *Johnson* factor, the attorney's expectations at the outset of the litigation.

At the same time, where the Court has not recently adjusted these rates for inflation, and where the rates are lower than the standard billing rates for ExeGi's attorneys, the Court finds that the reasonable hourly rates are those at the high end of the guideline ranges set forth in the Local Rules. The Court will therefore award fees based on the following hourly rates:

**Table: Revised Rates**

| Name | Years | Requested Rate | Guideline Range | Revised Rate |
|---|---|---|---|---|
| Jeremy Schulman | 23 | $580 | $300–475 | $475 |
| Jeffrey Gavenman | 13 | $390 | $225–350 | $350 |
| Sabina Schiller | 8 | $450 | $165–300 | $300 |
| Jessica Bustamante | 3 | $275 | $150–225 | $225 |
| Mace Phillips | 2 | $395 | $150–225 | $225 |

**B. Reasonable Hours**

As for the reasonableness of the hours worked, the Court primarily considers the first, second, third, and eighth *Johnson* factors. ExeGi has provided charts reflecting actual hours worked by ExeGi's counsel with descriptions of the specific tasks performed. See Mot. Atty's Fees Ex. 2, ECF No. 996-2; Reply Mot. Atty's Fees Ex. C, ECF No. 998-2; Supp. Mot. Atty's Fees Ex. A, ECF No. 1055-2; Supp. Mot. Atty's Fees Ex. B, ECF No. 1055-3. In considering the submitted charts, the Court finds that the general tasks performed by the attorneys were reasonable under the circumstances of this case. The Contempt Motion spanned nearly three years from the

filing in October 2019 to the resolution of the appeal in June 2022. The resolution of the Contempt Motion in both this Court and the Fourth Circuit required significant factual and legal analysis and substantial briefing. The issues were significantly distinct and unique that the Fourth Circuit issued a published opinion on the matter. Although the hours incurred by ExeGi's counsel are substantial, as ExeGi points out, a substantial portion of the hours expended was required to respond to actions and arguments initiated by the VSL Parties, not ExeGi.

The VSL Parties argue that the number of hours expended by ExeGi to oppose their arguments was excessive, redundant, or unnecessary. The Court agrees that the presence of multiple attorneys working on the Motion necessarily created some redundancies in the billing entries, and that the number of hours expended on the drafting of the briefs appears higher than necessary. However, these issues must be viewed in the context of this highly contested case that has spanned seven years, in which both sides have employed multiple attorneys and asserted every possible legal or factual argument on every issue. Notably, as reflected in the briefs, the VSL Parties engaged seven attorneys to litigate the Contempt Motion, seven attorneys to litigate the appeal, and six attorneys to handle the Motion for Attorney's Fees. Thus, the need for multiple attorneys to address all of the arguments made by the opposing legal team, and the greater than typical number of hours needed to draft ExeGi's briefs, are generally justified. To the extent that the billing entries include more hours than would be reasonable for given tasks, they are fairly addressed by ExeGi's voluntary agreement to a 20 percent reduction in billing charges incurred on the Contempt Motion and on the Motion for Attorney's Fees. The Court will apply that 20 percent reduction to the revised fee calculations for these categories, as adjusted for the lower hourly rates.

Finally, as for the VSL Parties' argument that ExeGi may not recover attorney's fees associated with preparing the Motion for Attorney's Fees and the Supplement, the Fourth Circuit

has upheld inclusion of such fees in related contexts. *See, e.g., Trimper v. City of Norfolk*, 58 F.3d 68, 77 (4th Cir. 1995) (in relation to an award of attorney's fees under 42 U.S.C. § 1988, stating that "it is well settled that the time spent defending entitlement to attorney's fees is properly compensable"); *Mercer v. Duke University*, 401 F.3d 199, 202 n.3 (4th Cir. 2005) (affirming an attorney's fee award under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, that included "fees incurred in litigating the question of fees"). Inclusion of such charges is typical in attorney's fee calculations and is warranted here. *See* D. Md. Local R. App. B.1.b.x. (listing "fee petition preparation" as a litigation phase for which billing records should be submitted as part of a fee application).

The Court's revised lodestar calculation, based on the Court's adjustments to the hourly rates and the application of ExeGi's voluntary 20 percent reduction across legal work conducted on the Contempt Motion and the Motion for Attorney's Fees, consists of $78,056 for the Contempt Motion, $13,200 for preparation of the Motion for Attorney's Fees, $75,975 for the appeal, and $10,657.50 for preparation of the Supplement, for a total of $177,888.50.

### III. Adjustments to the Lodestar Amount

After calculating the lodestar amount, the Court must then "subtract fees for hours spent on unsuccessful claims unrelated to successful ones" and then award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88 (quoting *Robinson*, 560 F.3d at 244). When calculating a reasonable fee award, "the most critical factor" is "the degree of success obtained." *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

Here, the VSL Parties correctly note that although ExeGi prevailed on the Contempt Motion, it did not prevail on all of its arguments for contempt. ExeGi identified six specific

promotional statements—three online statements, one press release statement, and two product information sheet statements—that it claimed to have violated the permanent injunction, but the Court ruled in its favor on only four of those statements. *De Simone*, 2020 WL 4368103, at *4–6. When considering that ExeGi prevailed on other overarching issues in the Contempt Motion, including the issues of whether the violations caused harm, and whether and in what form sanctions should be imposed, the Court finds that ExeGi's degree of success on the Contempt Motion was in the range of 80 percent. The Court will therefore reduce the lodestar calculation relating to the work on the Contempt Motion at the district court level by an additional 20 percent. Though an approximation, this calculation is consistent with the Supreme Court's recognition that "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

As for the attorney's fees on appeal, however, ExeGi received a complete victory before the Fourth Circuit. The Fourth Circuit affirmed the Contempt Order on all issues after "reject[ing] all" of the VSL Parties' arguments. *De Simone*, 36 F.4th at 529, 537. Accordingly, the Court will award 100 percent of the lodestar amount relating to the appeal. Likewise, where the Court generally accepts ExeGi's arguments in the Motion and the Supplement, the Court will award the full lodestar amount relating to that legal work.

With the adjustment discussed above, the total attorney's fee award will be $159,637.30, consisting of $62,444.80 for the original Contempt Motion, $10,560 for preparation of the Motion for Attorney's Fees, $75,975 for the appeal, and $10,657.50 for preparation of the Supplement to the Motion for Attorney's Fees.

## CONCLUSION

For the foregoing reasons, ExeGi's Motion for Attorney's Fees will be GRANTED IN PART and DENIED IN PART. The Motion will be granted in that the Court will award $159,637.30 of attorney's fees and will be otherwise denied. A separate Order shall issue.

Date: September 30, 2022

THEODORE D. CHUANG
United States District Judge