UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CLAUDIO DE SIMONE and
EXEGI PHARMA, LLC,

    Plaintiffs/Counterclaim Defendants,

v.

VSL PHARMACEUTICALS, INC.,
LEADIANT BIOSCIENCES, INC. and
ALFASIGMA USA, INC.

    Defendants/Counterclaim Plaintiffs,

v.

DANISCO USA, INC.,

    Counterclaim Defendant.

Civil Action No. TDC-15-1356

**MEMORANDUM OPINION**

Plaintiff ExeGi Pharma, LLC ("ExeGi") has filed its third Motion for an Order of Civil Contempt against Defendant Alfasigma USA, Inc. ("Alfasigma"). In this most recent Motion, ExeGi alleges that Alfasigma has violated this Court's June 20, 2019 permanent injunction ("the Permanent Injunction") by making representations that convey that Alfasigma's version of the probiotic VSL#3, which is manufactured in Italy ("new VSL#3" or "Italian VSL#3"), has the same formulation ("the DeSimone Formulation") used in ExeGi's probiotic, Visbiome. Alfasigma opposes the Motion and has also sought leave to file a surreply brief. Having reviewed the briefs and submitted materials, the Court finds that no hearing and no surreply brief are necessary. D. Md. Local R. 105.6, 105.2(a). For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Prior relevant factual background and rulings are set forth in the Court's September 23, 2015 Memorandum Opinion on the First Motion for a Preliminary Injunction, *De Simone v. VSL Pharms., Inc.*, 133 F. Supp. 3d 776 (D. Md. 2015); its June 20, 2016 Memorandum Opinion on the Second Motion for a Preliminary Injunction, *De Simone v. VSL Pharms., Inc.*, No. TDC-15-1356, 2016 WL 3466033 (D. Md. June 20, 2016); its October 9, 2018 Memorandum Opinion on the Parties' Cross Motions for Summary Judgment, *De Simone v. VSL Pharms., Inc.*, 352 F. Supp. 3d 471 (D. Md. 2018); its June 20, 2019 Memorandum Opinion on Defendants' Rule 50 and 59 Motions, *De Simone v. VSL Pharms., Inc.*, 395 F. Supp. 3d 617 (D. Md. 2019); its June 20, 2019 Memorandum Opinion on Plaintiffs' Motion for a Permanent Injunction, *De Simone v. VSL Pharms., Inc.*, No. TDC-15-1356, 2019 WL 2569574 (D. Md. June 20, 2019); its July 30, 2020 Memorandum Opinion on Plaintiffs' Motion for an Order of Civil Contempt, *De Simone v. VSL Pharms., Inc.*, No. TDC-15-1356, 2020 WL 4368103 (D. Md. July 30, 2020) ("*De Simone I*"), *aff'd*, 36 F.4th 518 (4th Cir. 2022); and its July 16, 2021 Memorandum Opinion on ExeGi's Second Motion for an Order of Civil Contempt, *De Simone v. VSL Pharms., Inc.*, No. TDC-15-1356, 2021 WL 3023021 (D. Md. July 16, 2021) ("*De Simone II*"). All of these opinions are incorporated by reference.

In *De Simone v. Alfasigma USA, Inc.*, 847 F. App'x 174 (4th Cir. 2021), the United States Court of Appeals for the Fourth Circuit affirmed the November 2018 jury verdict in favor of Claudio De Simone and ExeGi (collectively, "the De Simone Parties") on all counts against VSL Pharmaceuticals, Inc. ("VSL"), Alfasigma, and Leadiant Biosciences, Inc. ("Leadiant") (collectively, "the VSL Parties"), including the finding of liability against Alfasigma and Leadiant for false advertising, in violation of the Lanham Act, 15 U.S.C. § 1125(a), relating to the marketing

of new VSL#3. *De Simone*, 847 F. App'x at 181–83. The Fourth Circuit also affirmed this Court's rulings on post-trial motions and affirmed the issuance of the Permanent Injunction with a modification. *Id.* at 184. Accordingly, the Permanent Injunction as it presently stands enjoins Alfasigma and Leadiant from:

> [S]tating or suggesting in VSL#3 promotional materials directed at or readily accessible to United States consumers that the present version of VSL#3 produced in Italy ("Italian VSL#3") continues to contain the same formulation found in versions of VSL#3 produced before January 31, 2016 ("the De Simone Formulation"), including but not limited to making statements that VSL#3 contains the "original proprietary blend" or the "same mix in the same proportions" as earlier version[s] of VSL#3.

Permanent Injunction at 2, ECF No. 930; *see De Simone*, 847 F. App'x at 184. The Fourth Circuit also made clear that "citing or referring to" earlier clinical studies on the De Simone Formulation "*as though* they were performed on Italian VSL#3" was the equivalent of claiming "continuity between the products." *De Simone*, 847 F. App'x at 184.

ExeGi has filed two previous Motions for an Order of Contempt in which it alleged violations of the Permanent Injunction. On July 30, 2020, the Court granted in part the First Motion for an Order of Contempt ("the First Motion") and found VSL and Alfasigma in contempt of court based on statements made in letters to healthcare providers, on the new VSL#3 website, in Facebook postings, on YouTube, and in public statements by VSL's Chief Executive Officer that violated the Permanent Injunction. *De Simone I*, 2020 WL 4368103, at *6. The Court declined the request to order disgorgement of profits and instead awarded attorney's fees expended in advancing the Motion and ordered VSL and Alfasigma to remove the contumacious statements, "review all promotional materials and online postings . . . for the same or similar statements and to remove them, and instruct all relevant personnel to refrain from using the same or similar language going forward." *Id.* The Court also stated that the VSL Parties were "on notice of the

identified violations and of potential violations that could arise from the use of" certain clinical studies and that "any such violations occurring the future will likely result in more severe sanctions." *Id.* at *7.

On July 16, 2021 the Court denied the Second Motion for an Order of Civil Contempt ("the Second Motion") in which ExeGi alleged violations of the Permanent Injunction based on citations to prior clinical studies on the De Simone Formulation contained in a December 2020 scientific journal article, a statement in a Fact Sheet posted on the VSL#3 Facebook page stating that "VSL#3 continues to be sold under the same brand," and an email from VSL's Chief Executive Officer Luca Guarna that mischaracterized the Fourth Circuit's ruling on the Permanent Injunction as permitting citations to clinical studies on the De Simone Formulation "without restriction or threat of contempt." *De Simone II*, 2021 WL 3023021, at *3–5. The Court denied the Second Motion because it had not been demonstrated that the journal authors had notice of or were covered by the Permanent Injunction, because the Fact Sheet statement "dangerously skirt[ed] the line of the Permanent Injunction" but did "not cross it," and because Guarna's statement, though made in bad faith, did not technically violate the terms of the Permanent Injunction. *Id.* It also specifically clarified that "citing or referring to clinical studies 'as though they were performed on Italian VSL#3' remains barred by the Permanent Injunction." *Id.* at 4.

## DISCUSSION

In the present Third Motion for an Order of Contempt ("the Third Motion"), ExeGi asserts that Alfasigma has violated the Permanent Injunction based on the following actions: (1) the posting on the healthcare provider section of the VSL#3 website of a statement about new VSL#3's health benefits accompanied by a citation that referenced a prior clinical study conducted on the De Simone Formulation; (2) the dissemination of letters to healthcare providers that included

4

references to clinical studies conducted on the De Simone Formulation; and (3) the citation to clinical studies conducted on the De Simone Formulation in training materials for Alfasigma's sales personnel. For such violations, ExeGi seeks an order of contempt, an award of attorney's fees incurred in advancing this Motion, disgorgement in the amount of one-third of Alfasigma's revenue earned during the period of contumacious conduct, additional discovery to determine the extent of the violations of the Permanent Injunction, and the expansion of the Permanent Injunction to cover conduct by Actial Nutrition, Inc., the company that is now distributing new VSL#3.

## I.     Legal Standard

To support a finding of civil contempt, each of the following elements must be established by clear and convincing evidence: (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's favor; (3) that the alleged contemnor by its conduct violated the terms of the decree and had knowledge or constructive knowledge of such violation; and (4) that the movant suffered harm as a result. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (quoting *Colonial Williamsburg Found. v. Kittinger Co.*, 792 F. Supp. 1397, 1405–06 (E.D. Va. 1992), *aff'd*, 38 F.3d 133, 136 (4th Cir. 1994)).

As to the third element, in determining whether there was a violation of a court order, there is no requirement that the violation was willful. "Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) (internal citations omitted). However, because intent is irrelevant, the order allegedly violated must be one that sets forth in "specific detail an unequivocal command." *In re Gen.*

*Motors Corp.*, 61 F.3d 256, 258–59 (4th Cir. 1995) (quoting *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir. 1986)). A party therefore should not be found in civil contempt where there is "a *fair ground of doubt* as to the wrongfulness of [its] conduct." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (quoting *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)). However, civil contempt need not be limited to addressing only activities that were "specifically enjoined," because such a narrow requirement "would give tremendous impetus to [a] program of experimentation with disobedience of the law." *McComb*, 336 U.S. at 192. Instead, "[i]t is enough protection for defendants if close questions of interpretation are resolved in the defendant's favor in order to prevent unfair surprise." *Schering Corp. v. Ill. Antibiotics Co.*, 62 F. 3d 903, 906 (7th Cir. 1995).

Here, there is no dispute that the first two elements are satisfied. The dispute centers only on whether Alfasigma's conduct violated the Permanent Injunction and, if so, if any such violations resulted in harm to ExeGi.

## II.     Alleged Violations of the Permanent Injunction

### A.     The VSL#3 Website

First, ExeGi asserts that the healthcare provider section of the new VSL#3 website violates the Permanent Injunction in that the statement "In clinical studies, VSL#3® demonstrated a positive impact on patients with pouchitis" is accompanied by a citation to a March 25, 2010 article ("the 2010 Article"), which describes clinical studies conducted on the De Simone Formulation. Third Mot. at 8, ECF No. 1106; Website at 1, Gavenman Decl. Ex. 1, ECF No. 1106-2. As this Court reiterated and clarified in ruling on the Second Motion, "citing or referring to the clinical studies as though they were performed on Italian VSL#3 remains barred by the Permanent Injunction." *De Simone II*, 2021 WL 3023021, at *4.

6

Alfasigma does not dispute that this posting violated the Permanent Injunction but claims that it was inadvertent. Alfasigma asserts that it engaged a contractor, Elevate Healthcare Marketing ("Elevate"), to create a new healthcare provider section of the new VSL#3 website, and that the language citing the 2010 Article was overlooked during the webpage approval process. As the Court has previously stated, however, there is no requirement that a violation be intentional or willful. *Id.* at *2. Moreover, by stating that there is no evidence than any Alfasigma personnel "specifically reviewed or approved" the posting, Opp'n at 10, ECF No. 1112, Alfasigma is acknowledging that it unacceptably abdicated its responsibility to ensure compliance with a court order by delegating that task to a contractor. Where there is no dispute that the posting violated the Permanent Injunction, and Alfasigma plainly had at least constructive knowledge of the content of the website, the Court finds that this element has been satisfied. *See Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 618–19 (4th Cir. 2019) (finding that the defendant was "responsible for knowing the contents of its own website for purposes of establishing the requisite knowledge of the violations").

### B.   The Provider Letters

ExeGi also alleges that Alfasigma violated the Permanent Injunction by responding to inquiries from healthcare providers by sending form letters ("the Provider Letters") stating that the new VSL#3 contains live bacteria that "survive gastric fluid, bile, and pancreatic secretions, and colonize the gastrointestinal tract," with citations to pre-2016 clinical studies conducted on the De Simone Formulation. Third Mot. at 12; Provider Letter at 1-2, Gavenman Decl. Ex. 3, ECF No. 1106-4; Template Letter at 1-2, Gavenman Decl. Ex. 4, ECF No 1106-5. Such letters were sent to 10 individuals between August 27, 2020 and September 13, 2021, before Alfasigma identified the violation on October 14, 2021 and corrected the template for the Provider Letters. As with the

VSL#3 website, Alfasigma acknowledges that these letters violated the Permanent Injunction but claims that the conduct was inadvertent because they were sent out by a contractor, and the references to the clinical studies conducted on the De Simone Formulation were not specifically approved through Alfasigma's medical, legal, and regulatory review process. Again, the Court finds that the failure to subject such content to review by Alfasigma personnel for compliance with the Permanent Injunction to be completely unacceptable, particularly where the Court, in ruling on the First and Second Motions, has specifically warned Alfasigma of the need to review its promotional materials and of the potential for violations based on citations to clinical studies on the De Simone Formulation. *De Simone I*, 2020 WL 4368103, at *6; *De Simone II*, 2021 WL 3023021, at *4. Where Alfasigma had at least constructive knowledge of these violations based on having delegated responsibility for their content to contractors, the Court finds that the Provider Letters violated the Permanent Injunction.

### C.  The Training Materials

Finally, ExeGi alleges that certain training materials for Alfasigma new hires and sales staff violated the Permanent Injunction by citing to clinical studies conducted on the De Simone Formulation. Specifically, Alfasigma's Training Module on new VSL#3 ("the Module") provides background information on new VSL#3's efficacy in treating ulcerative colitis, irritable bowel syndrome, and pouchitis. The Module includes at least 36 endnote citations, one of which references a 2009 clinical study conducted on the De Simone Formulation. The 2009 study is referenced to support three propositions: "In the setting of IBD, the mucosal barrier is thought to be compromised, allowing bacteria to penetrate the deeper layers of the intestinal wall and incite an inflammatory response," "VSL#3® protects the epithelial barrier by maintaining tight injunctions," and "In individuals with active [inflammatory bowel disease], the proteins involved

in forming tight junctions are not expressed at the normal levels, making the barrier more permeable to bacteria." Module at 7, Gavenman Decl. Ex. 5, ECF No. 1106-6. Alfasigma also used a "Product Overview" PowerPoint presentation ("the Product Overview") to train new sales staff. The Product Overview cites to the Module, which includes the citation to the 2009 study, and at one point relies on information from the 2009 study "without providing a direct citation to that Clinical Study." Third Mot. at 10.

Although Alfasigma does not dispute that these materials should not have had direct or indirect citations to the 2009 study, it notes that the Module was "for internal use only" and was "not approved for distribution outside the company." Opp'n at 15. It also asserts that the Product Overview was used in training sessions and was not distributed or otherwise made available to staff for discussion with or distribution to healthcare providers. Although ExeGi has presented evidence that Alfasigma emailed the Module to a third party, the recipient, Brand Direct Health, does not appear to be a healthcare provider or consumer.

Thus, while the continued use of training materials including citations to clinical studies conducted on the De Simone Formulation was inappropriate, the Court does not find that they violated the Permanent Injunction because it applies only to "VSL#3 promotional materials directed at or readily accessible to United States consumers." Permanent Injunction at 2. Here, there is no evidence that the training materials were distributed to or used in discussions with consumers. Although the Court recognizes that the inclusion in training materials of specific statements equating new VSL#3 with the De Simone Formulation could violate the Permanent Injunction if there was evidence that the sales staff then used such statements in their discussions with consumers, there is no such evidence here. Moreover, it is exceedingly unlikely that sales personnel discussed the specific endnotes at issue here with healthcare providers or other

9

consumers. The Court therefore finds that the Module and the Product Overview did not violate the Permanent Injunction.

### III. Harm

For the reasons stated in the rulings on the First Motion, the VSL Parties' Rule 50 and 59 Motions, and the De Simone Parties' Motion for a Permanent Injunction, this Court finds that the identified violations caused harm to ExeGi. *See De Simone I*, 2020 WL 4368103, at *6; *De Simone*, 395 F. Supp. 3d at 628–30; *De Simone*, 2019 WL 2569574, at *2; *De Simone*, 36 F.4th at 534. As in the past, the identified violations imply a false continuity between new VSL#3 and the De Simone Formulation, allowing new VSL#3 to retain or even expand its market share. Although ExeGi has not identified a direct link between the violations of the Permanent Injunction and lost sales to ExeGi, the De Simone Parties have previously established that customer confusion over whether new VSL#3 still contains the De Simone Formulation has caused ExeGi to lose business, constituting an informational harm. *See De Simone I*, 2020 WL 4368103, at *6; *De Simone*, 36 F.4th at 534. The Court reasonably infers that the same type of harm flows from the present violations.

### IV. Substantial Compliance

ExeGi has established all four of the elements for a finding of civil contempt in relation to statements found in two places: the VSL#3 website and the Provider Letters. When the moving party establishes the four elements of civil contempt, "the burden shifts to the defendant to show 'good faith [in making] all reasonable efforts to comply with the enforcement order.'" *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 461–62 (4th Cir. 2020) (quoting *United v. Ali*, 874, F.3d 825, 831 (4th Cir. 2017)). If "'all reasonable steps' have been taken to ensure compliance," then "inadvertent omissions" may be excused. *United States v. Darwin Constr. Co.*, 873 F.2d 750, 755

(4th Cir. 1989) (quoting *United States v. Darwin Constr. Co.*, 680 F. Supp. 739, 740 (D. Md. 1988)). A defendant who fails to meet this burden may be held in civil contempt. *Klopp*, 957 F.3d at 462.

Alfasigma argues that it took all reasonable efforts to comply with the Permanent Injunction, including by generally distributing marketing communications instructions to all Alfasigma personnel and requiring medical and legal review and approval any time a study or publication was referenced or used in the marketing of new VSL#3. In practice, however, Alfasigma failed to have any of its personnel review the relevant part of the VSL#3 website before it was posted, and it failed to have a legal review conducted on the Provider Letters. Instead, it apparently assumed that the contractors it retained to prepare and finalize the content would identify and remove material that violated the Permanent Injunction. Such an abdication of responsibility cannot be deemed to constitute reasonable efforts to achieve compliance, particularly when Alfasigma has previously been held in contempt for similar violations and was warned in the rulings on the First and Second Motions that it was "on notice of the identified violations and of potential violations," *De Simone I*, 2020 WL 4368103, at *7, that it had engaged in conduct that "dangerously skirts the line of the Permanent Injunction," *De Simone II*, 2021 WL 3023021, at *4, and that violations "occurring in the future will likely result in more severe sanctions," *De Simone I*, 2020 WL 4368103, at *7.

The Court therefore finds that Alfasigma has not taken "*all* reasonable steps" to ensure compliance and thus has not demonstrated good faith substantial compliance with the Permanent Injunction. *See De Simone*, 36 F.4th at 530. Accordingly, it will hold Alfasigma in contempt for the above-referenced violations.

## V. Remedies

As remedies for the contempt, ExeGi seeks attorney's fees incurred in litigating this Motion and disgorgement of one-third of Alfasigma's revenues earned during the relevant time period. "A civil contempt sanction must serve either to (1) 'coerce obedience to a court order,' or (2) 'compensate the complainant for losses sustained as a result of the contumacy.'" *dmarcian, Inc. v. dmarcian Europe BV*, 60 F.4th 119, 146 (4th Cir. 2023) (quoting *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 821 (4th Cir. 2004)). A sanction may not be punitive. *In re Gen. Motors*, 61 F.3d at 259. In line with the requirement that the sanction be "remedial and compensatory," the available remedies may include "ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees." *Id.* A compensatory sanction "may not exceed the actual loss to the complainant caused by" the contemnor. *Id.* (quoting *In re Tetracycline Cases*, 927 F.2d 411, 413 (8th Cir. 1991)).

Consistent with these principles, the Court will decline to impose the disgorgement sanction. Although the Court has found that ExeGi was harmed by the violations, ExeGi has not made a sufficient showing that disgorgement of profits or revenue of this amount is a fair measure of its actual loss. Indeed, based on the nature of the violations, the loss is likely significantly more limited. As to the VSL#3 website, where the impermissibly cited article was not the only source supporting the claim that new VSL#3 is effective in treating pouchitis, there has been no showing that the impermissible citation has specifically caused the kind of lost profits sought by ExeGi. As for the Provider Letters, only 10 healthcare providers received them before Alfasigma corrected the content, and there is no evidence that any of them acted on or relied on the improper citation. The record therefore does not support the requested disgorgement remedy.

The Court, however, will sanction Alfasigma by awarding reasonable attorney's fees incurred by ExeGi to advance the Motion. This limited sanction is warranted because the violations, even if not willful, were obvious violations that generally harm ExeGi, and ExeGi must be compensated for the expense of having to litigate to enforce the Permanent Injunction. The requested attorney's fees may include those incurred in filing the Motion and in conducting the approved discovery that uncovered the Provider Letter violation, but they should exclude fees incurred in relation to the alleged contempt arising from the training materials.

## VI.    Additional Requests

ExeGi asks the Court to order additional discovery to allow ExeGi to ascertain the full extent of Alfasigma's violations of the Permanent Injunction. At present, however, there are no material issues for which additional factfinding is necessary. In light of the nature of the violations uncovered to date and addressed in the Motion, the Court does not find that there is a substantial likelihood that further discovery will uncover additional significant violations. Moreover, as of February 2023, Alfasigma is no longer in the business of selling VSL#3, so there is no likelihood of identifying violations occurring or continuing after that date. Accordingly, the Court declines to grant additional discovery.

Lastly, ExeGi requests that the Court expand the Permanent Injunction to encompass conduct by Actial Nutrition, Inc ("Actial"). According to ExeGi, Actial, a subsidiary of VSL's parent company, Actial Farmaceutica, has replaced Alfasigma as the seller of VSL#3. ExeGi alleges that the transfer of functions to Actial is part of "an obvious shell game to avoid the restrictions imposed by the Permanent Injunction" perpetrated by the Cavazza family, which controls all of these entities. Third Mot. at 25.

Federal Rule of Civil Procedure 65(d) defines the persons bound by a federal court injunction as "the parties," "the parties' officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation with" such parties or individuals if they have received "actual notice" of the injunction by "personal service or otherwise." Fed. R. Civ. P. 65(d)(2)(A)–(C). Thus, if ExeGi serves Actial with the Permanent Injunction, Actial arguably may be bound by its terms if it is established to have been "in active concert or participation" with the enjoined parties, which presently consist of Alfasigma and Leadiant. *See id.* At this point, however, ExeGi has presented no evidence in the Motion that Actial has taken any action that would violate the Permanent Injunction. Actial is also not a party to either the present case or the present Motion, so it would be inappropriate to extend the Permanent Injunction to apply to it through a ruling on the Third Motion. The Court declines to do so.

## CONCLUSION

For the foregoing reasons, ExeGi's Third Motion for an Order of Civil Contempt will be GRANTED IN PART and DENIED IN PART. The Motion will be granted in that Alfasigma will be held in contempt in relation to the VSL#3 website and the Provider Letters, and ExeGi will be awarded reasonable attorney's fees. The Motion will otherwise be denied. A separate Order shall issue.

Date: December 2, 2024



THEODORE D. CHUANG
United States District Judge